## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-CIV-22264-BLOOM/VALLE

DWIGHT WILSON, JESUS A. AVELAR-LEMUS,
JESSIE CROSS, and MATTIE CROSS
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

EVERBANK, STANDARD GUARANTY
INSURANCE COMPANY, and AMERICAN
SECURITY INSURANCE COMPANY,

        Defendants.

_____/

### STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, by, between, and among Plaintiffs Dwight Wilson, Jesus A. Avelar-Lemus, Jessie Cross, and Mattie Cross, on behalf of themselves and all Settlement Class Members as defined herein, and EverBank, and American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("SGIC"), and Voyager Indemnity Insurance Company ("VIIC") (collectively referred to herein as the "Assurant Defendants"),[1] that the lawsuit originally captioned *Dwight Wilson, et al. v. EverBank, et al.,* Case No. 1:14-cv-22264-Bloom, in the United States District Court for the Southern District of Florida (the "Wilson Litigation") and the matters raised by, or which could have been raised by, the Wilson Litigation are settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Settlement Agreement and the Release set forth herein, subject to the approval of the Court.

---

[1] The Parties refer to all defendants collectively as "Defendants."

101076799.1

1.     **RECITALS**

1.1.     Class Counsel had been investigating and litigating Lender Placed Insurance

("LPI") class cases against the Assurant Defendants in the Southern District of Florida for over

three years prior to filing the complaint in the Wilson Litigation.  Class Counsel advises that over

30 depositions have been taken in those cases, and well over a million documents have been

produced and reviewed.

1.2.     On June 18, 2014, Plaintiffs filed this putative nationwide class action.

1.3.     In the Wilson Litigation, Plaintiffs asserted claims for breach of contract, breach

of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary

duty, violations of Florida's Deceptive and Unfair Trade Practices Act, the Truth in Lending Act,

tortious interference with a business relationship, and violations of the Racketeer Influenced and

Corrupt Organizations Act.

1.4.     On August 25, 2014, in response to the Complaint, Defendants filed, *inter alia*,

extensive motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6).  The Court heard

arguments on those motions at a hearing on December 5, 2014, and on January 6, 2015 granted

said motions, in part, with leave to amend.

1.5.     Plaintiffs then filed their First Amended Complaint on January 26, 2015, adding

claims for violations of the New York Deceptive Practices Act and the Illinois Consumer Fraud

Act.  Defendants moved to dismiss the Amended Complaint.

1.6.     After briefing closed on the motions to dismiss Plaintiffs' First Amended

Complaint, on March 30, 2015, and in response to EverBank's motion to dismiss for lack of

subject matter jurisdiction, this Court entered an Order to Show Cause requiring Plaintiffs to

submit a memorandum addressing whether they "concede that EverBank received no

commissions in connection with their individual lender-placed insurance policies or transactions." (D.E. 117.) Plaintiffs responded on April 14, 2015 and included an expert report, which addressed, among other things, the Defendants' lender placed insurance program and the commissions issue raised by EverBank and the Court.

1.7    On April 9, 2015 and April 28, 2015, the Court granted in part and denied in part Defendants' motions to dismiss the First Amended Complaint.  The Assurant Defendants then answered the First Amended Complaint on April 22, 2015.  EverBank answered the First Amended Complaint on May 20, 2015.  In their answers, Defendants denied any liability and asserted various affirmative defenses.

1.8.    During this time, the Parties were conducting voluminous discovery with Defendants producing thousands of pages of documents.  This was in addition to the more than two million pages of documents previously produced in other lender placed litigation involving the Assurant Defendants.  Plaintiffs deposed Defendants' representatives.  Defendants took the depositions of Plaintiffs Dwight Wilson, Jesus A. Avelar-Lemus, Jessie Cross, and Mattie Cross, and subpoenaed documents from third-parties.

1.8.    On January 5, 2015, the Court set this matter for trial on January 11, 2016.  The Court also set a mediation deadline of September 28, 2015.

1.9.    On June 2, 2015, a formal mediation of this matter with Rodney Max as the mediator ("Wilson Mediation") was held.

1.10.    In advance of and during the Wilson Mediation, Defendants provided Plaintiffs and Class Counsel additional information concerning Defendants' LPI programs, including aggregate LPI premium information across the country for all programs.

1.11.    The Wilson Mediation involved an in-person mediation session, numerous pre-mediation conference calls, and the exchange of additional extensive written information concerning the claims raised in the Wilson Litigation.  It also included the collection, production, and review of data concerning LPI Policies.

1.12.    The Parties reached a settlement in principle at the Wilson Mediation, and the Parties' counsel signed off on a settlement outline that identified the material terms for this Settlement Agreement.

1.13.    By July 24, 2015, Plaintiffs will file a Second Amended Complaint adding VIIC as a defendant, conforming the definition of the Class therein to that appearing in Section 3 below, and dismissing the TILA claim against EverBank.

1.14.    Class Counsel has significant experience litigating LPI claims, having represented plaintiffs in numerous putative class actions brought in the Southern District of Florida, including *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, *Herrick v. JP Morgan Chase Bank, N.A.*, No. 13-21107, *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 11-cv-81373, *Hall v. Bank of America, N.A.*, No. 12-cv-22700, *Diaz v. HSBC Bank USA, N.A.*, No. 13-cv-21104, *Popkin v. Citibank, N.A.*, 13-cv-60722, *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721, *Braynen v. Nationstar Mortgage LLC*, No. 14-cv-20726; *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384; *Lee v. Ocwen Loan Servicing LLC*, No. 14-cv-60649 (J. Goodman); *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252; *Montoya v. PNC Bank, N.A.*,, Case No. 1:14-cv-20474; *Soler v. IndyMac Mortgage*, No. 14-cv-22541; *Almanzar v. Select Portfolio Servicing, Inc.*, No. 14-cv-22586, and the Wilson Litigation.  Many of the above-styled cases name the Assurant Defendants as defendants.  Based on this experience, Class Counsel believes that the Wilson Litigation has significant merit and that the evidence developed supports

Plaintiffs' claims. Class Counsel recognizes and acknowledges, however, that prosecuting the Wilson Litigation through fact and expert discovery, class certification, dispositive motions, trial, and appeals will involve considerable uncertainty, time, and expense.

1.15.    Class Counsel has concluded that it is in the best interests of the Class as a whole that the claims asserted in the Wilson Litigation be resolved on the terms and conditions set forth in this Agreement. After extensive consideration and analysis of the factual and legal issues presented in the Wilson Litigation, and extensive mediation sessions, Class Counsel has reached the conclusion that the substantial benefits the Settlement Class Members will receive as a result of this Settlement are a very good result in light of the risks and uncertainties of continued litigation, including the pending motion for class certification, the expense that would be necessary to prosecute the Wilson Litigation through trial and any appeals that might be taken, and the likelihood of success at trial.

1.16.    Defendants have denied, and continue to deny each and every allegation of liability, wrongdoing, and damages, as they have substantial factual and legal defenses to all claims and class allegations in the Wilson Litigation. Defendants have always maintained, and continue to maintain, that they have acted in accordance with all applicable agreements and governing law. Nonetheless, Defendants have concluded that because the continuation of the Wilson Litigation would be protracted and expensive, it is desirable that the Wilson Litigation be fully and finally settled on a class-wide basis in the manner and upon the terms set forth in this Agreement.

1.17.    Without admitting any liability or wrongdoing whatsoever, Defendants agree to the terms of this Agreement, provided that all Released Claims are settled, compromised, and released, in order to resolve all issues relating to the subject matter of the Wilson Litigation.

2.     **DEFINITIONS**

As used herein, the following terms have the meanings set forth below.

2.1.    "Administrator" or "Settlement Administrator" means a third-party agent or administrator selected by Defendants (with the consent of the Class Counsel, which consent shall not be unreasonably withheld) to help implement and effectuate the terms of this Settlement Agreement.

2.2.    "Affiliate" of an entity means any person or entity which controls, is controlled by, or is under common control with such entity.

2.3.    "Agreement" or "Settlement Agreement" means this Stipulation and Settlement Agreement, including all exhibits thereto.

2.4.    "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel to compensate them (and all other attorneys for Named Plaintiffs or the Settlement Class) for their fees and all expenses incurred by Named Plaintiffs or Class Counsel in connection with the Wilson Litigation.

2.5.    "Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium" refers to those Settlement Class Members who were charged a Net Premium for an LPI Policy (hazard, flood, flood gap, or wind-only) by EverBank during the Settlement Class Period and who still owe some or all of those charges, but who did not make one or more full monthly mortgage loan payment(s) to EverBank after either:  (a) their Existing Escrow Account was adjusted to charge the premium for the LPI Policy; or (b) their Created Escrow Account was charged the premium for the LPI Policy.  This definition captures all Settlement Class Members who were charged for an LPI Policy by EverBank during the Settlement Class Period and who

still owe those charges, but who are not Borrowers Who Paid Their LPI Premium (as defined in Section 2.6 below).

        a.      "Existing Escrow Account" refers to an escrow account for a borrower that existed prior to the placement of the LPI Policy, where EverBank sent notice informing the borrower that the Existing Escrow Account was being adjusted to reflect the charge for the LPI Policy.

        b.      "Created Escrow Account" refers to an escrow account that was created for a borrower who did not have an escrow account prior to the placement of the LPI Policy, in order for the borrower to be charged for the LPI Policy, where EverBank sent notice informing the borrower that the Created Escrow Account had been established to reflect the charge for the LPI Policy.

    2.6.    "Borrowers Who Paid Their LPI Premium" refers to those Settlement Class Members who were charged a premium for an LPI Policy (hazard, flood, flood gap, or wind-only) by EverBank during the Settlement Class Period and who made one or more full monthly mortgage loan payment(s) to EverBank after either:  (a) their Existing Escrow Account was charged for the LPI Policy; or (b) their Created Escrow Account was charged for the LPI Policy.

    2.7.    "Case Contribution Award" means compensation for the Named Plaintiffs for their time and effort undertaken in the Wilson Litigation.

    2.8.    "Claim" means a written request for Claim Settlement Relief submitted by a Settlement Class Member to the Settlement Administrator, pursuant to the Claim Form Instructions in substantially the form of Exhibit B to this Agreement or as ultimately approved by the Court, using a Claim Form in substantially the form of Exhibit C to this Agreement or as ultimately approved by the Court.

2.9.    "Claim Deadline" means the last date by which a Claim submitted to the Settlement Administrator by a Settlement Class Member for Claim Settlement Relief must be postmarked, and shall be sixty (60) days after the Final Settlement Date.  All Claims postmarked on or before the Claim Deadline shall be timely, and all Claims postmarked after the Claim Deadline shall be untimely and barred from entitlement to any Claim Settlement Relief.

2.10.    "Claimant" means any Settlement Class Member who submits a Claim pursuant to this Settlement Agreement.

2.11.    "Claim Form" means the documents in the form attached as Exhibit C to this Agreement and/or as ultimately approved by the Court.

2.12.    "Claim Form Instructions" means the documents in the form attached as Exhibit B to this Agreement and/or as ultimately approved by the Court.

2.13.    "Claim Settlement Relief" means the cash award payment or credit to be made to Settlement Class Members who submit properly completed and timely Claim Forms to the Settlement Administrator pursuant to the Claim Form Instructions, and who qualify for such relief under this Settlement Agreement.

2.14.    "Class Counsel" means the law firms of Kozyak, Tropin, & Throckmorton, P.A., Podhurst Orseck, P.A., and Harke Clasby & Bushman LLP.

2.15.    "Class Notice" or "Notice" means the program of notice described in Section 6 of this Agreement to be provided to potential Settlement Class Members, including the Mail Notice, Internet Site, Publication notice, and Internet Advertising, which will notify potential Settlement Class Members, among other things, about their rights to opt out or object to the Settlement, the

preliminary approval of the Settlement, the manner by which to submit a Claim, and the scheduling of the Final Approval Hearing.

2.16.   "Court" means the United States District Court for the Southern District of Florida.

2.17.   "Days" means calendar days, except that, when computing any period of time prescribed or allowed by this Agreement, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Further, when computing any period of time prescribed or allowed by this Agreement, the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or legal holiday.  All calculations of days and times shall be adjusted to permit compliance by Defendants with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, including the notifications of appropriate regulators under 28 U.S.C. § 1715(b) and expiration of the 90-day review period in 28 U.S.C. § 1715 before the Final Approval Hearing is held to review and approve the Settlement.

2.18.   "Defendants" means all named defendants in the Wilson Litigation, including the EverBank and the Assurant Defendants.

a.   "EverBank" means EverBank and its predecessors and successors.

b.   "Assurant Defendants" means American Security Insurance Company, Standard Guaranty Insurance Company, and Voyager Indemnity Insurance Company.

c.   Pursuant to Section 14.1 of this Settlement Agreement, Plaintiffs will file a Second Amended Complaint prior to the Application for Preliminary Approval adding VIIC as a defendant, conforming the definition of the Class therein to that appearing in Section 3 below,

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 10 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 10 of
117

and dismissing the TILA claim against EverBank. The Parties agree that these defendants shall be considered a "Defendant" for purposes of this Agreement.

2.19. "Defense Counsel" means Defendants' counsel of record in the Wilson Litigation.

2.20. "Final" with respect to the Judgment or to any award of Attorneys' Fees and Expenses means that the time for appeal or writ review has expired or, if an appeal or petition for review is taken and dismissed or the Settlement (or award of Attorneys' Fees and Expenses) is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Judgment is set aside, modified, or overturned by the Court or on appeal, and is not fully reinstated on further appeal, the Judgment shall not become Final.

2.21. "Final Approval" means the entry of the Judgment approving the Settlement after the Final Approval Hearing is conducted.

2.22. "Final Approval Hearing" means the hearing held by the Court to determine whether the terms of this Agreement are fair, reasonable, and adequate for the Settlement Class as a whole, whether the Settlement should be granted Final Approval, and whether the Judgment should be entered.

2.23. "Final Settlement Date" means the date on which the Judgment in this case becomes Final (as defined in Section 2.20). If no appeal has been taken from the Judgment, the Final Settlement Date means the date on which the time to appeal has expired. If any appeal has been taken from the Judgment, the Final Settlement Date means the date on which all appeals, including petitions for rehearing, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Judgment.

2.24. "Judgment" means the Final Order and Judgment to be entered by the Court pursuant to the Settlement and in substantially similar form as Exhibits E and E-1.

2.25.    "Last Known Coverage Amount" refers to the amount of coverage that is available and known to EverBank (or available and known to any of EverBank's agents for tracking voluntary insurance or placing LPI) from the borrower's prior voluntary insurance policy on the property securing the loan.

2.26.    "Lender-Placed Insurance" or "LPI" means the placement of hazard, flood, flood gap, or wind-only insurance pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by EverBank to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

2.27.    "Litigation" or "Wilson Litigation" means the action captioned *Wilson, et al. v. EverBank, et al.,* Case No. 1:14-cv-22264-Bloom, in the United States District Court for the Southern District of Florida.

2.28.    "LPI Policy" means a lender-placed Residential hazard, flood, flood gap, or wind-only insurance policy and such insurance coverage placed pursuant to a mortgage loan agreement, home equity loan agreement, or home equity line of credit serviced by EverBank to cover a borrower's failure to maintain the required insurance coverage on the Residential property securing the loan.

2.29.    "Mail Notice" means the "Notice" that is mailed by the Settlement Administrator to potential Settlement Class Members, in substantially the form attached as Exhibit A to this Agreement and/or as ultimately approved by the Court.  Mail Notice shall be mailed not less than ninety (90) days before the date set by the Court for the Final Approval Hearing.

2.30.    "Named Plaintiffs" or "Plaintiffs" means Dwight Wilson, Jesus A. Avelar-Lemus, Jessie Cross, and Mattie Cross.

2.31.   "Net Premium" means the amount of premium charged to a Settlement Class Member for an LPI Policy during the Settlement Class Period less any refund paid or credited to the Settlement Class Member.

2.32.   "Notice and Administrative Costs" means the reasonable and authorized costs and expenses of disseminating and publishing the Class Notice in accordance with the Preliminary Approval Order, and all reasonable and authorized costs and expenses incurred by the Settlement Administrator in administering the Settlement, including but not limited to costs and expenses associated with assisting Settlement Class Members, processing claims, escrowing funds, and issuing and mailing Settlement Payments.  Notice and Administrative Costs do not include costs associated with Class Counsel's interactions with the Settlement Administrator, as detailed in Section 7.4.

2.33.   "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections, if any, to the Settlement in accordance with Section 12 of this Agreement to be able to object to the Settlement.  The Objection Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing or as the Court may otherwise direct.

2.34.   "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request for Exclusion must be filed in writing with the Settlement Administrator in accordance with Section 11 of this Agreement in order for a person who would otherwise fall within the definition of the Settlement Class to be excluded from the Settlement Class.  The Opt-Out Deadline shall be no later than thirty (30) days prior to the Final Approval Hearing.

2.35.   "Parties" means Named Plaintiffs and Defendants in the Litigation.

12

2.36.   "Preliminary Approval Order" means the order in substantially similar form as Exhibit D and providing for, among other things, preliminary certification of the Settlement Class for settlement purposes only; dissemination of the Class Notice to the Settlement Class; and finding that the proposed Class Notice is reasonably calculated to apprise the Settlement Class Members of the pendency of the Wilson Litigation, the material terms of the proposed Settlement, and the Settlement Class Members' options and rights with respect thereto.

2.37.   "Preliminary Approval Application" means Named Plaintiffs' motion for the Court to preliminarily approve the Settlement and to enter the Preliminary Approval Order, including all exhibits and documents attached thereto.  Named Plaintiffs' Preliminary Approval Application shall be filed within ten (10) days after this Agreement is signed.

2.38.   "Premium" means the amount charged to a borrower by EverBank for an LPI Policy.

2.39.   "Refund" means the amount of money paid or credited to a borrower when an LPI Policy is canceled.

2.40.   "Release" or "Releases" means the releases of all Released Claims by the Releasing Persons against the Released Persons, as provided for in Section 10 of the Settlement Agreement.

2.41.   "Released Claims" means all claims, actions, causes of action, law suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, demands, and any other forms of liability released pursuant to Section 10 of the Settlement Agreement.

2.42.   "Released Persons" means, only with respect to Released Claims:  (a) Defendants, Assurant, Inc., and each of their respective past or present, direct or indirect, Affiliates, parent

companies, subsidiaries, divisions, predecessors, successors, assigns, investors, and all past or present officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of any such entities or persons; (b) any other insurance carriers that issued or may have issued LPI for EverBank insuring real property owned by any Settlement Class Member; and (c) any investor or trustee of a mortgage securitization trust that held or included loans made to any Settlement Class Member, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

2.43.   "Releasing Persons" means Named Plaintiffs, all Settlement Class Members, and their respective family members, heirs, administrators, successors, and assigns.

2.44.   "Request for Exclusion" means a written request from a Settlement Class Member who seeks to exclude that person from the Settlement Class and that complies with all requirements in Section 11 of this Agreement.

2.45.   "Residential" shall include any property for which the borrower (i) submitted a Uniform Residential Loan Application or similar paper or electronic application form in connection with the loan for which the LPI was placed, or (ii) uses or used all or any part of the property as a primary or secondary residence.

2.46.   "Settlement" or "Stipulation of Settlement" means the settlement set forth in this Agreement.

2.47.   "Settlement Class" means all members of the class of borrowers in the Wilson Litigation that will be certified by the Court for settlement purposes as more fully described in Section 3.1 herein.

2.48.   "Settlement Class Member" means any member of the Settlement Class.

2.49.   "Settlement Class Period" means the period of time defined in Section 3.2 below.

2.50.   "Settlement Website" means the Internet site created by the Settlement Administrator pursuant to Section 6.2 of this Agreement to provide information about the Settlement, which shall have the Uniform Resource Locator of www.WilsonSettlementInfo.com.

## 3.   CLASS DEFINITION, CLASS PERIOD AND CONDITIONS AND OBLIGATIONS RELATING TO THE EFFECTIVENESS OF THE SETTLEMENT

3.1.   The "Settlement Class" shall be as follows:

(a)   The "Class" shall include all borrowers in the United States who, within the Class Period (as defined in Section 3.1(b) below), were charged by EverBank for a hazard, flood, flood gap or wind-only LPI Policy for Residential property, and who, within the Class Period, either (i) paid to EverBank the Net Premium for that LPI Policy or (ii) did not pay to and still owe EverBank the Net Premium for that LPI Policy.  Excluded from the Class are:  (i) individuals who are or were during the Class Period officers or directors of the Defendants in the Wilson Litigationor any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or the spouses of such persons; (iii) borrowers who only had an LPI Policy that was cancelled in its entirety such that any premiums charged and/or collected were fully refunded to the borrower's escrow account; and, (iv) all borrowers who file a timely and proper request to be excluded from the Class.

(b)   The "Class Period" shall commence on January 1, 2009, and shall continue through and including the date of the Preliminary Approval Order preliminarily approving the settlement.

3.2.   This Settlement Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.

3.3.   Condition No. 1: District Court Approval.  The Settlement must be approved by the Court in accordance with the following steps:

3.3.1.   Application for Preliminary Approval of Proposed Settlement, Class Certification, and Class Notice.  After good faith consultation with counsel for Defendants, Class Counsel will present a Preliminary Approval Application to the Court within ten (10) days of

execution of this Agreement. The Preliminary Approval Application shall include a Class Notice, in substantially similar form as Exhibit A, and a Preliminary Approval Order, in substantially similar form as Exhibit D. Defendants shall not be party to the application but shall not oppose it and shall cooperate in good faith with Named Plaintiffs as they take reasonable steps to secure expeditious entry by the Court of the Preliminary Approval Order and to request that the Court schedule a Final Approval Hearing no earlier than ninety (90) days after the service of the required notices under 28 U.S.C. § 1715.

  3.3.2. <u>Settlement Class Certification</u>. In connection with the proceedings on Preliminary and Final Approval of the proposed Settlement, the Named Plaintiffs shall seek orders (Preliminary and Final, respectively) certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of this Settlement only.

  3.3.3. <u>Entry of Preliminary Approval Order</u>. The Court shall enter a Preliminary Approval Order in substantially similar form as Exhibit D, which shall, among other things:

   a. Certify for purposes of settlement only a nationwide Settlement Class, approving the Named Plaintiffs as class representatives and appointing Class Counsel, pursuant to Fed. R. Civ. P. 23;

   b. Preliminarily approve the Settlement as within the range of reasonableness and possible judicial approval such that a presumption of fairness is appropriate;

   c. Order the issuance of Class Notice to the Settlement Class, and determine that such Notice complies with all legal requirements, including, but not limited to, the Due Process Clauses of the United States Constitution;

   d. Schedule a date and time for a Final Approval Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

   e. Require Settlement Class Members who wish to exclude themselves to submit an appropriate and timely written Request for Exclusion by the Opt-Out Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall bind all persons in the Settlement Class;

   f. Require Settlement Class Members who wish to object to the Settlement Agreement to submit an appropriate and timely written statement by the Objection Deadline, as directed in the Settlement Agreement and Class Notice, and advise that a failure to do so shall prevent those Settlement Class Members from doing so;

   g. Require attorneys representing any Settlement Class Member, at the Settlement Class Member's expense, to file a notice of appearance;

   h. Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement; and

   i. Issue related orders to effectuate the preliminary approval of the Settlement Agreement.

  3.3.4. <u>Issuance of Class Notice</u>.  Pursuant to the Preliminary Approval Order to be entered by the Court, the Settlement Administrator shall cause the Class Notice to be issued in accordance with Section 6 below.

  3.3.5. <u>Final Approval Hearing</u>.  In connection with the Preliminary Approval Application, the Parties shall request that the Court schedule and conduct a hearing after dissemination of Class Notice, at which time it will consider whether the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23.  Specifically, Named Plaintiffs, after good faith consultation with counsel for all Defendants, shall request that, on or after the Final Approval Hearing, the Court:  (i) enter the Final Judgment, granting Final Approval of the

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 18 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 18 of
117

Settlement and dismissing with prejudice the Wilson Litigation; (ii) determine the legal fees and expenses that should be awarded to Class Counsel as contemplated in the Settlement Agreement; and (iii) determine the Case Contribution Award, if any, that should be awarded as contemplated by the Settlement Agreement.  Any application for Attorneys' Fees and Expenses shall be made at least forty-five (45) days prior to the Final Approval Hearing.  The Parties agree to support entry of Final Judgment.  The Parties will reasonably cooperate with one another in seeking entry of the Final Judgment.

    3.4.    <u>Condition No. 2:  Finality of Judgment</u>.  The Court shall enter a Final Order and Judgment in substantially similar form as Exhibits E and E-1.  The Final Judgment must be Final in accordance with Section 2.20 above, and shall, among other things:

        a.    Find that (1) the Court has personal jurisdiction over all Settlement Class Members; (2) the Court has subject matter jurisdiction over the claims asserted in the Wilson Litigation; and (3) venue is proper;

        b.    Finally approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23, as fair, reasonable, and adequate;

        c.    Finally certify the Settlement Class for settlement purposes only;

        d.    Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clauses of the United States Constitution;

        e.    Enter Final Judgment with respect to the claims of all Settlement Class Members and dismiss the claims of all Settlement Class Members and the Wilson Litigation with prejudice;

f.      Make the Releases in Section 10 of the Settlement Agreement effective as of the date of the Final Judgment;

g.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims;

h.      Permanently bar and enjoin Named Plaintiffs and all Settlement Class Members from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims;

i.      Find that, by operation of the entry of the Judgment, Named Plaintiffs and all Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the Released Persons from any and all Released Claims, including all claims arising out of, relating to, or in connection with the initiation, settlement, prosecution, or dismissal of the Wilson Litigation.

j.      Authorize the Parties to implement the terms of the Settlement Agreement;

k.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Judgment, and for any other necessary purpose; and

l.      Issue related orders to effectuate the Final Approval of the Settlement Agreement and its implementation.

4.    SETTLEMENT CONSIDERATION, BENEFITS, AND OTHER RELIEF

4.1.    In consideration for the Releases set forth in Section 10, Defendants will provide the following benefits.

4.2.    <u>Injunctive Relief Relating to EverBank.</u>

4.2.1.    Subject to Section 4.4 below, and commencing no later than one hundred and twenty (120) days after the Final Settlement Date, EverBank agrees to the following restrictions with respect to the placement of LPI:

(i)    EverBank does not receive commissions as a result of the placement of LPI, and EverBank agrees that it shall not receive commissions for a period of five (5) years hereafter.

(ii)    EverBank has not entered into any quota share reinsurance arrangements on new or renewal LPI policies, and EverBank agrees that it shall not enter into such agreements for a period of five (5) years hereafter.

(iii)    EverBank does not accept payments from LPI insurers or LPI vendors for any administrative or other service associated with LPI, and EverBank agrees it shall not accept such payments for a period of five (5) years hereafter.

(iv)    EverBank does not place LPI through an insurer or vendor affiliated with EverBank, and EverBank agrees that it shall not place LPI through an insurer or vendor affiliated with EverBank for a period of five (5) years hereafter.

(v)    LPI policies are dual interest for any coverage for which EverBank attempts to recoup from borrowers the LPI premiums paid by EverBank to

the LPI insurer; "dual interest" means that the borrower has the right to file a claim under the policy. EverBank agrees that LPI policies shall be dual interest for a period of five (5) years hereafter.

(vi)    If EverBank elects to place insurance on a borrower's property, unless otherwise required by law or contractual agreement, EverBank establishes the hazard LPI coverage at the Last Known Coverage Amount under the borrower's prior voluntary policy[2] ("LKCA") or, if the LKCA is unavailable to EverBank, at the then-unpaid principal balance of the loan, but not to exceed replacement cost value, if known to EverBank. EverBank agrees that it shall place policies at the LKCA for a period of five (5) years hereafter.

(vii)   If the borrower's voluntary policy will lapse because of non-payment of premium, and if EverBank elects to place insurance on said borrower's property, EverBank advances funds to maintain the borrower's voluntary policy in force, provided that: (a) the loan is escrowed for insurance with EverBank; (b) the borrower has provided EverBank with written authorization allowing EverBank to purchase or renew the insurance policy on the borrower's behalf; and (c) EverBank receives a written or other notice stating that the voluntary insurance premiums have not been paid by the borrower and identifying the amount of the premiums for the borrower's existing policy. The borrower is responsible for all funds advanced pursuant to the escrow agreement between the borrower and

---

[2] "Voluntary policy" refers to a homeowners, flood or wind insurance policy chosen by a borrower as opposed to insurance coverage provided by an LPI policy.

EverBank. EverBank shall comply with these terms for a period of five (5) years hereafter.

(viii)   EverBank credits the borrower's account with LPI refunds within fifteen (15) days of receipt of evidence of voluntary insurance coverage, which complies with EverBank's insurance requirements. EverBank shall continue to comply with this term for a period of five (5) years hereafter.

(ix)   EverBank complies with applicable federal regulations and laws regarding lender-placed insurance, as well as the directives and guidance of its federal regulators, including the Office of the Comptroller of the Currency ("OCC") and the Consumer Financial Protection Bureau ("CFPB"), and it will continue to do so in the future.

4.2.2.   The above provisions set forth in Section 4.2.1 shall also apply to current Affiliates of EverBank. However, if, in the future, the Affiliated entity is no longer affiliated with EverBank, then the above provisions shall no longer apply to such former Affiliates.

4.3.   Injunctive Relief Relating to the Assurant Defendants.

4.3.1.   Subject to Section 4.4 below, and commencing no later than 120 days after the Final Settlement Date, all Assurant, Inc. underwriting Affiliates, including ASIC, SGIC, and VIIC, shall for a period of five (5) years thereafter, not provide directly or indirectly any of the following to EverBank or its Affiliates:

(i)   LPI commissions to EverBank; *provided however*, ASIC, SGIC, and VIIC shall be free to pay commissions to licensed agents not affiliated with EverBank;

(ii)    LPI quota share reinsurance arrangements with EverBank; *provided however*, ASIC, SGIC, and VIIC shall be free to contract for reinsurance arrangements with parties not affiliated with EverBank;

(iii)    Payments from ASIC, SGIC, or VIIC to EverBank for any administrative or other service associated with LPI or other LPI-related services; *provided however*, ASIC, SGIC, and VIIC shall be free to pay for administrative or other services associated with hazard LPI or other LPI-related services to parties not affiliated with EverBank;

(iv)    Accept payments from EverBank for below-cost or free outsourced services provided by ASIC, SGIC, or VIIC to EverBank in connection with LPI; *provided however*, that outsourced services do not include expenses associated with tracking functions that ASIC, SGIC, or VIIC incur for their own benefit to identify and protect themselves from:  (a) exposure to lost premium and losses on properties on which no other insurance coverage is in effect; or (b) administrative costs associated with providing and subsequently canceling LPI on properties on which LPI is not required.

4.4.    The prohibitions and requirements set forth in subsections 4.2.1(iii) and 4.3.1(iii) (above) shall not preclude ASIC, SGIC, or VIIC from reimbursing "implementation expenses" incurred by a servicer, including EverBank, nor shall such prohibitions and requirements preclude EverBank from accepting reimbursement for "implementation expenses." For purposes of the preceding, "implementation expenses" means those expenses that are demonstrably and

directly related to the implementation of a servicer's, including EverBank's, LPI program, including but not limited to:

(i)     Identifying servicer and ASIC, SGIC, or VIIC processes and system requirements;

(ii)    Allocating and assigning resources to be dedicated to the conversion/implementation to ASIC, SGIC, or VIIC;

(iii)   Developing project documentation;

(iv)    Developing the project schedule and controls to manage against that schedule;

(v)     Designing, testing and implementation of information technology systems and interfaces needed to exchange information required for the effectiveness of ASIC, SGIC, or VIIC's LPI program;

(vi)    Diverting mail, telephone, facsimile and web-based communications;

(vii)   Testing accuracy and quality of project deliverables;

(viii)  Training staff on ASIC, SGIC, or VIIC's product and processes;

(ix)    Establishing specific controls to monitor ASIC, SGIC, or VIIC's service to ensure it meets documented requirements; and

(x)     Any similar activity related to the implementation of ASIC, SGIC, or VIIC's LPI program at program inception.

4.4.1 "Implementation expenses" that are reimbursed must be supported by documentary or other physical or electronic evidence (such as, but not limited to invoices, work orders or the like) of their expenditure by the mortgage servicer.  Such expenses must bear a

direct relationship to the implementation of ASIC, SGIC, or VIIC's LPI program at program inception.

4.5. Conflict. Should any provision of Sections 4.2 or 4.3 conflict or be inconsistent with any existing or subsequently adopted state or federal statute, regulation, rule, order or regulatory directive, or any existing or subsequently adopted agency or investor rule or requirement, such statute, regulation, rule, order, regulatory directive or requirement shall control. In that event, the Stipulation of Settlement and any Final Judgment confirming the Stipulation of Settlement shall be deemed amended to conform to such statute, regulation, rule, order, requirement, or regulatory directive. Defendants shall not be liable for engaging in any practice or failing to engage in any practice during the 5-year period for a prospective prohibitory relief where such conduct was authorized by state or federal statute, regulation, rule, order or regulatory directive or by any investor rule or requirement.

4.6. Settlement Monetary Consideration. Those Settlement Class Members who submit a timely, valid, and verified Claim Form, substantially in the form of Exhibit C, by the Claim Deadline in the manner required by this Settlement Agreement, shall receive Claim Settlement Relief under the following terms and conditions.

4.6.1. Overview. There will be two categories of Claim Settlement Relief available to Settlement Class Members, with differing claim requirements: (1) Settlement Class Members who are Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium; and (2) Settlement Class Members who are Borrowers Who Paid Their LPI Premium. As reflected in the Claim Form (Exhibit C), Claimants making Claims must check a box on the Claim Form representing and affirming that they qualify for one of these two categories (and for one of the categories meet certain additional identity confirmation requirements).

4.6.2.  <u>Credit or Payment to Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium</u>.  For those Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium who submit a timely, valid, and verified Claim Form, Defendants shall have the option, at their discretion, of either crediting to the mortgage escrow account for the Settlement Class Member's loan at issue, or paying to that Settlement Class Member via check, an amount equal to 12.5% of the Net Premium charged to the Settlement Class Member during the Settlement Class Period for the LPI Policy purchased by EverBank.

4.6.3.  <u>Payment to Borrowers Who Paid Their LPI Premium</u>.  For those Borrowers Who Paid Their LPI Premium who submit a timely, valid, and verified Claim Form, Defendants shall pay to each such Settlement Class Member via check an amount equal to 12.5% of the Net Premium charged to the Settlement Class Member during the Settlement Class Period for the LPI Policy purchased by EverBank.

4.6.4.  Any Settlement Class Member who had multiple LPI Policies issued on his or her property during the Settlement Class Period need only submit a single Claim Form and said Claim Form will be treated as a claim for relief as to all LPI Policies that were charged by EverBank and not canceled in their entirety during the Settlement Class Period.  Defendants shall only be obligated to honor one valid Claim Form per mortgage loan regardless of the number of borrowers on that loan or the total number of LPI Policies that were charged by EverBank and not canceled in their entirety during the Settlement Class Period.  Where there is more than one mortgagor (*e.g.*, husband and wife), all mortgagors must sign the Claim Form for the Claim Form to be valid.

## 5.    RETENTION OF SETTLEMENT ADMINISTRATOR AND COSTS

5.1.   All Notice and Administrative Costs will be paid by Defendants.

5.2.     The Settlement Administrator shall administer the Settlement in a cost-effective and timely manner.  Without limiting any of its other obligations as stated herein, the Settlement Administrator shall be responsible for Mail Notice, Internet advertising, administration of Claim Settlement Relief, and providing all other related support, reporting, and administration as further stated in this Agreement.  Defendants may direct the Settlement Administrator to assist with various additional administrative tasks in implementing the Settlement as Defendants shall deem appropriate in their sole discretion.

5.3.     Defendants will coordinate with the Settlement Administrator to provide Mail Notice to the Settlement Class, as provided in this Settlement Agreement.  Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement and will take all reasonable steps to ensure that any information provided to it by Defendants will be used solely for the purpose of effecting this Settlement.   Any such information provided to the Settlement Administrator will not be provided to Named Plaintiffs or Class Counsel, except as permitted by Section 7.4.  The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 28 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 28 of
117

5.4.    W-9 Forms.  The Settlement Administrator shall complete and provide to Defendants any W-9 forms necessary for Defendants to pay for the Notice and Administrative Costs and to otherwise implement this Settlement.

## 6.    NOTICE TO THE CLASS

6.1.    Mail Notice.   Subject to the requirements of the Preliminary Approval Order, Notice to those members of the Settlement Class for whom the electronic records of EverBank reflect a last known mailing address, shall be by means of separate first class mailings to those names and addresses.  The Mail Notices shall be mailed not less than ninety (90) days before the date set by the Court for the Final Approval Hearing regarding the Settlement.  The Mail Notices shall detail how Settlement Class Members may request to be excluded from the Settlement Class, how Settlement Class Members may object to the Settlement, and how Settlement Class Members may make a Claim for Settlement Relief as described in Section 4.6 above.  The Mail Notices shall include Instructions and a Claim Form described in Section 7 of this Settlement Agreement, in the forms of Exhibits A, B, and C, attached (provided that the font size, folding, and other printing elements or presentation may be adjusted to accommodate a booklet format and for efficient envelope and postage considerations).  The Parties shall also prepare a Spanish-language translation of the Mail Notice, Claim Instructions, and Claim Form, to be mailed to all Settlement Class Members together with the English language version.  After posting of the Mail Notice by the Settlement Administrator with the United States Postal Service, for any Mail Notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address database in an attempt to obtain better addresses for such returned Notices, and should that database show a more current address, the Settlement Administrator shall post the returned Mail Notice to the more current address; *provided however*, if a determination is made

in good faith by the Settlement Administrator that it is not possible to further update any particular Settlement Class Member's address(es) in sufficient time to repost the Class Notice(s) at least twenty (20) days before the scheduled Final Approval Hearing, then the Settlement Administrator need make no further efforts to provide further Mail Notice to such person(s).

6.2.   Internet Site. No later than the posting of the Mail Notice, the Settlement Administrator shall establish the Settlement Website, which shall contain copies of the Stipulation of Settlement and Exhibits and the Mail Notice. The Settlement Website shall also contain Instructions and a Class Action Claim Form which may be downloaded or printed from the Settlement Website. The Settlement Website shall have a Uniform Resource Locator which identifies it as www.WilsonSettlementInfo.com. The Settlement Websiteshall remain open and accessible through the last day for Settlement Class Members to submit a Claim Form for Settlement Relief. Settlement Class Members may complete, sign and upload a Claim Form to the Settlement Website, provided that for those Claims requiring verification documents, scanned copies of those verification documents are uploaded to the Settlement Website with the appropriate Claim number to associate the upload with the Claim. Settlement Class Members shall also have the option of completing their Claim Form online within the Settlement Website, utilizing an electronic signature format; *provided however*, for those Claim Forms requiring verification documents, the Claimant must upload scanned copies of those verification documents to the Settlement Website, with the appropriate Claim number to associate the upload with the Claim Form.

6.3.   Publication. A similar but abbreviated Summary Publication Notice of Class Action, Proposed Settlement, Final Approval Hearing, and Right to Appear shall be published twice not less than forty-five (45) days before the date set by the Court for the Final Approval

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 30 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 30 of
117

Hearing regarding this Settlement, which abbreviated Summary Publication Notice shall not be less than 1/8 page in size, and shall be published twice in *USA Today* (on dates falling on Monday through Thursday). The abbreviated Summary Publication Notice shall detail how Settlement Class Members may request to be excluded from the Settlement Class, how Settlement Class Members may object to the Settlement, and how Settlement Class Members may access the Settlement Website to download a Claim Form, and toll-free phone number where they may call to request further information on the Settlement. The form of the Summary Publication Notice shall be agreed upon by the Parties, and the font size, layout, and other presentation elements shall be adjusted to accommodate publication considerations.

6.4.   <u>Claim Form.</u>   As reflected in Exhibits B and C, for Settlement Class Members (both Borrowers Who Were Charged But Did Not Pay And Still Owe Their LPI Premium and Borrowers Who Paid Their LPI Premium) to submit a valid claim, they must provide all of the following information and make the following written affirmations on the Claim Form: (a) Claimant's current address, phone number, date of birth, and the last four numbers of Claimant's Social Security Number; (b) that Claimant is or was during the Settlement Class Period listed as an insured or additional named insured under an LPI Policy insuring improvements to the Claimant's real property; (c) that Claimant was charged by EverBank a Premium for his or her LPI Policy and that the cost of the LPI Policy was not cancelled in full after issuance; (d) that since the issuance of the LPI Policy, Claimant has not filed a Petition under Chapter 7 of the United States Bankruptcy Code, and Claimant's indebtedness on their residence secured by their deed of trust or mortgage has not been compromised or discharged in bankruptcy; (e) that Claimant has been charged by EverBank and still owes and has not paid, the premium for an LPI policy covering their Residential property placed through EverBank *or* has been charged by

EverBank and has paid EverBank for some or all of the premium on an LPI policy covering their Residential property and placed through EverBank; and (f) that Claimant attests and affirms all of the foregoing information under the following declaration: "I declare (or certify, verify, or state) under penalty of perjury that the information provided by me on this Claim Form is true and correct." All mortgagors on the mortgage for the property insured by the LPI Policy must complete and sign the Claim Form.

6.4.1. In order for Borrowers Who Paid Their LPI Premium to submit a valid Claim Form, they must make the affirmations set forth in Section 6.4 and also confirm their identity by one of the following methods:

a.     The signature of a witness who is 18 years of age or older representing and affirming that they have witnessed the Claimant sign the Claim Form, and this witness affirmation shall include the following: "I declare (or certify, verify, or state) under penalty of perjury that I witnessed the signing of this Claim Form by the Claimant and the foregoing is true and correct;" or

b.     Provide a copy of a form of identification that contains a signature and photograph of the Claimant; or

c.     Provide a copy of an EverBank mortgage statement issued to the Claimant; or

d.     Provide a notarial signature affirming that the Claimant executed the Claim Form making the required affirmations under oath in the presence of the notary, and bearing evidence of the notarial authority in compliance with the law of the state in which it is being executed (*e.g.*, a seal, *etc.*).

7.    CLAIM FILING, REVIEW, AND APPROVAL PROCESS

7.1.   <u>Claim Filing Process.</u>  Settlement Class Members shall be permitted to make a claim for Claim Settlement Relief in the following ways:  (1) Settlement Class Members may mail (either through posting with the United States Postal Service or through a private mail carrier, such as United Parcel Service or Federal Express, provided that proof of the mail date is reflected on the label of the mailing) a written Claim Form providing the information, affirmations, and where appropriate, the identity confirmation required in Section 6.4.1 above, to the Settlement Administrator, on a date no later than the Claim Deadline.  A written Claim Form will also be available on the Settlement Website for Settlement Class Members to download or print out and mail to the Settlement Administrator pursuant to this Section; (2) Settlement Class Members may submit their Claim Forms by uploading scanned copies of the Claim Form, along with and any required verification documents to the Settlement Website; or (3) Settlement Class Members shall also have the option of completing their Claim Form online within the Settlement Website, utilizing an electronic signature format; *provided however,* for those Claim Forms requiring verification documents, the Claimant must upload scanned copies of those verification documents to the Settlement Website, with the appropriate claim number to associate the upload with the Claim Form.  Any Settlement Class Member who does not mail, or upload or complete online, a completed Claim Form by the Claim Deadline shall be deemed to have waived any claim to Claim Settlement Relief and any such Claim Form will be rejected.

7.2   <u>Deficiency Process:</u>  If any submitted Claim Forms are deemed invalid for any reason (e.g. because they are defective or incomplete in any way), the Administrator shall promptly advise the Parties.  The Settlement Administrator shall send a notice to claimants' submitting deficient claims identifying the deficiency.  Any defective Claim Form may be cured

and shall be accepted by the Administrator so long as a new non-deficient claim is mailed to the Administrator within 30 days after the date of the original notice of deficiency

    7.3.   <u>Claim Review Process.</u> Following Final Approval of the Settlement, the Settlement Administrator shall confirm that each Claim Form submitted is in the form required, that each Claim Form includes the required affirmations, information, and, where appropriate, identity confirmation detailed in Section 6.4.1 above, that each Claim Form was submitted in a timely fashion, and that the Claimant is a member of the Settlement Class. Full compliance with the requirements of Section 6 and the Claim Form shall be necessary for the submission of a valid claim, and the absence of any of these requirements shall invalidate the proffered claim. All such claim criteria shall be strictly enforced. Any Claimant's failure to provide any of the required affirmations, information, or where appropriate, identity confirmation on the Claim Form, shall result in the putative claim being deemed invalid, and no Defendant shall have any further obligation to process or make any settlement payment or account credit on such invalid claim. The Settlement Administrator shall not receive any incentive for denying claims.

    7.3.1.   To aid in the completion and processing of Claim Forms, the Settlement Administrator shall establish a toll-free interactive voice response phone number with script recordings of information about this Settlement, including information about the Claim Form, utilizing the relevant portions of the language contained in the Notice and Claim Form. The phone number shall remain open and accessible through the last day for Settlement Class Members to submit a Claim Form. The Settlement Administrator shall make reasonable provision for Class Counsel to be promptly advised of recorded messages left on the phone number by Settlement Class Members concerning the Wilson Litigation and/or this Settlement, so that Class Counsel may timely and accurately respond to such inquiries; *provided however,*

the Administrator shall review the recorded messages before providing them to Class Counsel, and if one or more of the messages requests a blank Claim Form or other similar administrative assistance only, then the Administrator shall handle such administrative request(s), but the Administrator shall provide all other messages to Class Counsel for any further response to the Settlement Class Member.

    7.4.    Claim Payment. Upon confirmation by the Settlement Administrator that the Claim Form is valid, the Settlement Administrator shall make a determination as to the amount of the claim in accordance with the Net Premium information appearing in Defendants' electronic records and the formula for providing the Claim Settlement Relief set forth in Section 4.6 (including Sections 4.6.1, 4.6.2, 4.6.3 and 4.6.4) above.

    7.4.1.    Right to Audit. Subject to the provisions in Section 7.2.1 above, Defendants shall have the right to audit each Claim Form, including reviewing the individual loan and/or insurance records for each Claimant who submits a Claim Form. If Defendants' audit reveals that a Claim Form contains inaccurate information, Defendants shall notify the Settlement Administrator as to the inaccuracy of the claim prior to the deadline for processing by the Settlement Administrator the claim pursuant to Sections 7.4.3 and 7.4.4 below, while also providing written notification of the inaccurate claim to Class Counsel. At Defendants' discretion, the claim shall be processed in accordance with the information from Defendants' records (rather than the inaccurate information on the Claim Form), and may, if necessary, be denied. Defendants shall complete their audit of claims no later than one-hundred and fifty days (150) days after the Final Settlement Date, and shall have the right to request from the Settlement Administrator any and all information necessary to conduct and complete their audit.

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 35 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 35 of
117

7.4.2.   <u>Notification</u>.  Within ninety (90) days after the Final Settlement Date, the

Settlement Administrator shall provide the Parties with a list of all Settlement Class Members

who filed a Claim Form, whether the claim was rejected or accepted, and if rejected, the reason it

was rejected, and if accepted, the amount to be paid by Defendants or to be credited by

EverBank to the Claimant's escrow account.  The Parties will use their best efforts to amicably

resolve any dispute about the processing of any Claim Form.

7.4.3.   <u>Claimants who are Borrowers Who Paid Their LPI Premium</u>.  The

Settlement Administrator shall have one hundred eighty (180) days after the Final Settlement

Date within which to process the Claim Forms and remit the appropriate amounts by check to the

Claimants who are Borrowers Who Paid Their LPI Premium.  Any check that is remitted to a

Claimant who falls within the group of Borrowers Who Paid Their LPI Premium and that is not

negotiated within ninety (90) days after issuance shall be canceled (the checks shall state "void

after 90 days"), and Defendants shall not have any further obligation to continue efforts to

distribute Claim Settlement Relief to such Claimant.  The Settlement Administrator shall refund

to Defendants all funds on deposit to fund checks that become "void after 90 days."  No interest

shall be included as an element of, or be payable or paid on, any claimed amount.

7.4.4.   <u>Claimants Who Are Borrowers Who Were Charged But Did Not Pay And</u>

<u>Still Owe Their LPI Premium</u>.  Defendants shall have ninety (90) days after the Settlement

Administrator provides a list of valid claims within which to either credit the appropriate amount

to the escrow accounts of Claimants who are Borrowers Who Were Charged But Did Not Pay

And Still Owe Their LPI Premium or to cause the Settlement Administrator to issue checks in

the appropriate amount, in the sole discretion of EverBank.  No interest shall be included as an

element of, or be payable or paid, on any credited amount.  Any check that is remitted to a

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 36 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 36 of
117

Claimant who falls within the group of Borrowers Who Were Charged But Did Not Pay And

Still Owe Their LPI Premium and that is not negotiated within ninety (90) days after issuance

shall be canceled (the checks shall state "void after 90 days"), and Defendants shall not have any

further obligation to continue efforts to distribute Claim Settlement Relief to such Claimant. The

Settlement Administrator shall refund to Defendants all funds on deposit to fund checks that

become "void after 90 days."

      7.4.5. <u>Funding</u>. Defendants shall fund all amounts required by the Settlement

Administrator for distribution of Claim Settlement Relief to Claimants.

      7.5. <u>Information Available to Class Counsel.</u> Class Counsel shall have the right to

interact directly with the Settlement Administrator regarding the administration of this

Settlement provided that: (a) Class Counsel pay for any costs associated with such interactions;

and (b) Defendants are notified of all such interactions. Upon the reasonable request of Class

Counsel, the Settlement Administrator shall inform Class Counsel, among other things and with

the exception of confidential information, non-public personal information, and other

information protected by privacy laws, of the amount of any Settlement Class Member's LPI Net

Premium associated with a Claimant's LPI Policy reflected in the electronic information

provided to the Settlement Administrator by Defendants. Nothing in this Section or this

Settlement Agreement shall authorize the Settlement Administrator to disclose to Class Counsel

any confidential information, non-public personal information, and other information protected

by privacy laws.

**8.**     **COVENANTS**

      The Parties covenant and agree as follows:

363327.1           36

8.1.   <u>Covenants Not to Sue</u>.  Named Plaintiffs and the Settlement Class Members covenant and agree:  (i) not to file, commence, prosecute, intervene in, or participate in (as class members or otherwise) any action in any jurisdiction based on or relating to any of the Released Claims, or the facts and circumstances relating thereto, against any of the Released Persons; (b) not to organize or solicit the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Persons; and (c) that the foregoing covenants and this Agreement shall be a complete defense to any of the Released Claims against any of the Released Persons.

8.2.   <u>Cooperation</u>.  The Parties agree to cooperate reasonably and in good faith with the goal of obtaining entry of a Final Judgment as quickly as is reasonably practicable and expeditiously reaching agreement on the matters requiring mutual agreement as set forth in this Settlement Agreement, including, but not limited to, the expeditious agreement to the terms of all Class Notice documents and settlement administration protocols, and the preparation and execution of all other reasonable documents necessary to achieve Final Approval of the Settlement by the Court, except that motions or applications for Preliminary and Final Relief shall be filed by Plaintiffs, following consultation with Defendants, who absent good cause after such consultations shall not object to such filings.  Further, the Parties shall consult with mediator Rodney Max as necessary in effectuating this Section.

9.      **REPRESENTATIONS AND WARRANTIES**

9.1.    Named Plaintiffs represent and warrant that they are the sole and exclusive owner of all Released Claims and that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Persons, and further covenant that they will not assign or otherwise transfer any interest in any of Named Plaintiffs' Released Claims.

9.2.    Named Plaintiffs represent and warrant that they have no surviving claim or cause of action against any of the Released Persons with respect to any of the Released Claims.

9.3.    The Named Plaintiffs and Class Counsel further represent that there are no outstanding liens or claims against the Wilson Litigation, it being recognized that the Named Plaintiffs will solely be charged with the responsibility to satisfy any other liens or claims asserted against the Wilson Litigation.

9.4.    The Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations among their counsel, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the Parties assumes the risk of mistake as to facts or law.

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 39 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 39 of
117

## 10.    RELEASES

10.1.    <u>Released Claims</u>.   Upon the Final Settlement Date, the Releasing Persons shall, by operation of the Final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each Settlement Class Member may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Wilson Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning EverBank's placement, or the Assurant Defendants' issuance, of LPI Policies during the Settlement Class Period, including but not limited to conduct, policies or practices concerning LPI Policies or to charges for EverBank's Placement of LPI Policies during the Settlement Class Period.  In agreeing to this Release, Named Plaintiffs explicitly acknowledge that unknown losses or claims could possibly exist and that any present losses may have been underestimated in amount or severity.

10.1.1. The Release in Section 10.1 shall include, but not be limited to, all claims related to any LPI placement regardless of whether the LPI Policy was entirely or partially canceled; all claims related to EverBank's insurance requirements; the relationship, whether contractual or otherwise, between EverBank and the Assurant Defendants regarding LPI,

including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by EverBank; the payment or receipt of commissions, income or benefits relating to reinsurance agreements, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by EverBank; any alleged "tying" arrangement involving EverBank and LPI; any alleged breach of contract, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, or any other alleged breach of any common law duty or obligation or any alleged violation of any federal or state statute or regulation, by EverBank concerning LPI Policies; any alleged tortious interference by the Assurant Defendants with mortgage loans serviced by EverBank; the disclosure or non-disclosure of any payment, expenses, fees, charges, or features pertaining to or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by EverBank; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by EverBank; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by EverBank; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by EverBank.

10.1.2. The Release in Section 10.1 shall not cover claims arising after the close of the Settlement Class Period, nor insurance claims for losses relating to properties insured under any LPI Policy placed or charged for by EverBank. Nothing in Section 10.1 shall be deemed a release of any Settlement Class Member's respective rights and obligations arising under this Agreement. Further, nothing in Section 10.1 or any other provision of this Stipulation

and Settlement Agreement shall be deemed a release of any claims by borrowers who were charged for LPI that was purchased or placed by mortgage servicers other than EverBank.

10.1.3. Except to the extent that any such obligation is being released pursuant to Section 10.1, this Settlement Agreement shall not release Defendants from any existing obligation to any Settlement Class Member under any loan, note, mortgage, or deed of trust. This provision is not meant to and does not limit the Release in Section 10.1.

10.2.   Without in any way limiting their scope, these Releases cover not only claims for amounts charged for LPI Premiums but also, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, or any other fees, costs, and/or disbursements incurred by Class Counsel, the Named Plaintiffs, or any Settlement Class Members in connection with or related in any manner to the Wilson Litigation, the settlement of the Wilson Litigation, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Settlement Agreement.

10.3.   In connection with the foregoing Releases, the Releasing Persons shall be deemed, as of the entry of the Final Judgment, to have waived any and all provisions, rights, benefits conferred by Section 1542 of the California Civil Code, and any statute, rule and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides that:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

To the extent that anyone might argue that these principles of law are applicable—notwithstanding that the Parties have chosen Florida law to govern this Settlement Agreement—the Named Plaintiffs hereby agree, and each Settlement Class Member will be deemed to agree,

that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished, and released. The Named Plaintiffs recognize, and each Settlement Class Member will be deemed to recognize, that, even if they may later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Judgment, they fully, finally, and forever settle and release any and all claims covered by these Releases. The Parties acknowledge that the foregoing Releases were bargained for and are a material element of the Agreement.

10.4.   This Agreement and the Releases herein do not affect the rights of persons who would otherwise fall within the definition of the Settlement Class who timely and properly submit a Request for Exclusion from the Settlement in accordance with the requirements in Section 11 of this Settlement Agreement.

10.5.   The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases contained in the Agreement. The Court shall retain jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

10.6.   Upon issuance of the Final Judgment: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members; (ii) the Released Persons shall not be subject to liability or expense for any of the Released Claims to any Settlement Class Member(s); (iii) Settlement Class Members shall be permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or

otherwise) any action in any jurisdiction based on or relating to any of the Released Claims or the facts and circumstances relating thereto; and (iv) Settlement Class Members shall be permanently barred and precluded from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims or the facts and circumstances relating thereto.

10.7.   Nothing in this Settlement Agreement and Releases shall preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed therein.  The Releases set forth herein are not intended to include the release of any rights or duties of the Parties arising out of the Settlement Agreement, including the express warranties and covenants contained herein.

**11.    OPT-OUT RIGHTS**

11.1.   A person who would otherwise fall within the definition of the Settlement Class who wishes to be excluded from the Settlement Class must do so in writing.  In order to opt-out, persons who would otherwise fall within the definition of the Settlement Class must complete and send to the Settlement Administrator, at the address listed in the Class Notice and on the Settlement Website for this Settlement, a Request for Exclusion that is postmarked no later than the Opt-Out Deadline, as specified in the Class Notice.  The Request for Exclusion must:  (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that

indicates a desire to be excluded from the Settlement Class in the Wilson Litigation, such as "I hereby request that I be excluded from the proposed Settlement Class in the Wilson Class Action." Mass or class opt outs shall not be allowed.

11.1.1. Any person who would otherwise fall within the definition of the Settlement Class who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class, and shall be bound by all subsequent proceedings, orders, and judgments.

11.1.2. Any person who would otherwise fall within the definition of the Settlement Class who desires to opt out must take timely affirmative written action pursuant to this Section (Section 11), even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the Released Persons, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the Released Persons.

11.2.    Any person who would otherwise fall within the definition of the Settlement Class who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.3.    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests for Exclusion within seven (7) business days after the Opt-Out Deadline.

11.4.    If more than five percent (5%) of the total number of persons who would otherwise fall within the definition of the Settlement Class properly and timely exercise their

right to opt out of the Settlement, the Parties stipulate and agree that Defendants shall have the right to terminate this Agreement without penalty or sanction.

11.5    All persons who would otherwise fall within the definition of the Settlement Class who do not properly opt out of the Settlement Class will be deemed to be Settlement Class Members for all purposes under the Agreement, and upon the Final Settlement Date, will be bound by its terms, regardless of whether they receive any monetary relief or any other relief.

## 12.    OBJECTIONS

12.1.    Overview.  Any Settlement Class Member may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement.

12.2.    Process.  Any Settlement Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.  The written objection must be filed with the Clerk of Court, and mailed (with the requisite postmark) to Class Counsel and Defense Counsel (at the addresses identified in Section 19), no later than the Objection Deadline.

12.2.1. The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include: (a) the case name and number; (b) the name, address, telephone number of the Settlement Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for the objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel.

12.2.2. Any Settlement Class Member who fails to object to the Settlement in the manner described in the Class Notice and consistent with this Section shall be deemed to have

waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement or the terms of the Agreement by appeal or other means.

12.3.   Appearance.   Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with Section 12.2 and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Settlement Class Member:  (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice Of Intention To Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline.

12.3.1. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member will present to the Court in connection with the Final Approval Hearing.

12.3.2. Any Settlement Class Member who does not file a Notice of Intention to Appear in accordance with the deadlines and other specifications set forth in the Agreement and Class Notice shall not be entitled to appear at the Final Approval Hearing and raise any objections.

## 13.   SETTLEMENT APPROVAL

13.1.   Within ten (10) days of this Agreement's date, Named Plaintiffs shall apply to the Court for entry of the proposed Preliminary Approval Order and setting of a Final Approval Hearing.

13.2.   Not later than fifteen (15) days before the Final Approval Hearing, the Settlement Administrator will provide Class Counsel and Defendants' counsel with an affidavit or declaration by a competent affiant or declarant, attesting that the Class Notice has been disseminated in accordance with the Preliminary Approval Order and identifying the number of Requests for Exclusion to the Settlement.   Not later than ten (10) days before the Final Approval Hearing, Class Counsel shall file the affidavit or declaration with the Court prior to the Final Approval Hearing.

13.3.   Named Plaintiffs shall move for and brief the issue of Final Approval of the Settlement in accordance with the Preliminary Approval Order or such other or further order of the Court.

13.4.   At the Final Approval Hearing, Named Plaintiffs shall move for entry of the proposed Judgment and present arguments in support thereof.

13.5.   Promptly after the Final Settlement Date, Settlement Class Members shall dismiss with prejudice all claims, actions, or proceedings that have been brought by or involve any Settlement Class Member in any other jurisdiction and that are released pursuant to this Settlement Agreement.

## 14.   CERTIFICATION OF NATIONWIDE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

14.1.   Prior to applying for entry of the Preliminary Approval Order, Class Counsel and Named Plaintiffs will file a Second Amended Complaint adding VIIC as a defendant, conforming the definition of the Class therein to that appearing in Section 3 above and dismissing the TILA claim against EverBank.  All Parties consent to this amendment solely for purposes of effectuating this Settlement.

14.2.   After the Preliminary Approval Order is entered, Named Plaintiffs shall move for Final Approval of the Settlement and entry of Final Judgment, and shall request that the preliminary certification of the nationwide Settlement Class for settlement purposes be made Final.

14.3.   If the Settlement is not granted Final Approval, or this Agreement is otherwise terminated or rendered null and void, the certification of the above-described nationwide Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for trial purposes in this or any other action can be or have been satisfied; in such circumstances, Defendants reserve and shall have all rights to challenge certification of a nationwide Settlement Class or any other Class for trial purposes in the Wilson Litigation, or in any other action, on all available grounds as if no nationwide Settlement Class had been certified.

## 15.   ATTORNEYS' FEES, EXPENSES, AND NAMED PLAINTIFF'S CASE CONTRIBUTION AWARD

15.1.   Any application for Attorneys' Fees and Expenses shall not exceed $2,500,000.

15.2.   Defendants agree not to oppose or otherwise object to an application by Class Counsel for the award of Attorneys' Fees and Expenses in the Wilson Litigation in an amount not to exceed $2,500,000.  Class Counsel agree to not to seek an amount of Attorneys' Fees and Expenses in excess of $2,500,000.  Class Counsel agree that the amounts of such costs and fees awarded shall compensate them for all legal work in the Wilson Litigation up to and including the date of the Final Judgment, including any appeal of the Judgment, as well as for all legal work and costs that may be incurred in the Wilson Litigation after the date of the Final Judgment.  Provided any award of Attorneys' Fees and Expenses does not exceed $2,500,000, Defendants shall pay the Attorneys' Fees and Expenses made by the Court in the Final Judgment

Case 1:14-cv-22264-BB   Document 154-1   Entered on FLSD Docket 12/14/2015   Page 49 of 61
Case 1:14-cv-22264-BB   Document 149-1   Entered on FLSD Docket 07/27/2015   Page 49 of
117

within five (5) days after the Final Settlement Date.  If for any reason an award of Attorneys'

Fees and Expenses exceeds $2,500,000, within five (5) days of the order of such an award,

Defendants shall have the right, and they may, within their sole discretion, terminate this

Settlement and have this Settlement Agreement deemed null and void.  In the event the Court

awards Class Counsel less than $2,500,000 in Attorneys' Fees and Expenses, this Settlement

Agreement shall nonetheless remain in full force and effect.

15.3.    Within thirty (30) days after the entry of the Final Judgment, Defendants shall

deposit the amount of Attorneys' Fees and Expenses awarded by the Court (not to exceed

$2,500,000) in an interest bearing account of Defendants' choosing.  The Attorneys' Fees and

Expenses (not to exceed $2,500,000), along with any interest earned, shall be disbursed to the

firm Trust Account of Kozyak, Tropin & Throckmorton, P.A. within five (5) business days after

the Final Settlement Date.  If for any reason the Judgment does not become Final within the

meaning of Section 2.20 (*e.g.*, the Final Settlement Date does not occur), all money in the

interest bearing account, including the interest accumulated, shall be returned to Defendants

within five (5) days after the occurrence of the condition or event that prevents the Final

Judgment from becoming Final.

15.4.    In addition to the Claim Settlement Relief otherwise due to a Settlement Class

Member of the Settlement Class, Defendants agree to pay each Named Plaintiff a Case

Contribution Award as awarded by the Court in an amount not to exceed the sum of $5,000.00

each, and shall deliver to Named Plaintiffs' Counsel separate checks made payable to each

Named Plaintiff awarded a Case Contribution Award, within five (5) days after the Final

Settlement Date.

15.4.1.  If the Court awards any of the Named Plaintiffs' Case Contribution Awards, they shall each provide to Defendants a completed W-9 form within 10 business days after the Final Judgment.

15.5.   The procedure for and the grant or denial or allowance or disallowance by the Court of the Attorneys' Fees and Expenses and Case Contribution Awards are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the applications for Attorneys' Fees and Expenses and Case Contribution Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the Finality of Judgment approving the Agreement and the Settlement, except as provided for in Section 15.2.

## 16.    CONFIDENTIALITY; COMMUNICATIONS TO MEDIA AND PUBLIC

16.1.   The Parties agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with Named Plaintiffs' Preliminary Approval Application.

16.2.   The Parties agree further that both before and after Preliminary Approval of the Settlement, they shall not publish a press release or a release on the Internet concerning the Settlement without the prior written review and approval of the Named Plaintiffs or Defendants, as the case may be, which approval shall not be unreasonably withheld or delayed.

16.3.   The Parties agree that both before and after Preliminary Approval, if any print or electronic media outlet contacts any party or its counsel seeking information or a statement regarding the Settlement, in the absence of a response agreed upon by all Parties, no information

will be provided in response to such inquiries except to the extent such information appears as part of the public record.

16.4.   For the avoidance of any doubt, nothing in this Settlement Agreement prevents the Parties or the Released Parties from making any disclosures required to effectuate this Settlement Agreement or from making any disclosures required by law.

## 17.   TERMINATION AND EFFECT THEREOF

17.1.   This Agreement shall be terminable by any Party if any of the conditions of Section 3 are not fully satisfied, or if the conditions of Section 11.4 occur, unless they are waived in writing signed by authorized representatives of the Parties.

17.2.   This Agreement shall also terminate at the discretion of any Named Plaintiff or Defendant if:  (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that is material, including without limitation, the terms or relief, the findings or conclusions of the Court, the provisions relating to Class Notice, the definition of the Settlement Class, and/or the terms of the Releases; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, or restricts, or expands, any portion of the Final Judgment, or any of the Court's findings of fact or conclusions of law, that is material; or (3) if all of the conditions required to be met before the Final Settlement Date do not occur.

17.3.   If this Agreement is terminated as provided herein, either automatically or by a Party, the Settlement shall be null and void from its inception and the Parties will be restored to their respective positions in the Wilson Litigation as of the date of Preliminary Approval.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in the Wilson Litigation, or in any other proceeding for

any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated, *nunc pro tunc.*

## 18.   MISCELLANEOUS PROVISIONS

18.1.   Named Plaintiffs and Settlement Class Members who have made or who make a claim for benefits in the future on their LPI Policy will not be affected in any way as a result of their participation in this Settlement, and may participate in this Settlement to the same extent as Named Plaintiff or Settlement Class Members who have not made a claim on their LPI Policy.

18.2.   There will be no offset to any amounts received by any Named Plaintiffs or Settlement Class Member under this Settlement to account for any payments to Named Plaintiffs or Settlement Class Members under any settlement between EverBank and any governmental or private entity.  Nor will any payments to any Named Plaintiffs or Settlement Class Member be an offset against any payments to Named Plaintiffs or Settlement Class Members under any other settlement between EverBank and any governmental or private entity unless such settlement would relate to an action (that at this time does not exist) expressly directed to the practices covered by the Releases in this Agreement.

18.3.   The Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.

18.4.   The Parties intend the Settlement to be a Final and complete resolution of all disputes between them with respect to the Wilson Litigation. The Settlement compromises claims that are contested and will not be deemed an admission by any Party as to the merits of any claim or defense.  The Parties agree that the consideration provided to the Settlement Class

and the other terms of the Settlement were negotiated in good faith and at arm's length by the Parties, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The amounts paid are to compromise the claimants' claims for damages and the amounts paid represent the claimants' compensation for such alleged damages.

18.5.    Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claims, or of any wrongdoing or liability of any Defendant; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault, omission, wrongdoing, or liability of any Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Defendants may file this Agreement and/or the Judgment in any action that may be brought against them in order to support any defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

18.6.    All agreements made and orders entered during the course of the Wilson Litigation relating to the confidentiality of information will survive this Agreement.

18.7.    All of the Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

18.8.    This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

18.9.    This Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties concerning the Wilson Litigation, and no representations, warranties, or

inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized herein. Except as otherwise provided herein, the Parties will bear their own respective costs.

18.10.   Class Counsel, on behalf of the Settlement Class, are expressly authorized by Named Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class that Class Counsel deem appropriate.

18.11.   This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of counterparts will be submitted to the Court.

18.12.   This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

18.13.   The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

18.14.   None of the Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Party as the drafter thereof.

18.15.   The Parties stipulate to stay all proceedings in the Wilson Litigation until the approval of this Agreement has been Finally determined, except the stay of proceedings shall not

prevent the filing of any motions, affidavits, and other matters necessary to obtain and preserve Final Approval of this Agreement.

18.16.  Except as agreed by the Parties in writing, within thirty (30) days after the Final Settlement Date, Class Counsel shall destroy all electronically stored information, testimony, or other information produced by Defendants in the Wilson Litigation, including the Wilson Mediation, and shall so certify in writing.

18.17.  The Settlement shall be governed by the laws of the State of Florida, except to the extent that the law of the United States governs any matters set forth herein, in which case such federal law shall govern.

18.18.  The following principles of interpretation apply to the Agreement:  (a) the plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be; (b) references to a person are also to the person's successor-in-interest; and (c) whenever the words "include," includes," or 'including" are used in the Agreement, they shall not be limiting, but rather shall be deemed to be followed by the words "without limitation."

18.19.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of the notices of the Settlement Class after the Judgment is entered.

## 19.   NOTICES

19.1.  All Notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by fax and mail to the following addresses:

All Notices to Class Counsel shall be sent to Class Counsel, c/o:
Adam M. Moskowitz
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd., 9th Floor

Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
*Counsel for Named Plaintiff and Class*

<u>All Notices to Defense Counsel shall be sent to Defense Counsel, c/o:</u>

Irene C. Freidel
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Telephone:  (617) 261-3100
Facsimile:   (617) 261-3175
*Counsel for EverBank*

Frank G. Burt
Carlton Fields Jorden Burt, P.A.
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington DC 20007-5208
Telephone: (202) 965-8140
Facsimile: (202) 965-8104
*Counsel for Assurant Defendants*

    19.2.    The notice recipients and addresses designated above may be changed by written agreement of the Parties.

    19.3.    Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, Requests for Exclusion, or other similar documents received from Settlement Class Members in response to the Class Notice.

IN WITNESS WHEREOF, the Parties have executed and caused this Settlement on the dates set forth below.

Dated: _____     By: _____

Name: MICHAEL C. KOSTER
Title: EXEC, V.P.

*EverBank*

Dated: _____     By: _____

Name:
Title:

*American Security Insurance Company*

Dated: _____     By: _____

Name:
Title:

*Voyager Indemnity Insurance Company*

Dated: _____     By: _____

Name:
Title:

*Standard Guaranty Insurance Company*

Dated: _____     By: _____

Adam Moskowitz

*Counsel for Plaintiffs
and the Settlement Class*

363327.1

IN WITNESS WHEREOF, the Parties have executed and caused this Settlement on the dates set forth below.

Dated: _____          By: _____
                                     Name:
                                     Title:

                                     *EverBank*

Dated: July 16, 2015             By: _____
                                     Name: PETER J. LOUGHLIN
                                     Title: VICE PRESIDENT

                                     *American Security Insurance Company*

Dated: July 16, 2015             By: _____
                                     Name: PETER J. LOUGHLIN
                                     Title: VICE PRESIDENT

                                     *Voyager Indemnity Insurance Company*

Dated: July 16, 2015             By: _____
                                     Name: PETER J. LOUGHLIN
                                     Title: VICE PRESIDENT

                                     *Standard Guaranty Insurance Company*

Dated: _____          By: _____
                                     Adam Moskowitz

                                     *Counsel for Plaintiffs
                                     and the Settlement Class*

363327.1                              57

Dated: ___07/17/2015___          By: _____

                                      Dwight Wilson


Dated: _____          By: _____

                                      Jesus A. Avelar-Lemus


Dated: _____          By: _____

                                      Jessie Cross


Dated: _____          By: _____

                                      Mattie Cross


363327.1                                    58

Dated: _____     By: _____
                                  Dwight Wilson

Dated: 7-17-2015             By: _____
                                  Jesus A. Avelar-Lemus

Dated: _____     By: _____
                                  Jessie Cross

Dated: _____     By: _____
                                  Mattie Cross

363327.1                                    58

Dated: _____     By: _____
                                Dwight Wilson


Dated: _____     By: _____
                                Jesus A. Avelar-Lemus


Dated: 7-17-2015           By: _____
                                Jessie Cross


Dated: 7-17-15             By: _____
                                Mattie Cross