UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-cv-22264-BLOOM/VALLE

DWIGHT WILSON, JESUS A. AVELAR-
LEMUS, JESSIE CROSS, and MATTIE
CROSS, on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.

EVERBANK, N.A., STANDARD
GUARANTY INSURANCE COMPANY,
AMERICAN SECURITY INSURANCE
COMPANY, and VOYAGER INDEMNITY
INSURANCE COMPANY,

       Defendants.

_____/

### CLASS COUNSEL'S MOTION FOR ORDER TO SHOW CAUSE REQUIRING JABRANI OBJECTORS OR ANY OF THEIR THREE COUNSEL TO SIMPLY APPEAR AT THE FINAL FAIRNESS HEARING

Based upon the unique facts of this case, Class Counsel respectfully requests that the Court enter a Show Cause Order simply requiring the Jabrani Objectors or any of their three counsel, one of whom practices in South Florida, to appear at the Final Fairness Hearing (the "Hearing") and explain any basis to continue with their pending objection in light of the Jabranis' recent sworn testimony.  Class Counsel believes that the that the Jabranis' counsel will withdraw their objection if the Court orders them to appear at the hearing, because recent testimony confirms that there is, in fact, no valid basis for the objection.  In fact, the Jabranis' depositions confirmed that their objection in this case represents their third attempt, with their professional-objector counsel, to leverage fees from Class Counsel in exchange for withdrawing an objection, which would avoid many years of delay to the entire class and the time and expense arising from a frivolous appeal.

1

This is the third lender-placed insurance class action settlement in this district to which the Jabranis have objected, and their particular objections to the settlement have been overruled at least seven times before in this district alone.  In fact, district courts have granted final approval to no fewer than nine force-placed insurance class action settlements in the past three years with the same claims structure and formula for calculating class counsel's fees.  The Jabranis' objections are baseless, and both the Jabranis and their counsel know it.

In light of these facts, Class Counsel deposed the Jabranis just last week on the basis for their objection.  Their testimony is simply startling in light of the several admissions made by the Jabranis.

Mr. Jabrani first testified under oath that his objections in two prior lender-placed insurance class actions had "improved" the settlements in those cases because he personally pocketed thousands of dollars:

A: It improved my case, I know that. It improved my personal settlement amount.

Q: By getting more money?

A. By getting more money than what Wells Fargo was going to give.

Q. So the Wells Fargo settlement was improved because Mr. Jabrani got more money in his pocket?

A. That's right.

Q. The SunTrust deal settlement was improved because, again, you, Mr. Jabrani, got more money than you would have gotten, right?

A. That's right.

Q. Is there any other way, to your knowledge, that the SunTrust and the Wells Fargo settlements were improved for anybody else?

. . .

A.  I was not made aware of it.

(A. Jabrani Dep., 1/5/16, 28: 2-25, attached as **Exhibit A**.)

The Jabranis also conceded at their depositions that it was their practice to call Mr. Bandas

immediately every time they received a class action notice in any case:

Q.   Is it you and your husband's practice that when you receive a claim form in a class action settlement or a notice that you contact Mr. Bandas?

A.   Is that our practice?

Q.   Is that your practice, ma'am?

A.   I would say yes.

Q.   Uh-huh. Is that what happened here in Everbank, your husband contacted Mr. Bandas when he returned from India; isn't that right?

A.   That's correct.

Q.   And is that the, more or less, the practice that you've observed with respect to the prior objections that you filed with Mr. Bandas?

A.   That's correct.

Q.   Do you have a recollection of ever receiving a class action notice and not contacting Mr. Bandas?

A.   I don't think we've gotten a class action notification and not contacted Mr. Bandas as of late.

Q.   Right.

A.   But we've been married for 33 years and so I'm sure in that amount of time we've probably been exposed to others, but my recollection just isn't there.

Q.   Right.  But as far as you can recall, your practice is to contact Mr. Bandas when you receive a class action notice; isn't that right?

A.   That's correct.

(J. Jabrani Dep., 1/5/16, 33:25-35:3, attached as **Exhibit B**.)

The Jabranis also conceded under oath that their objection was drafted and written by Mr.

Bandas, and Mr. Jabrani testified that he did not even read the objection before it was filed; they never discussed their objection with Mr. Bandas; Mr. Bandas paid them for each of their objections to this and two other lender-placed insurance settlements; they have no understanding of how much time or labor Class Counsel invested in this case or what would even constitute a reasonable fee; they cannot remember whether they read the Settlement Agreement before filing their objection; they have no knowledge of the whether their prior objections were overruled or brought up on appeal; and, with Mr. Bandas, they have objected to no fewer than five class action settlements. (A. Jabrani Dep., 1/15/16, 23:14-24:13, 25:2-25, 29:1-30:14; J. Jabrani Dep. at 13:14-20, 16:4-17, 19:25-21:18, 25:20-26:11, 31:7-32:1, 33:12-17.)  Mr. Jabrani also conceded that the claim form took him only five minutes to complete, although he has objected that the process was onerous and unduly complicated.  (A. Jabrani Dep. at 54:3-17.)  Mr. Jabrani's deposition also revealed that he misunderstood key aspects of the settlement, such as the requirements for authenticating a claim form.  (*See, e.g., id.* at 54:18-56:6.).

Mrs. Jabrani did not seem to understand the basis of her objection at all—she testified that she believed that delaying relief to class members was worthwhile because class members would be paid more if her objection succeeded than they would have otherwise:

> Q.  [D]o you understand that by objecting to the settlement, you're delaying the payment of benefits to tens of thousands of other class members?
>
> A.      I do, and would you like me to expound on that? …. [T]his is the reason why.  If my objections hold up them getting this small payment, but my objections are heard and they're understood and they're approved, then the class members will actually get more of a benefit … So they may have been delayed in getting their $27 payment, if that's what it shakes out to be, and if my delaying them a year or whatnot offers them to get $127, then I think it's a good idea that they waited.

(J. Jabrani Dep. 26:21-27:19.)

Ms. Jabrani contends that her objection may enable class members to receive larger

distributions from the Settlement, but the Jabranis have not objected to the amount monetary relief made available to class members.  [ECF No. 158.]  They have objected only to the claims process, class counsel's fees, and class counsel's fitness to represent the class.  [*Id.*]  Even if the Jabranis' objection were ultimately to succeed, that is, a class member paid $27 under the Settlement's terms as negotiated would still be paid $27.  The Jabranis' objection is frivolous and the Court should require them or their counsel to appear, defend it, and explain the vast disconnect between the Jabranis' testimony and the substance of Mr. Bandas' objection.

Nevertheless, the Jabranis have raised their objections at the behest of their lead attorney, Christopher Bandas, a serial and professional objector who makes a living challenging consumer class action settlements from behind the scenes and delaying relief to class members for his personal economic gain.  Mr. Bandas was recently sanctioned by a federal court in Washington for his conduct and forbidden from continuing to practice in that district, *see Dennings v. Clearwire Corp.*, No. 2:10-cv-1859-JLR (W.D. Wash.) [D.E. 166] ("The court rules that the appropriate sanction is to revoke Mr. Bandas' authorization to practice in the Western District of Washington."), and other courts have condemned his tactics as well.  *See, e.g., Allen v. J.P. Morgan Chase Bank, N.A.*, No. 15-3425 (7th Cir. 2015) (ordering Bandas to post appeal bond in the amount of $5,000, with a possible increase of the bond to $121,886 pending briefing on the merits of the appeal); *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) (finding a client of Bandas to have brought appeal in bad faith in part due to Bandas' involvement as a "known vexatious appellant"); *In re CertainTeed Fiber Cement Siding Litig.*, MDL No. 2270, Dkt. No. 129, at 1 (E.D. Pa. 2014) (finding "[Mr. Bandas' assertions in his objections are] entirely devoid of merit."),  Dkt. No. 137 (granting appeal bond against Bandas in the amount of $5,000); *In re Hydroxycut Marketing & Sales Practices Litig.*, No. 09-md-2087, 2013 WL 5275618, at *5

(S.D. Cal. Sept. 17, 2013) (finding that Mr. Bandas demanded $400,000 in return for making his objection "go away"); *In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 533 & n.4 (N.D. Cal. 2012) (noting that Bandas has come under scrutiny, and citing particularly *Brown v Wal-Mart Stores, Inc.*, where the court stated that "Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'... [Bandas's and his clients'] attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel.") (citing Dkt. No. 1062-1, p. 11 of 26 (Order entered in *Brown v Wal-Mart Stores, Inc.*). *See also Dennings* [D.E. 166-1] (noting that Mr. Bandas' objections were overruled and, his application for admission *pro hac vice* denied due to his "attempt[s] to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'").

Mr. Bandas' conduct here is no better. He has paid serial objectors with little understanding of the terms of the parties' hard-fought settlement to raise a baseless objection with the sole aim of taking this settlement's approval to appeal and delaying significant relief to more than 45,000 class members, all in order to extract fees from Class Counsel and line his own pockets.

Mr. Bandas and his co-counsel, however, have made clear that they will avoid being made to answer for their misconduct or even defending their objection before this Court at any cost. At the Jabranis' recent depositions, their counsel stated:

> I'm attending for the limited purpose of defending the Jabranis in their depositions here today. They are appearing voluntarily. They're not submitting to jurisdiction of the Court relative to their depositions or otherwise.

(A. Jabrani Dep. 6:6-11.)

This is Mr. Bandas' *modus operandi*—he enlists class members to object to consumer class

action settlements by offering them fixed payments to object and represents them free of charge. He then works with other attorneys on hourly basis, who serve as his local counsel and file the objections with the district court. Mr. Bandas and his co-counsel do not defend their objections in person—they do not appear in court, as they have no interest in having their objections succeed, and they wish to avoid submitting to the jurisdiction of the court. Their goal instead is to hijack each settlement and drag it through a lengthy appeal once their objections are overruled—the longer this takes, the more leverage they gain to extract fees from the parties who worked hard to negotiate the settlement. *See, e.g., Dennings, Hydroxycut, Cathode Ray Tube, et al.*, *supra*.

The Court should not tolerate this misconduct, and should compel the Jabranis, Mr. Bandas, Mr. Wood, or even Mr. Brown[1] (who practices law here in South Florida) to appear at the Final Fairness Hearing and explain their motives and any valid basis for their objection, so that the class is not further damaged by these bad-faith tactics.[2] *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 266 (2d Cir. 2011) (rejecting a due process challenge to the district court's requirement that "objectors appear in person or through counsel at the fairness hearing"); *Spark v. MBNA Corp.*, 48 F. App'x 385, 391 (3d Cir. 2002) (rejecting challenge to district court's requirement that objectors appear at fairness hearing because "we are confident that a court, consistent with due process, may require an objector to be present, in person or by counsel, to

---

[1] The Jabranis' local counsel, Jeff Brown is also a known "professional" objector and has submitted similar unsubstantiated objections in several recent class actions. *See In re Verifone Holdings, Inc. Sec. Litig.*, No. 3:07-cv-06140-EMC (N.D. Cal. Dec. 30, 2013) [ECF No. 334] (objection overruled and noting "the intransigence of counsel for Mr. Brown to produce evidence of standing and counsel's last-minute decision to appear at the final fairness hearing even telephonically"); *In re Sanofi-Aventis Sec. Litig.*, No. 1:07-cv-10279-GBD (S.D.N.Y. Dec. 16, 2013) [ECF No. 273] (objection overruled); *In re SunPower Sec. Litig.*, No. 09-CV-5473-RS (JSC) (N.D. Cal. June 12, 2013) (ECF No. 264] (objection voluntarily withdrawn for lack of standing).

[2] In the alternative, the Court might schedule a separate status conference, with the Jabranis or their counsel in attendance, to address the Jabranis' objection.

present his objections and respond to inquiries"); *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2012 WL 5306260, at *3 (D. Kan. Oct. 26, 2012) (requiring objectors to personally attend fairness hearing and observing that "courts have specifically approved the requirement that an objector seeking to thwart a proposed class-wide settlement submit to deposition and personally attend the fairness hearing") (citations omitted); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 n.13 (E.D. Mich. 2003) ("This Court, in an effort to better assess the fairness, adequacy and reasonableness of the Proposed Settlement and Allocation Plan, required the appearance of objectors at the October 1, 2003 final approval hearing.").

   **WHEREFORE,** Class Counsel respectfully requests the Court enter an Order to Show Cause simply requiring the Jabranis or any of their three counsel to appear at the Jan. 20th Final Fairness Hearing and explain any valid basis to continue their objection against the Settlement.[3]

<u>**CERTIFICATE OF CONFERENCE**</u>

   Class Counsel has conferred with counsel for the Jabrani Objectors, who have represented that they oppose the relief sought with this motion.

   Respectfully submitted this 13th day of January, 2016.

By: <u>/s/ Adam M. Moskowitz</u>

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>Florida Bar No. 984280<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>Florida Bar No. 965723<br>tr@kttlaw.com<br>Rachel Sullivan, Esq. | Aaron S. Podhurst, Esq.<br>Florida Bar No. 63606<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>Matthew Weinshall |

---

[3] Mrs. Jabrani testified last week that she would be willing to appear before the Court to explain her objections in this matter, "Sure, I could go in front of the Court to explain my objections." (J. Jabrani Dep., 1/5/16, 21: 19-24). Mr. Jabrani also testified that he would appear at the Jan. 20th hearing if so ordered by the Court, and that he can travel to Miami and has no other plans for January 20th. (A. Jabrani Dep., 1/5/16, 31: 3-12).

| | |
|---|---|
| Florida Bar No. 815640<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>Florida Bar No. 81712<br>rn@kttlaw.com<br>**KOZYAK TROPIN &<br>THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: (305) 372-1800<br>Facsimile:   (305) 372-3508<br>*Settlement Class Counsel* | Florida Bar No. 84783<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Settlement Class Counsel* |
| Lance A. Harke, Esq.<br>Florida Bar No. 863599<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>Florida Bar No. 991030<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>Florida Bar No. 0364230<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:    (305) 536-8220<br>Facsimile:    (305) 536-8229<br>*Settlement Class Counsel* | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 13th day of January, 2016 and served by the same means on all counsel of record.

By:  /s/ Adam M. Moskowitz