1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA

2

3   DWIGHT WILSON, JESUS A.        )
    AVELAR-LEMUS, JESSIE CROSS,    )
4   and MATTIE CROSS on behalf     )
    of themselves and all others)
5   similarly situated,            )
                                   )
6            Plaintiffs,           )
                                   )
7   vs.                            ) Case No.
                                   ) 14-CIV-22264-BLOOM/VALLE
8   EVERBANK, N.A., STANDARD       )
    GUARANTY INSURANCE COMPANY,    )
9   and AMERICAN SECURITY          )
    INSURANCE COMPANY,             )
                                   )
10           Defendants.           )

11

12

13

14

15          DEPOSITION OF AMIRALI JABRANI

16        TAKEN ON BEHALF OF THE PLAINTIFFS

17               JANUARY 5, 2016

18

19

20

21

22

23

24

25

Page 2

INDEX OF EXAMINATION

Direct Examination by Mr. Moskowitz          Page 7

INDEX OF EXHIBITS

Plaintiff's Exhibit 1          Page 6
Plaintiff's Exhibit 2          Page 6
Plaintiff's Exhibit 3          Page 6
Plaintiff's Exhibit 4          Page 6
Plaintiff's Exhibit 5          Page 6

(The exhibits were attached to the original transcript and all copies.)

Page 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DWIGHT WILSON, JESUS A.        )
AVELAR-LEMUS, JESSIE CROSS,    )
and MATTIE CROSS on behalf     )
of themselves and all others   )
similarly situated,            )
                               )
        Plaintiffs,            )
                               )
vs.                            )  Case No.
                               )  14-CIV-22264-BLOOM/VALLE
EVERBANK, N.A., STANDARD       )
GUARANTY INSURANCE COMPANY,    )
and AMERICAN SECURITY          )
INSURANCE COMPANY,             )
                               )
        Defendants.            )

DEPOSITION OF AMIRALI JABRANI, produced,
sworn, and examined on the 5th day of January, 2016,
between the hours of 9:14 a.m. and 10:08 a.m. of
that day, at Haar & Woods, LLP, 1010 Market Street,
Suite 1620, St. Louis, Missouri 63101, before AMANDA
N. FARRAR, a Certified Court Reporter of the State
of Missouri.

Page 4

APPEARANCES

For the Plaintiffs:
MR. LANCE A. HARKE
Harke, Clasby & Bushman, LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
lharke@harkeclasby.com
(305)536-8220

For the Plaintiffs Via Telephone:
MR. HOWARD M. BUSHMAN
Harke, Clasby & Bushman, LLP
9699 NE Second Avenue
Miami Shores, Florida 33138
hbushman@harkeclasby.com
(305)536-8220

For the Plaintiffs:
MR. ADAM M. MOSKOWITZ
Kozyak, Tropin & Throckmorton
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
amm@kttlaw.com
(305)372-1800

For the Defendant Everbank, N.A., Via
Telephone:

MR. DAVID D. CHRISTENSEN
K&L Gates, LLP
One Lincoln Street
Boston, Massachusetts 02111
david.christensen@klgates.com
(617)261-3100

Page 5

APPEARANCES CONTINUED
For the Defendant Standard Guaranty,
Insurance Company, Via Telephone:

MR. FRANKLIN G. BURT
Carlton, Fields, Jorden, Burt, P.A.
1025 Thomas Jefferson Street, NW, Suite
400 East
Washington, DC 20007
fburt@carltonfields.com
(202)965-8100

For the Witness, Amirali Jabrani:
MR. PETE WOODS
Haar & Woods, LLP
1010 Market Street, Suite 1620
St. Louis, Missouri 63101
petewoods@haar-woods.com
(314)241-2224

The Court Reporter:
MS. AMANDA N. FARRAR, CCR

2 (Pages 2 - 5)

Page 6

1       (The deposition commenced at 9:14 a.m.)
2       (Plaintiff's Exhibit 1 through Exhibit 5
3  were premarked for identification.)
4       MR. WOODS:  And just for the record, my
5  name is Pete Woods.  I'm an attorney here in
6  St. Louis and I'm attending for the limited purpose
7  of defending the Jabrani's in their depositions here
8  today.
9       They are appearing voluntarily.  They're
10 not submitting to jurisdiction of the Court relative
11 to their depositions or otherwise.  There's been no
12 personal service and there are other issues.
13 However, they are appearing and are going to
14 cooperate.
15      I did want to make clear that, for
16 purposes of the record as well, that objections and
17 responses to the request for production of documents
18 associated with this deposition of Mr. Jabrani and
19 also the deposition of Mrs. Jabrani have been served
20 on Plaintiff's counsel, which address the document
21 requests, and prior to starting today there have
22 been some documents provided to counsel.
23      MR. MOSKOWITZ:  Thank you.
24      MR. WOODS:  That's all I have.
25

Page 7

1            AMIRALI JABRANI,
2  of lawful age, being produced, sworn, and examined
3  on behalf of the Plaintiffs, deposes and says:
4            DIRECT EXAMINATION
5  BY MR. MOSKOWITZ:
6     Q.  Good morning, Mr. Jabrani.
7     A.  Good morning.
8     Q.  It's good to see you again.
9     A.  Yes.
10    Q.  I know that we've taken your deposition
11 in the prior lender-placed cases that involved Wells
12 Fargo and SunTrust.
13    A.  Uh-huh.
14    Q.  So we told you about the process of
15 depositions, and I know you understand it.  If you
16 don't understand a question, please let me know.  I
17 don't think you're going to need a break because
18 we're not going to go very long this morning.
19    A.  Great.
20    Q.  The purpose today is to really
21 understand what your objection is.  Lance and I are
22 class counsel.  So we've been appointed by the Court
23 to represent everybody, including yourself, in the
24 class.  We're proud of our settlement, and we want
25 to hear what is, everybody, if they have an

Page 8

1  objection, what it is.
2       Can you just state your name for the
3  record.
4     A.  My name is Amirali Jabrani, and they
5  call me by the name Ali.
6     Q.  Ali.  Ali, can you tell us your home
7  address?
8     A.  My home address is 2038 Moondance Court,
9  O'Fallon, Missouri, ZIP is 63368.
10    Q.  Thank you, Ali.  Is it okay if I call
11 you Ali?
12    A.  Yeah, that's fine.
13    Q.  I'm going to mark five exhibits to make
14 this move quicker, and we've already premarked them.
15 Exhibit 1 is a engagement agreement between you and
16 the Bandas Law Firm.
17    A.  Yes.
18    Q.  Exhibit 2 is the objection that you
19 filed with your wife in this case.
20    A.  Okay.
21    Q.  Exhibit 3 is your objections to some
22 requests for production that we asked for.
23    A.  Okay.
24    Q.  Exhibit 4 is the settlement agreement in
25 the Everbank case, and Exhibit 5 is going to be a

Page 9

1  notice from another case mentioned, Sheila Allen vs.
2  JPMorgan Chase Bank, which we'll get to later.
3     A.  Okay.
4     Q.  I want to try to just understand
5  overview about the Everbank case, because we talked
6  about Wells Fargo and we talked about SunTrust.  In
7  terms of specifically Everbank, when did you start
8  having conversations with somebody at Everbank about
9  the lender-placed coverage?  Do you remember?
10    A.  I never had any conversation with
11 Everbank.
12    Q.  You've never had any calls with anybody
13 who's a representative of Everbank?
14    A.  No.
15    Q.  Okay.  Have you ever had any
16 conversations with anybody at Standard Guaranty
17 Insurance Company?
18    A.  No.
19    Q.  Have you ever had a discussion with any
20 representatives of either Everbank, Evermortgage,
21 Standard Guaranty Insurance Company, or American
22 Security Insurance Company?
23    A.  No.
24    Q.  Okay.  So how do you know that you were
25 lender placed?

3 (Pages 6 - 9)

Page 10

1      A.  I got a letter from Everbank saying you
2  are the claimant, and that's how I came to know.
3      Q.  Okay, Ali.  So when you say you got a
4  letter, in Exhibit 2 you produced a copy of the
5  notice that was mailed to class members --
6      A.  That's right.
7      Q.  -- it's Exhibit C, that's right?
8      A.  Yes.
9      Q.  So Exhibit C is what you got in the
10  mail?
11      A.  Exhibit C is the claimant form, right?
12      Q.  That's the -- I'm sorry.  It's Exhibit
13  D.  It's the notice that describes the settlement.
14  Let me show you.
15          MR. WOODS:  And just for the record,
16  yeah, he doesn't have it in front of him.
17      Q.  (By Mr. Moskowitz)  Sure.  So I'm going
18  to put it in front of you.  Exhibit 2 --
19      A.  Uh-huh.
20      Q.  -- to what we've marked as Exhibit 2
21  is -- I'm sorry.  Exhibit 3 as part of Exhibit 2 is
22  a notice entitled Wilson vs. Everbank, United States
23  District Court.  Is this the letter that you're
24  talking about?
25          MR. WOODS:  Make sure you read it.

Page 11

1      A.  Yes.  I got the claimant form.  I don't
2  know about this one, but I believe -- I don't know.
3  I cannot tell you yes or no.
4      Q.  (By Mr. Moskowitz)  So Exhibit 2 is the
5  notice that was mailed to all class members, right?
6  And Exhibit 2 -- sorry.  Exhibit 1 is the claim
7  form?
8      A.  That's right.
9      Q.  Which you filled out?
10      A.  Yes.
11      Q.  So you received the claims form and/or
12  the notice in the mail?
13      A.  On claimant form, I did receive.  The
14  other one, I don't know.
15      Q.  So you received the claim form in the
16  mail?
17      A.  Yes.
18      Q.  And that's the first time that you had
19  any dealings with anyone at Everbank or Standard
20  Guaranty about lender-placed insurance?
21      A.  Yes.
22      Q.  Did you -- after you received the claim
23  form, did you ever have any calls with anybody at
24  Everbank, Standard Guaranty, or class counsel about
25  the lender-placed insurance?

Page 12

1      A.  No.
2      Q.  Have you ever had any discussions with
3  Everbank, Standard Guaranty, or class counsel about
4  the Everbank case?
5      A.  No.
6      Q.  So you receive the claim form in the
7  mail?
8      A.  Yes.
9      Q.  And then what did you do?
10      A.  I looked it over -- I was in India at
11  that time.  So I looked it over when I came back and
12  I approached Chris Bandas about it.
13      Q.  Exhibit 1 is the agreement with
14  Mr. Bandas, and if you go to the back, it's dated
15  November 3rd and you signed it November 6th.  Does
16  that help refresh your memory --
17      A.  Yes.
18      Q.  -- around the time?
19      A.  That's right.
20      Q.  So you receive the claim form when you
21  get back from India, you read it, and then you call
22  Mr. Bandas?
23      A.  Yes.
24      Q.  And what do you say to Mr. Bandas?
25      A.  That I have received this claim form

Page 13

1  and --
2      Q.  Let's do it again, what we did in
3  SunTrust or Wells Fargo.
4          MR. WOODS:  I'm going to object to
5  conversations with Mr. Bandas.  There's an
6  attorney-client privilege there.
7      Q.  (By Mr. Moskowitz)  Okay.  Don't tell me
8  the substance of what you said, but did you make the
9  decision that you're going to go ahead and file an
10  objection, like you did in Wells Fargo and SunTrust,
11  do the same thing in Everbank?
12      A.  I decided to call Chris Bandas and
13  wanted to pursue ahead.
14      Q.  Pursue an objection?
15      A.  Yeah.
16      Q.  Okay.  Does he mail you what we've
17  marked as Exhibit 1 and then did you sign it and
18  mail it back to him?
19      A.  He emailed me and I --
20      Q.  So he emailed it to you around
21  November 3rd and then you sign it a couple days
22  later, right?
23      A.  Yes.
24      Q.  And then after you sign the agreement,
25  is that when you go on to the internet and then you

Page 14

1  fill out the claim form?
2      A.  I had already filled out a claim form
3  before.
4      Q.  Before.  Did you fill out the claim form
5  yourself?
6      A.  Yes.
7      Q.  Okay.  In Exhibit 2, I'm going to show
8  you what's marked as Exhibit C to your Exhibit 2,
9  and it's the claim form.  Is that your signature on
10 the form?
11     A.  Yes.
12     Q.  You and your wife's signature, right?
13     A.  Uh-huh.
14     Q.  And then the next --
15         MR. WOODS:  You have to answer yes or no
16 for the court reporter.
17     A.  Yes.
18     Q.  (By Mr. Moskowitz)  So before you called
19 Mr. Bandas, you went on and you filled out the claim
20 form?
21     A.  Yes.
22     Q.  Who are the people -- it asks for a
23 witness signature and a notary signature.  Can you
24 tell me who those two people are?
25     A.  This gentleman lives -- his name is Joe

Page 15

1  Mickson.  He lives in my subdivision.
2      Q.  Your development?
3      A.  In my subdivision.
4      Q.  Joe Mickelson?
5      A.  Mickson.
6      Q.  Mickson.  He's a friend?
7      A.  Friend, associate, whatever you call it,
8  and living in the same subdivision, same cul-de-sac.
9      Q.  And who's the person that verified it?
10     A.  It's the bank.
11     Q.  Which bank?
12     A.  Commerce Bank.  Kimberly Ross.
13     Q.  You took the claim form down to your
14 local bank?
15     A.  Yeah.
16     Q.  Do they have anything to do with your
17 lender-placed insurance?
18     A.  No.  They just wanted to check the
19 signatures and, you know, I had to sign it in front
20 of them.
21     Q.  You know that they're a notary, so you
22 thought --
23     A.  Yeah.
24     Q.  -- you'd use them?
25         And this is about November 11th that you

Page 16

1  did this, right?
2      A.  Yes.
3      Q.  Okay.  And then walk me through -- so
4  you sign up with Mr. Bandas, you fill out and you
5  get verified the claim form about a week later,
6  November 11th?
7      A.  Clarify that for me.
8      Q.  Yeah.  The retainer agreement you signed
9  with Mr. Bandas was signed November 6th?
10     A.  Uh-huh.
11     Q.  Then about a week later you get your
12 claim form verified on November 11th from the bank?
13     A.  Yes.
14     Q.  Okay.  And then eventually you sign an
15 affidavit just about your Everbank dealings, it's
16 the last page of Exhibit 2, and that's dated
17 December 21st, right?
18     A.  Okay.
19     Q.  And you can see that; is that right?
20     A.  Uh-huh.
21     Q.  And that's your signature?
22     A.  Yes.
23         MR. WOODS:  Review it, please.
24     Q.  (By Mr. Moskowitz)  Yeah, check it out.
25     A.  Yes.

Page 17

1      Q.  I'm just, again, trying to find a
2  time --
3          MR. WOODS:  Do you see a date on here?
4          THE WITNESS:  Yeah.
5      Q.  (By Mr. Moskowitz)  Do you see the date?
6          So around November 11th you get your
7  claim form verified, and then about six weeks, five
8  weeks later you sign an affidavit, right?  Did you
9  do anything else in terms of the objection that
10 we've marked as Exhibit 2?  Mr. Bandas drafted this
11 for you, right?
12     A.  Yes.
13     Q.  And he filled out the material?  You
14 didn't have a role in drafting Exhibit 2?
15     A.  No.
16     Q.  Okay.  You don't know the substance, if
17 I go through line by line or paragraph by paragraph?
18 You let Mr. Bandas draft this for you?
19     A.  Yes.  But before --
20     Q.  Yeah.
21         MR. WOODS:  That's the question.  That's
22 your answer.
23     Q.  (By Mr. Moskowitz)  Oh, when you -- when
24 you filled out the claim form, did you check a box
25 which said that you believe that you were charged --

5 (Pages 14 - 17)

Page 18

1 that you paid the lender-placed?
2     A.  I believe so.
3     Q.  Were you -- did you actually pay the
4 lender-placed charge or was that just a mistake?
5     A.  Yes.  I was -- I believe I was charged.
6     Q.  You believe you were charged.
7         Now, you hired Mr. Bandas, and we've
8 gotten agreement from Mr. Haar here that you also --
9         MR. WOODS:  Woods.
10        MR. MOSKOWITZ:  Mr. Woods.  I'm sorry,
11 Peter.
12    Q.  (By Mr. Moskowitz)  From Mr. Woods.  You
13 have also an agreement with him.  Do you have any
14 agreements with the person who actually signed the
15 objection?  There's a lawyer in Miami, and his name
16 is Jeff Brown.
17    A.  No.
18    Q.  Have you ever met Mr. Brown?
19    A.  No.
20    Q.  Have you ever heard of Mr. Brown before
21 today?
22    A.  No.
23    Q.  And you have no agreement with
24 Mr. Brown?
25    A.  No.

Page 19

1     Q.  You just let Mr. Bandas deal with
2 Mr. Brown?
3     A.  Yes.
4     Q.  Why did you decide, when you received
5 the notice, to fill out the claim form?
6     A.  Repeat the question again.
7     Q.  Sure.  You said you received the notice
8 in the mail that's in Exhibit 2, and then you went
9 ahead and took the time to fill out the claim
10 form --
11    A.  Yes.
12    Q.  -- right?
13        Why did you fill out what's marked as
14 Exhibit 1 to our Exhibit 2, the claim form in the
15 Everbank case?
16    A.  Because I'm the claimant in that one,
17 but the notice was sent by Everbank to me.
18    Q.  And you want to participate?
19    A.  And I wanted to participate.  I'm the
20 legal claimant.
21    Q.  So you wanted to participate in the
22 class action settlement?
23    A.  Yes.
24    Q.  And you'd like to be compensated along
25 with all the other class members in the case?

Page 20

1     A.  Yes.
2     Q.  Do you think that it's a good settlement
3 in terms of what you're going to get for filling out
4 the claim form?
5     A.  I don't think it's a good settlement
6 that you guys did.
7     Q.  So why did you fill out the claim form?
8 That's what I'm trying to figure out.
9     A.  Claim form is to show that I'm the legal
10 claimant on that one, but the settlement that you
11 did with the bank or your class action counsel did,
12 I don't think it was a very good settlement.
13    Q.  So you filled out the claim form just
14 because you're the legal owner of the claim?
15    A.  Legal claimant on the class action
16 lawsuit.
17    Q.  Do you want the compensation that you
18 may be entitled to, like all class members, for
19 filling out the claim form?  That's what I'm asking
20 you.  Whatever the class gets, do you want that same
21 recovery?
22    A.  I should get more.  That's why I'm
23 objecting it, that I'm not comfortable with what the
24 class action counselors did.
25    Q.  My first question:  What the class

Page 21

1 members each get under the settlement, do you want
2 that?
3     A.  And more.
4     Q.  So you want what all the class members
5 are going to get?
6     A.  Plus more.
7     Q.  Do you know what the class members are
8 going to get?
9     A.  Yeah.
10    Q.  What is that?
11    A.  12.5 percent of what they put into it.
12 Like, for example, whatever cash that paid out, they
13 get 12.5 percent.
14    Q.  So you want that?
15    A.  That, plus more.
16    Q.  So I'm just dealing with the that.  So
17 you want the 12.5 percent?
18    A.  Uh-huh.
19    Q.  You're happy to get that amount?  I'm
20 going to get to the more, but you want the 12.5
21 percent?
22    A.  Okay.
23    Q.  Do you think that number -- at least,
24 before we get to the more, is the 12.5 percent fair?
25    A.  No.

6 (Pages 18 - 21)

Page 22

1  Q. How much should that be?
2  A. I don't know exactly how much.
3  Q. It should be another number?
4  A. It should be another number.
5  Q. Then what's the more that you also want?
6  A. More is they should have negotiated a
7  lot more. In terms of like, for example, if you --
8  the whole -- that's why we have objections. That's
9  why we've done all these objections that we talked
10 about.
11  Q. Sure. So in Wells Fargo and SunTrust
12 you did this and you got more?
13  A. Yes.
14  Q. And you're happy with the results?
15  A. Yeah.
16  Q. So Wells Fargo, what did you get in
17 Wells Fargo?
18      MR. WOODS: I'm going to object to his
19 ultimate receipt of benefits as confidential and
20 irrelevant to this proceeding.
21      MR. MOSKOWITZ: Is confidential what he
22 got under the settlement? Why would that be
23 confidential?
24      MR. WOODS: In terms of whatever he may
25 have received by whatever route.

Page 23

1      MR. MOSKOWITZ: I don't see how --
2  what's the confidential privilege? He's an
3  objector, you received compensation you're saying in
4  the Wells Fargo case. Why if I ask him how much did
5  you get -- you're saying it's attorney-client
6  privilege?
7      MR. WOODS: Whatever relationship and
8  whatever he may have received through his -- through
9  that proceeding -- if you're limiting it to what was
10 received directly through the court-ordered
11 settlement, that's a different topic. I think your
12 question was overly broad to the extent that he may
13 have received something else.
14  Q. (By Mr. Moskowitz) So you received money
15 as a Wells Fargo class member or do you not know?
16  A. I don't know.
17  Q. And in SunTrust did you receive money as
18 a SunTrust class member or you don't know?
19  A. I don't know.
20  Q. But you received a check or some money?
21  A. Yes.
22  Q. And do you know where it came from?
23  A. It came from Chris Bandas.
24  Q. So you got a check from Chris Bandas?
25  A. (The witness nodded his head.)

Page 24

1      MR. MOSKOWITZ: And you're going to say
2  that the amount is confidential?
3      MR. WOODS: Yes.
4  Q. (By Mr. Moskowitz) You received a
5  certain amount between zero and $5,000?
6  A. I cannot disclose that amount.
7  Q. Well, your fee agreement says you can't
8  receive more than $5,000, right?
9  A. Okay.
10  Q. So you received -- I'm not telling you
11 to ask me the amount right now, but you received
12 something from zero to $5,000?
13  A. Yes.
14      MR. WOODS: Well, again, I'm going to
15 object. You're just asking the question in a
16 different way. What he received as a result of a
17 resolution of those previous cases is confidential
18 and I'm objecting to him testifying as to the
19 amount. To the extent that he knows what he
20 received as a participant in the class action
21 directly through the class action suit, he can
22 testify.
23      MR. MOSKOWITZ: But again, it's not a
24 settlement privilege. You're just saying it's
25 attorney-client privilege?

Page 25

1      MR. WOODS: Correct.
2  Q. (By Mr. Moskowitz) How do you expect to
3  be paid in the Everbank case? Just from Chris
4  Bandas?
5  A. I believe so.
6  Q. Do you have an idea how the formula is
7  going to work, how you intend to get paid, or you're
8  just going to take whatever Mr. Bandas pays you?
9  I'm not asking you for the amount.
10  A. A specific amount, you know, hopefully
11 I'll get.
12  Q. Do you know the amount?
13  A. Just have a vague idea. I mean, I'm not
14 very clear on that one.
15  Q. What's it based on? Is it based on some
16 written material? I mean, if I give you Exhibit
17 A -- Exhibit 1, can you show me where it says what
18 you're going to get paid?
19  A. Let me look at it.
20  Q. Sure.
21  A. I don't know exactly how much specific
22 amount I'll get, but I will get a specific amount.
23  Q. You will get a specific amount, and
24 that's for objecting?
25  A. For the settlement.

7 (Pages 22 - 25)

Page 26

```
 1      Q.   Right.  I'm going back to now what you
 2  said that you're happy you're going to get the 12.5
 3  percent and more.  And the more is Mr. Jabrani's
 4  going to get the more because you're an objector?
 5      MR. WOODS:  I'll object.  It's calling
 6  for him to speculate as to what he might receive.
 7  He's objecting, and the settlement may be revised
 8  and, again, you're testimony is what your testimony
 9  is, but to the extent that you're asking him to
10  speculate as to what he might get, I think it's an
11  unfair question.
12      Q.   (By Mr. Moskowitz)  I'm not asking you to
13  speculate.  Do you have a certain amount that you're
14  hoping to receive?  Don't speculate.  I mean, you
15  must have in your mind, hey, I'd be happy with X
16  amount?
17      A.   Certainly, yeah.
18      Q.   What is that?
19      A.   I don't want to disclose that amount.
20  You know, it could be -- it could vary depending
21  on --
22      Q.   Between zero and 5,000?
23      A.   It could vary.
24      Q.   Between zero and 5,000?
25      A.   Yeah.
```

Page 27

```
 1      Q.   Now, I want to ask you what do you think
 2  you're getting that money for?
 3      A.   From not only from the Everbank case.
 4      Q.   Who's going to pay you this money; do
 5  you know?  I know Mr. Bandas is going to write you a
 6  check, but where is the money coming from?
 7      A.   It could be coming from Everbank.  It
 8  could be coming from the class action counsel.  It
 9  could be coming from anywhere.
10      Q.   You don't know?
11      A.   I don't know.
12      Q.   And do you know what you're doing to get
13  that money?  Are you changing the settlement?
14      A.   I'm trying to improve the settlement
15  case.
16      Q.   So go back to Wells Fargo.  Do you know
17  if the money that you were paid improved the
18  settlement in any way?
19      A.   I don't know.
20      Q.   Did you ever ask?
21      A.   I have a -- it could have improved the
22  settlement.  I don't know exactly.
23      Q.   Did you ever ask?  That was my question.
24      A.   Ask who?
25      Q.   Anybody.  Did you ever ask, okay, I got
```

Page 28

```
 1  a check in the mail, what did I do to improve the
 2  settlement?
 3      A.   It improved my case, I know that.  It
 4  improved my personal settlement amount.
 5      Q.   By getting more money?
 6      A.   By getting more money than what Wells
 7  Fargo was going to give.
 8      Q.   So the Wells Fargo settlement was
 9  improved because Mr. Jabrani got more money in his
10  pocket?
11      A.   That's right.
12      Q.   The SunTrust deal settlement was
13  improved because, again, you, Mr. Jabrani, got more
14  money than you would have gotten, right?
15      A.   That's right.
16      Q.   Is there any other way, to your
17  knowledge, that the SunTrust and the Wells Fargo
18  settlements were improved for anybody else?
19      MR. WOODS:  Again, I'm going to object
20  to the extent that it calls for attorney-client
21  privileged communication.
22           Subject to that, if there was some other
23  route by which you became aware of an improvement in
24  the settlement, you can go ahead and testify.
25      A.   I was not made aware of it.
```

Page 29

```
 1      Q.   In terms of the Everbank case, so you
 2  received the claim form, you filled it out, and then
 3  Exhibit 2, which is your objection, was drafted by
 4  Mr. Bandas.  Did you have any other role in drafting
 5  Exhibit 2?  I know you said you didn't see it, you
 6  didn't write it.
 7      A.   No.
 8      Q.   You didn't review it before it was
 9  actually filed by Mr. Brown in the court in Miami?
10      A.   No.
11      Q.   Have you ever seen it -- I don't want to
12  go through it now.  Have you ever seen Exhibit 2
13  before today?
14      A.   No.  I have seen it before.
15      Q.   You have seen it.  When did you see it?
16      A.   About a week, two weeks ago.
17      Q.   You didn't see it before it was filed on
18  December 21st?
19      A.   No.
20      Q.   Okay.  Who did you see it -- you saw it
21  like a week ago?
22      A.   A week or two weeks ago.
23      Q.   Who showed it to you?
24      A.   I got it in the email.
25      Q.   And who emailed it to you?
```

8 (Pages 26 - 29)

Page 30

1    A.   Donna Lopez.
2    Q.   Who's Donna Lopez?
3    A.   I don't know.  She's a paralegal of
4  Chris Bandas Law Firm.
5    Q.   And she emailed you a copy?
6    A.   (The witness nodded his head.)
7    Q.   Did you then have a conversation with
8  Mr. Bandas about it or no?
9    A.   No.
10    Q.   You just got an email with it and then
11  you looked at it?
12    A.   I looked at it.
13    Q.   Did you talk to anybody about it?
14    A.   No.
15    Q.   Are you willing to appear at the final
16  fairness hearing on January 20th, if the Judge
17  wanted you to come down to Miami?
18    A.   That's fine, if it calls for, and I have
19  to take -- you know, if my attorney is -- I have to
20  approach my attorney for that one and what he has to
21  say.
22    Q.   Right.  And if the Judge says,
23  Mr. Jabrani, we'd like you to come down and we want
24  to hear your objection, would you be fine with that?
25    A.   Once again, I have to approach my

Page 31

1  attorney.
2    Q.   But I'm asking you.  What do you think?
3    A.   If called for, yeah.  I mean, if the
4  Judge orders me, yeah, I have no choice but to come.
5    Q.   Can you travel to Miami?
6    A.   Sure.
7    Q.   There's nothing that would stop you from
8  going to Miami?
9    A.   No.
10    Q.   And on that date, January 20th, you're
11  free to come to Miami, if you're called to come?
12    A.   Yeah.
13    Q.   And you're fine with coming to Miami and
14  expressing your objections to the Court?
15    A.   Yeah.  Provided my attorney --
16    MR. WOODS:  You've answered the
17  question.
18    Q.   (By Mr. Moskowitz)  Provided your
19  attorney says fine?
20    A.   Yeah.
21    Q.   We asked you various questions in the
22  Wells Fargo case about the objection and I'm not
23  going to go through them all again, but you
24  basically said you didn't know how much the
25  force-place coverage was, you didn't know how much

Page 32

1  it was compared to the voluntary insurance.  If I go
2  through all that for Everbank, will your answers be
3  the same?
4    A.   Same.
5    Q.   I'm trying to cut it short.
6      Who was your voluntary insurance company
7  with when you were lender-placed by Everbank; do you
8  remember?
9    A.   Uh-uh.
10    Q.   You don't know?  Just for the record.
11    A.   No, I don't know.  I mean --
12    Q.   You don't know.  And you don't know what
13  you were paying in voluntary insurance compared to
14  what the lender-placed coverage was?
15    A.   What do you mean about voluntary
16  insurance?
17    Q.   Sure.  The coverage that you had before,
18  which was lapsed or dropped, and then they
19  lender-placed you, you don't know the comparison
20  between how much you were paying before and how much
21  you were lender-placed?
22    A.   I think I measured last time and I'm
23  going to measure again.  I had individual coverage
24  of each properties first, okay, then I decided to go
25  with one lump sum insurance policy for all my

Page 33

1  properties and that's where this thing happened.
2    Q.   Oh, sure.  But you don't know in terms
3  of was it more, was it less in terms of what you
4  had?
5    A.   No.
6    Q.   When you say properties, the property
7  that was lender-placed, is this your home?
8    A.   No.  It's my rental property.
9    Q.   How many rental properties do you have?
10    A.   I had 20-plus properties.  I cannot tell
11  you exactly, but 20-plus properties.
12    Q.   So around this time frame you had 20 --
13    A.   Plus.
14    Q.   -- a little bit more than 20 rental
15  properties?
16    A.   Yeah.
17    Q.   And then one of the rental properties
18  was lender-placed by Wells Fargo, one of the
19  lender -- one of the rental properties was
20  lender-placed by SunTrust, and one of the rental
21  properties was lender-placed by Everhome?
22    A.   Could be more because, as I told you, I
23  had 20 properties, and when I switched the company
24  to one policy, a lot of companies put me under
25  lender placement.

9 (Pages 30 - 33)

Page 34

1    Q.  So from the 20 properties --
2    A.  Twenty-plus properties.
3    Q.  Twenty-plus.  So do you know any other
4  companies that you were lender-placed?  We have
5  Wells Fargo, SunTrust, Everhome.  Any others?
6    A.  There were so many other ones.  I don't
7  even remember.
8    Q.  Are there any that you've sent to
9  Mr. Bandas and actually have decided to do an
10  objection in?
11   A.  So far, no, but as it comes along, I may
12  know.  Right now I don't know.  I have so many
13  policies, I don't know.
14   Q.  Were you ever lender-placed on your home
15  property?
16   A.  No.
17   Q.  And for the 20-plus rental properties,
18  you had one insurance policy for all of them and
19  then you -- or you had individual property --
20  individual policies for each of the 20-plus, then
21  you decided to get one policy for all the
22  properties?
23   A.  Yes.
24   Q.  And that's when this issue came up with
25  the lender-placed?

Page 35

1    A.  Yes.
2    Q.  But when it happened with Everbank
3  specifically, you never have any calls with the bank
4  to try to work it out?
5    A.  I had called my insurance company on the
6  insurance, and he was dealing with it.
7        MR. WOODS:  Ali, listen to the question.
8  Answer the question that he's asking you, okay?
9        THE WITNESS:  Okay.
10   Q.  (By Mr. Moskowitz)  So when you actually
11  got the letter from Everhome for this lender-placed
12  policy, you never had calls with Everhome about it?
13   A.  No.
14   Q.  You called your insurance agent and said
15  can you help me get coverage, apparently I don't
16  have coverage for that property?
17   A.  No.
18   Q.  What happened?
19   A.  I switched over to insurance company
20  with one lump sum property, and I told him that all
21  these companies are sending me all this lender
22  force-place insurance and so you deal with it since
23  you are representing me and you handle it.
24   Q.  Who is that?  Who's the agent?
25   A.  St. Charles Insurance Company.

Page 36

1    Q.  Where are they located?
2    A.  In St. Peters.
3    Q.  I'm sorry?
4    A.  St. Peters.
5    Q.  St. Peters?
6    A.  Missouri.
7    Q.  Missouri.  And who is your agent?  Do
8  you know his name?
9    A.  I used to know.  Seth, Seth.  S-E-T-H.
10   Q.  Do you know his last name?
11   A.  No.
12   Q.  So Seth is your insurance agent with
13  St. Charles Insurance Company that's located in
14  St. Peters, Missouri?
15   A.  Yes.
16   Q.  And then you said, Seth, you got to deal
17  with this, I'm getting all these letters about
18  lender-place, and he said, Ali, I'll take care of
19  it?
20   A.  Yes.
21   Q.  And what did he do?
22   A.  He told them -- he send them -- I assume
23  he send them letter.
24       MR. WOODS:  Do you know?
25       THE WITNESS:  I don't know.

Page 37

1    Q.  (By Mr. Moskowitz)  If you don't know --
2    A.  I don't know.
3    Q.  So what happened --
4        MR. WOODS:  Don't speculate, Ali, if you
5  don't know.
6    A.  I don't know.
7    Q.  (By Mr. Moskowitz)  And how long ago was
8  this?  Like a year ago?
9    A.  From what date?
10   Q.  When this all happened when you said you
11  changed from 20 individual policies to one master
12  policy and you started to get these lender-placed
13  letters and then you called Seth and said can you
14  handle it, was that about a year ago?
15   A.  From today?
16   Q.  Yeah.
17   A.  Oh, no, no.  Anywhere between 2009 to
18  2010.
19   Q.  And then since 2010 have you dealt with
20  Seth again?
21   A.  I had policy with them until the 12th.
22   Q.  2012?
23   A.  2012.
24   Q.  And did you, to your knowledge, clear up
25  everything and get insurance eventually on all

10 (Pages 34 - 37)

Page 38

1  20-plus of your rental properties?
2      A.  I had insurance.  This was the dilemma.
3  I had insurance.
4      Q.  This one master policy for all the 20?
5      A.  The master policy.  I never went without
6  insurance for a single minute, but those mortgage
7  companies were saying you -- we placed you on force
8  insurance, and I told Seth that we have insurance,
9  why don't you give them a copy of it that said we
10 have insurance, and he followed up with them and
11 they did whatever they did and they charged me.
12     Q.  Did you ever try to get it flat canceled
13 by showing them that you had coverage the whole
14 time?
15     A.  Yeah.  We send them copies three, four
16 times.
17     Q.  Did they ever flat cancel you?
18     A.  They canceled me -- some of the
19 companies did cancel me saying, yeah, you have
20 coverage.
21     Q.  So we're not going to charge you?
22     A.  Yeah.
23     Q.  But Everbank --
24     A.  I don't know whether they're going to
25 charge me or not, but they canceled me saying we

Page 39

1  will not charge you any further.
2      Q.  Do you know which companies that was?
3      A.  One I remember is Chase.
4      Q.  Chase.  But Wells Fargo, SunTrust and
5  you believe Everbank still charged you?
6      A.  I don't know.
7      Q.  Well, you filled out a claim form?
8      A.  They charged me, but how much they
9  charged me, I don't know.
10     Q.  We've marked Exhibit 4 the stipulation
11 and settlement agreement in the Everbank case.
12 Similar to Wells Fargo and SunTrust, you didn't
13 carefully read the settlement agreement, did you?
14         MR. WOODS:  Well, may he look at the
15 document?
16         MR. MOSKOWITZ:  Of course.
17     Q.  (By Mr. Moskowitz)  We're showing you
18 Exhibit 4, which is the stipulation and settlement
19 agreement in the Everbank case.
20     A.  I could have browsed through it.
21     Q.  I'm sorry.  You could have --
22     A.  I could have browsed through it.
23     Q.  But you're not sure?
24     A.  Not sure.
25     Q.  So sitting here today under oath, you

Page 40

1  don't know if you read it or not?
2      A.  I read so many documents, plus this is a
3  legal jargon.
4      Q.  Sure.
5      A.  It's very hard to comprehend every
6  little thing what it means.
7      Q.  It's a legal document, so it's hard to
8  understand?
9      A.  Yes.
10     Q.  Sitting here today, do you remember
11 anything about the settlement agreement that's
12 marked as Exhibit 4?
13     A.  Say it again.
14     Q.  Do you remember anything about what's
15 inside Exhibit 4 sitting here today?
16     A.  I can browse it and just tell you
17 exactly because --
18     Q.  But I'm saying do you remember anything
19 about Exhibit 4?
20     A.  A little bit about it saying, you know,
21 what the charges will be, how they will get
22 compensated, you know, the class members will get
23 compensated, how much the fee will be for their
24 attorney fees and that kind of thing.  I'm not very
25 particular about it.

Page 41

1      Q.  You're not particular.
2          Where did you get it?
3      A.  Maybe Donna send me or I went on the
4  website.  Could be anything.
5      Q.  Donna is Chris Bandas' paralegal?
6      A.  Paralegal.
7      Q.  She could have sent you the agreement?
8      A.  She could have sent me or I could have
9  gone through legal site on the computer.
10     Q.  But you said it's hard to understand
11 because it's a legal document?
12     A.  Yes, yeah.
13     Q.  So when you got the claim form and you
14 filled it out, how did you learn the details of the
15 Everbank settlement and how it differed from the
16 SunTrust and the Wells Fargo settlements?
17     A.  Some, as I told you, I went through the
18 computer, and some I got it from Donna, but I --
19     Q.  Some, you mean information you got from
20 Donna?
21     A.  Some information I got from Donna.  Some
22 of the information I went on the website and look at
23 it, you know, what the settlement calls for and
24 gives you a general gist on the computer.
25     Q.  Did Donna send you anything in writing,

11 (Pages 38 - 41)

Page 42

1  any emails about the case?
2      A.  No.
3      Q.  We asked for a request for production
4  and, I mean, that's a formal legal term, and we've
5  marked that as Exhibit 3, and we asked you for all
6  documents regarding your objection.  And the answer
7  is there are no other documents in objector's
8  possession besides the agreements with Mr. Bandas?
9      A.  That's right.
10         MR. WOODS:  I think that
11  mischaracterized.  I think he also references the
12  objections that were filed.
13         MR. MOSKOWITZ:  Please see objection.
14         MR. WOODS:  Uh-huh.
15         MR. MOSKOWITZ:  And the attachments
16  thereto.
17      Q.  (By Mr. Moskowitz)  So your objection,
18  which we marked as Exhibit 2 --
19      A.  Yes.
20      Q.  -- and the fee agreement that you have
21  with your counsel?
22      A.  Yes.
23      Q.  You don't have any other memos, emails,
24  correspondence --
25      A.  No.

Page 43

1      Q.  -- regarding your objection?
2      A.  I didn't have any correspondence.
3      Q.  You didn't do any research that you
4  printed out about the settlement?
5      A.  No.  I just browsed through it on the
6  computer.
7      Q.  You haven't talked to anybody in the
8  industry about the settlement?
9      A.  No.
10      Q.  You haven't talked to anybody that works
11  in a bank or anybody that works in an insurance
12  company?
13      A.  No.
14      Q.  So how did you know the difference
15  between the Wells Fargo, SunTrust and Everbank
16  settlements?  You think maybe --
17      A.  I don't --
18      Q.  You don't know?
19      A.  I don't know what the -- I mean, the
20  gist remains the same in all three cases, but I
21  don't know every little particulars about that.
22      Q.  How do you know that the gist remains
23  the same in all three cases?
24      A.  Because it was force-place insurance,
25  all three of them had force-place insurance.

Page 44

1      Q.  So you were force-place insurance in
2  Everbank, Wells Fargo, and SunTrust?
3      A.  (The witness nodded his head.)
4      Q.  Do you know anything about the
5  settlements in those three cases that you can tell
6  me about today?
7      A.  The common thing that they had was the
8  filing process, their attorney fees, you know, those
9  kind of things.
10      Q.  Let's take the filing process.  What is
11  the filing process in Everbank and how does it
12  differ from Wells Fargo and SunTrust?
13      A.  I don't remember any -- all those
14  things, every little particular, but I remember
15  about your case and Everbank.
16      Q.  So Everbank specific.
17      A.  Okay.
18      Q.  What is the filing process that you're
19  objecting to and how should it be improved?
20      A.  Filing process is, first of all, it's
21  very cumbersome, you have to fill out the form.
22      Q.  Let's take that step by step.  What is
23  cumbersome about the form that you filled out in
24  Exhibit 2?  Because we have it here and I'll give it
25  to you.

Page 45

1      A.  Okay.
2      Q.  So the form that you filed out, Exhibit
3  2, it's marked Exhibit 1 as an attachment to Exhibit
4  2, what was cumbersome about this process?
5      A.  About this process is this question
6  right here.  Question 1-A, yes or no.  Okay.  You
7  don't know if I was a new member, have you ever been
8  charged by Everbank or blah, blah, blah.  If you
9  have, the properties, number of properties that I
10  had, I would not know unless I have some kind of
11  documentation or anything, but I -- you know, and
12  that is a -- that is one big area of -- that's where
13  it becomes cumbersome for an average person.
14      Q.  To say did you pay the lender-placed
15  charge, that question?
16      A.  That question, whether you paid or not.
17  You know, and then it tells you -- they get cold
18  feet when they say, oh, you can get sanction or you
19  are subject to perjury, or if it's incomplete you
20  may not get the money and, you know, other things
21  you look at it as, you know, what the compensation
22  would be.  You have to get it notarized, you have to
23  get affidavit made, and the amount of money that
24  you're going to get in return, people get cold feet
25  and people get a little uncomfortable.  Then why

12 (Pages 42 - 45)

Page 46

1 should I subject to so much headache for such a
2 small amount of money?
3     Q.  So the headache is checking a box?
4     A.  No, no, no.  Not checking a box.  The
5 whole thing.
6     Q.  Checking a box is easy?
7     A.  Checking the boxes is -- when the
8 question is asked, in your head you go through all
9 those questions that, hey, do I really want to go
10 through that.
11     Q.  So what should they do?
12     A.  Depending on people, individual, what
13 they feel like.  You know, some people do it.  I did
14 it.  I mean, some people did it.
15     Q.  No.  Mr. Jabrani, you're objecting to
16 the settlement, you say it should be a different
17 process?
18     A.  Yeah, it should be.
19     Q.  So instead of asking somebody do you
20 believe to the best of your memory that you paid, or
21 do you believe that you were just charged, you
22 shouldn't even ask the question?
23     A.  No.  What would be a better choice is go
24 and like for any other litigations like, you know,
25 class action lawsuits, Everbank knows that I'm the

Page 47

1 right claimant and everything.  They should send the
2 money directly instead of going through all this
3 cumbersome process.
4     Q.  How do they know if you've paid or you
5 were just charged?
6     A.  They have the records more than I do.
7 They send me the letter saying, you know, the
8 claimant form and everything.  So they have all the
9 records of mine.  And most average person does
10 not -- they go paperless now.
11     Q.  So they know that you were charged
12 lender-placed insurance and they've went ahead and
13 sent you a notice and sent you a claim form?
14     A.  Yes.
15     Q.  And now they're asking you do you know
16 if you actually made any of the payments, because
17 they're saying they don't know that part.  Asking
18 you that question is your objection to the
19 settlement?
20     A.  There are so many other objections --
21     Q.  Yeah.
22     A.  -- but this one, they have more
23 information than I have.
24     Q.  But how do you know if they know which
25 class members actually made payments, not just were

Page 48

1 charged?  Has somebody told you that they have that
2 information?
3     A.  They could be having, because I'm making
4 the payments to them.  Any mortgage company, not
5 only Everbank, any mortgage company, they would have
6 the records more than I would ever have.
7     Q.  So your understanding is that they know
8 who paid and how much?
9     A.  That's right.
10     Q.  Now, take from me this example.  What if
11 they didn't know?  They just knew that you were
12 charged, but they didn't know how much you paid on a
13 class-wide basis, would that change your objection?
14 I'm saying hypothetically if they didn't know as to
15 everybody in the class, not only who was charged,
16 but actually who paid and how much, if they didn't
17 know that information, would that change your
18 opinion?
19     A.  That would not change my opinion.  I
20 mean, they should know, because if you're doing
21 business in that particular field, you better know A
22 to Z, all of it.
23     Q.  And it doesn't change your opinion if
24 they don't know?
25     A.  They should know about it.  The way I

Page 49

1 look at it is if you go into business, mortgage
2 business, you better know what you're doing, and you
3 should have every track of it, you know, every penny
4 of it.
5     Q.  The next -- what was the next part?  You
6 said the filing process.  What was the other part?
7     A.  Yeah.  I told you about that you have to
8 get it notarized.  So, first of all, the
9 compensation is such a small amount, now you have to
10 go fill out all the paperwork, get it notarized, get
11 the affidavit done, okay, and then you have to send
12 a photocopy, and looking at it, if it is incomplete
13 form, you may not get processed.  Then other thing
14 they have got is --
15     Q.  Well, let me stop you there.  Can you
16 get a witness to sign your signature or do you
17 always have to have a notary?  Is that your
18 understanding that the settlement requires a notary?
19     A.  It says that you have to notarize, as
20 well as a witness.
21     Q.  So that's your understanding that each
22 form needs to be notarized by a notary?
23     A.  That's what it called for, right, your
24 application form -- I mean the claimant form called
25 that you have to get it notarized.

13 (Pages 46 - 49)

Veritext Legal Solutions

Page 50

1     Q. I'm just trying to understand your
2 understanding, that all claim forms when they're
3 filled out needed to be notarized?
4     A. Not all. This one. I'm talking about
5 Everbank right now.
6     Q. No. Right. We're just talking about
7 the Everbank claim form, because that's your
8 objection.
9        So all Everbank claim forms, as your
10 understanding, they all need to be notarized, and
11 that's the basis of --
12    A. Yes.
13    Q. -- one of the bases of your objection?
14    A. That's what I saw, what they send me
15 saying I have to get it notarized.
16    Q. Did you ever call them to ask, hey, do I
17 need to notarize this under all circumstances?
18    A. No.
19    Q. And you never called anybody to explain
20 the claim form to you?
21    A. No.
22    Q. Do you know that there's a claim
23 company that you -- a claims administrator that you
24 could call if you have questions?
25    A. And yes, I did see that.

Page 51

1     Q. And you didn't call them?
2     A. I didn't call them. The reason is in my
3 past experience the answering machine came on
4 several times. So I said why go through the
5 headache.
6     Q. Do you know if they had a live operator
7 at Everbank?
8     A. I don't know.
9     Q. You don't know.
10       Did you ever call class counsel?
11    A. No.
12    Q. Did you know that we exist for this
13 case?
14    A. I called. In my previous cases I did
15 call class counsel.
16    Q. We're talking Everbank just.
17    A. No, not in this case.
18    Q. I show you what we marked as Exhibit 5,
19 and it's a pleading from a case Sheila Allen vs.
20 JPMorgan Chase Bank. It's a case in the Northern
21 District of Illinois, and it requires that a bond of
22 $121,886 be paid for an objection in that case. Are
23 you familiar with Exhibit 5? Take your time and
24 read it.
25       MR. WOODS: Do you understand his

Page 52

1 question?
2        THE WITNESS: Yeah.
3     Q. (By Mr. Moskowitz) Do you know what
4 Exhibit 5 is from?
5     A. You just showed it to me right now.
6     Q. Yeah.
7     A. And where they have to take a bond out
8 for 121,000.
9        MR. WOODS: Listen to his question.
10 Answer his question.
11    Q. (By Mr. Moskowitz) Do you know what this
12 is from?
13    A. No.
14    Q. Are you part of any case that's styled
15 Sheila Allen vs. JPMorgan Chase that's pending in
16 the Northern District of Illinois?
17       MR. WOODS: Is he currently a party? Is
18 that your question?
19       MR. MOSKOWITZ: Has he ever been a
20 party?
21       MR. WOODS: That's a different question,
22 but...
23    A. I don't know. Could be, could not be.
24 I don't know exactly. I did do -- I did do, and I
25 still do business with Chase.

Page 53

1     Q. (By Mr. Moskowitz) But you're not an
2 objector in any class action case against Chase
3 that's pending in Illinois Federal Court?
4        MR. WOODS: Do you know whether you're
5 currently an objector?
6        THE WITNESS: No.
7     Q. (By Mr. Moskowitz) You don't know or
8 you're not?
9     A. I'm not an objector in this one. I
10 could -- I don't know.
11    Q. But to your knowledge you're not an
12 objector in any class action that's pending --
13    A. Uh-uh.
14    Q. Let me just finish the question -- in
15 the Northern District of Illinois now?
16    A. No, not to my knowledge.
17       MR. MOSKOWITZ: Why don't we take a
18 five-minute break and then I'm just about done.
19       (A short break was taken.)
20    Q. (By Mr. Moskowitz) Mr. Jabrani, before
21 we took the break, the part about when you were
22 explaining about your objection, you said that the
23 claims procedure was cumbersome, right?
24    A. Not cumbersome. The actual form,
25 filling of the form is another thing, too.

14 (Pages 50 - 53)

Page 54

1    Q.  Right.
2    A.  Why do we have to fill out the form?
3    Q.  Why fill out the form.
4        How long did it take you to fill out the
5  form that's in Exhibit 1?  Let's see.  It's marked
6  as Exhibit 1 to Exhibit 1.  It's one, two, three
7  pages in total.  How long did it take you to fill
8  out this information, to provide the information in
9  Exhibit 1?
10   A.  Could take a long time, too.
11   Q.  No, no.
12       MR. WOODS:  Just listen to the question.
13   Q.  (By Mr. Moskowitz)  My question was:  How
14 long did it take you when you filled out the three
15 pages that are Exhibit 1 that we've marked to the
16 deposition today, how long?
17   A.  About five minutes.
18   Q.  So it took you five minutes.  And if you
19 turn to the third page, the top heading is page 5 of
20 19 within Exhibit 1 of 1.  And if you look at page 4
21 of 19 where it talks about how to fill it out, your
22 copy's a little blurred, but if you look on the
23 bottom, it says if you're checking yes to question
24 two, you are to support it with only one of the
25 following, and one says a witness' signature over

Page 55

1  the year of 18 or the following, and the last thing
2  is a notary.  So you read it wrong, right?  I mean,
3  tell me the truth.  You only needed a witness
4  signature?  Because you had said that you believed
5  it also required a verification of a notary, but if
6  you read it carefully, it says you only need one of
7  the following, right?
8        MR. WOODS:  Just for the record, the
9  document that's being placed before my client is
10 very blurry, difficult to read.  We're not disputing
11 counsel's description of the process, but again,
12 it's not something that's legible.
13       MR. MOSKOWITZ:  And this is the copy
14 that was in the objection.
15       MR. WOODS:  I understand.
16       Subject to that, do you know one way or
17 the other?
18   A.  I read it and I looked at the form and
19 it says notarize and, what do you call, witness.  So
20 I did both just to make sure that it was not
21 incomplete.
22   Q.  (By Mr. Moskowitz)  But Mr. Jabrani,
23 sitting here today, if you take my representation
24 that it says if you check Question No. 2, you're to
25 provide only one, and one is bolded and underlined

Page 56

1  and capital, of the following, and little one is a
2  witness signature over the age of 18 or the notary.
3  And it's okay, but looking at it now, you when you
4  filled this out read it incorrectly?  You only
5  needed a witness signature over the age of 18?
6    A.  Yes.
7        MR. MOSKOWITZ:  I don't have any further
8  questions.
9        MR. WOODS:  I don't have anything.
10       MR. MOSKOWITZ:  Thank you very much,
11 Mr. Jabrani.
12       THE COURT REPORTER:  Signature?
13       MR. WOODS:  We'll waive.
14       (The deposition concluded at 10:08 a.m.)
15
16
17
18
19
20
21
22
23
24
25

Page 57

1            CERTIFICATE OF REPORTER
2
3        I, Amanda N. Farrar, a Certified Court
4  Reporter for the State of Missouri, do hereby
5  certify that the witness whose testimony appears in
6  the foregoing deposition was duly sworn by me; the
7  testimony of said witness was taken by me to the
8  best of my ability and thereafter reduced to
9  typewriting under my direction; that I am neither
10 counsel for, related to, nor employed by any of the
11 parties to the action in which this deposition was
12 taken, and further that I am not a relative or
13 employee of any attorney or counsel employed by the
14 parties thereto, nor financially or otherwise
15 interested in the outcome of the action.
16
17
18   _____
19        Certified Court Reporter
20
21
22
23
24
25

15 (Pages 54 - 57)

| & | | |
| --- | --- | --- |
| **&**   3:15 4:3,8,13 5:9 | | |

**0**

**02111**   4:20

**1**

**1**   2:8 6:2 8:15 11:6
12:13 13:17 19:14
25:17 45:3,6 54:5,6,6
54:9,15,20,20
**1010**   3:15 5:10
**1025**   5:4
**10:08**   3:15 56:14
**11th**   15:25 16:6,12
17:6
**12.5**   21:11,13,17,20
21:24 26:2
**121,000**   52:8
**121,886**   51:22
**12th**   37:21
**14**   1:7 3:7
**1620**   3:16 5:10
**18**   55:1 56:2,5
**19**   54:20,21

**2**

**2**   2:9 8:18 10:4,18,20
10:21 11:4,6 14:7,8
16:16 17:10,14 19:8
19:14 29:3,5,12
42:18 44:24 45:3,4
55:24
**20**   33:10,11,12,14,23
34:1,17,20 37:11
38:1,4
**20007**   5:5
**2009**   37:17
**2010**   37:18,19
**2012**   37:22,23
**2016**   1:17 3:14
**202**   5:6
**2038**   8:8
**20th**   30:16 31:10
**21st**   16:17 29:18

**22264**   1:7 3:7
**241-2224**   5:11
**2525**   4:14
**261-3100**   4:21

**3**

**3**   2:10 8:21 10:21
42:5
**305**   4:5,10,15
**314**   5:11
**33134**   4:14
**33138**   4:4,9
**372-1800**   4:15
**3rd**   12:15 13:21

**4**

**4**   2:11 8:24 39:10,18
40:12,15,19 54:20
**400**   5:5

**5**

**5**   1:17 2:12 6:2 8:25
51:18,23 52:4 54:19
**5,000**   24:5,8,12 26:22
26:24
**536-8220**   4:5,10
**5th**   3:14

**6**

**6**   2:8,9,10,11,12
617   4:21
**63101**   3:16 5:10
**63368**   8:9
**6th**   12:15 16:9

**7**

**7**   2:3

**9**

**965-8100**   5:6
**9699**   4:4,9
**9:14**   3:15 6:1
**9th**   4:14

**a**

**a.m.**   3:15,15 6:1
56:14
**ability**   57:8

**action**   19:22 20:11
20:15,24 24:20,21
27:8 46:25 53:2,12
57:11,15
**actual**   53:24
**adam**   4:13
**address**   6:20 8:7,8
**administrator**   50:23
**affidavit**   16:15 17:8
45:23 49:11
**age**   7:2 56:2,5
**agent**   35:14,24 36:7
36:12
**ago**   29:16,21,22 37:7
37:8,14
**agreement**   8:15,24
12:13 13:24 16:8
18:8,13,23 24:7
39:11,13,19 40:11
41:7 42:20
**agreements**   18:14
42:8
**ahead**   13:9,13 19:9
28:24 47:12
**ali**   8:5,6,6,10,11 10:3
35:7 36:18 37:4
**allen**   9:1 51:19 52:15
**amanda**   3:16 5:14
57:3
**american**   1:9 3:9
9:21
**amirali**   1:15 3:14 5:8
7:1 8:4
**amm**   4:15
**amount**   21:19 24:2,5
24:6,11,19 25:9,10
25:12,22,22,23 26:13
26:16,19 28:4 45:23
46:2 49:9
**answer**   14:15 17:22
35:8 42:6 52:10
**answered**   31:16
**answering**   51:3
**answers**   32:2

**anybody**   9:12,16
11:23 27:25 28:18
30:13 43:7,10,11
50:19
**apparently**   35:15
**appear**   30:15
**appearances**   4:1 5:1
**appearing**   6:9,13
**appears**   57:5
**application**   49:24
**appointed**   7:22
**approach**   30:20,25
**approached**   12:12
**area**   45:12
**asked**   8:22 31:21
42:3,5 46:8
**asking**   20:19 24:15
25:9 26:9,12 31:2
35:8 46:19 47:15,17
**asks**   14:22
**associate**   15:7
**associated**   6:18
**assume**   36:22
**attached**   2:14
**attachment**   45:3
**attachments**   42:15
**attending**   6:6
**attorney**   6:5 13:6
23:5 24:25 28:20
30:19,20 31:1,15,19
40:24 44:8 57:13
**avelar**   1:3 3:3
**avenue**   4:4,9
**average**   45:13 47:9
**aware**   28:23,25

**b**

**back**   12:11,14,21
13:18 26:1 27:16
**bandas**   8:16 12:12,14
12:22,24 13:5,12
14:19 16:4,9 17:10
17:18 18:7 19:1
23:23,24 25:4,8 27:5
29:4 30:4,8 34:9 41:5

[bandas - correct]                                                                 Page 59

42:8
**bank** 9:2 15:10,11,12
  15:14 16:12 20:11
  35:3 43:11 51:20
**based** 25:15,15
**bases** 50:13
**basically** 31:24
**basis** 48:13 50:11
**behalf** 1:4,16 3:4 7:3
**believe** 11:2 17:25
  18:2,5,6 25:5 39:5
  46:20,21
**believed** 55:4
**benefits** 22:19
**best** 46:20 57:8
**better** 46:23 48:21
  49:2
**big** 45:12
**bit** 33:14 40:20
**blah** 45:8,8,8
**bloom** 1:7 3:7
**blurred** 54:22
**blurry** 55:10
**bolded** 55:25
**bond** 51:21 52:7
**boston** 4:20
**bottom** 54:23
**boulevard** 4:14
**box** 17:24 46:3,4,6
**boxes** 46:7
**break** 7:17 53:18,19
  53:21
**broad** 23:12
**brown** 18:16,18,20
  18:24 19:2 29:9
**browse** 40:16
**browsed** 39:20,22
  43:5
**burt** 5:3,4
**bushman** 4:3,8,8
**business** 48:21 49:1,2
  52:25

**c**

**c** 10:7,9,11 14:8
**call** 8:5,10 12:21
  13:12 15:7 50:16,24
  51:1,2,10,15 55:19
**called** 14:18 31:3,11
  35:5,14 37:13 49:23
  49:24 50:19 51:14
**calling** 26:5
**calls** 9:12 11:23
  28:20 30:18 35:3,12
  41:23
**cancel** 38:17,19
**canceled** 38:12,18,25
**capital** 56:1
**care** 36:18
**carefully** 39:13 55:6
**carlton** 5:4
**carltonfields.com** 5:6
**case** 1:7 3:7 8:19,25
  9:1,5 12:4 19:15,25
  23:4 25:3 27:3,15
  28:3 29:1 31:22
  39:11,19 42:1 44:15
  51:13,17,19,20,22
  52:14 53:2
**cases** 7:11 24:17
  43:20,23 44:5 51:14
**cash** 21:12
**ccr** 5:14
**certain** 24:5 26:13
**certainly** 26:17
**certificate** 57:1
**certified** 3:16 57:3,19
**certify** 57:5
**change** 48:13,17,19
  48:23
**changed** 37:11
**changing** 27:13
**charge** 18:4 38:21,25
  39:1 45:15
**charged** 17:25 18:5,6
  38:11 39:5,8,9 45:8
  46:21 47:5,11 48:1

48:12,15
**charges** 40:21
**charles** 35:25 36:13
**chase** 9:2 39:3,4
  51:20 52:15,25 53:2
**check** 15:18 16:24
  17:24 23:20,24 27:6
  28:1 55:24
**checking** 46:3,4,6,7
  54:23
**choice** 31:4 46:23
**chris** 12:12 13:12
  23:23,24 25:3 30:4
  41:5
**christensen** 4:18
**circumstances** 50:17
**civ** 1:7 3:7
**claim** 11:6,15,22 12:6
  12:20,25 14:1,2,4,9
  14:19 15:13 16:5,12
  17:7,24 19:5,9,14
  20:4,7,9,13,14,19
  29:2 39:7 41:13
  47:13 50:2,7,9,20,22
**claimant** 10:2,11
  11:1,13 19:16,20
  20:10,15 47:1,8
  49:24
**claims** 11:11 50:23
  53:23
**clarify** 16:7
**clasby** 4:3,8
**class** 7:22,24 10:5
  11:5,24 12:3 19:22
  19:25 20:11,15,18,20
  20:24,25 21:4,7
  23:15,18 24:20,21
  27:8 40:22 46:25
  47:25 48:13,15 51:10
  51:15 53:2,12
**clear** 6:15 25:14
  37:24
**client** 13:6 23:5
  24:25 28:20 55:9

**cold** 45:17,24
**come** 30:17,23 31:4
  31:11,11
**comes** 34:11
**comfortable** 20:23
**coming** 27:6,7,8,9
  31:13
**commenced** 6:1
**commerce** 15:12
**common** 44:7
**communication**
  28:21
**companies** 33:24
  34:4 35:21 38:7,19
  39:2
**company** 1:8,9 3:8,9
  5:2 9:17,21,22 32:6
  33:23 35:5,19,25
  36:13 43:12 48:4,5
  50:23
**compared** 32:1,13
**comparison** 32:19
**compensated** 19:24
  40:22,23
**compensation** 20:17
  23:3 45:21 49:9
**comprehend** 40:5
**computer** 41:9,18,24
  43:6
**concluded** 56:14
**confidential** 22:19,21
  22:23 23:2 24:2,17
**continued** 5:1
**conversation** 9:10
  30:7
**conversations** 9:8,16
  13:5
**cooperate** 6:14
**copies** 2:14 38:15
**copy** 10:4 30:5 38:9
  55:13
**copy's** 54:22
**coral** 4:14
**correct** 25:1

[correspondence - field]                                                           Page 60

**correspondence**
  42:24 43:2
**counsel**  6:20,22 7:22
  11:24 12:3 20:11
  27:8 42:21 51:10,15
  57:10,13
**counsel's**  55:11
**counselors**  20:24
**couple**  13:21
**course**  39:16
**court**  1:1 3:1,16 5:13
  6:10 7:22 8:8 10:23
  14:16 23:10 29:9
  31:14 53:3 56:12
  57:3,19
**coverage**  9:9 31:25
  32:14,17,23 35:15,16
  38:13,20
**cross**  1:3,4 3:3,4
**cul**  15:8
**cumbersome**  44:21
  44:23 45:4,13 47:3
  53:23,24
**currently**  52:17 53:5
**cut**  32:5

### d

**d**  4:18 10:13
**date**  17:3,5 31:10
  37:9
**dated**  12:14 16:16
**david**  4:18
**david.christensen**
  4:20
**day**  3:14,15
**days**  13:21
**dc**  5:5
**de**  4:14 15:8
**deal**  19:1 28:12 35:22
  36:16
**dealing**  21:16 35:6
**dealings**  11:19 16:15
**dealt**  37:19
**december**  16:17
  29:18

**decide**  19:4
**decided**  13:12 32:24
  34:9,21
**decision**  13:9
**defendant**  4:17 5:2
**defendants**  1:10 3:10
**defending**  6:7
**depending**  26:20
  46:12
**deposes**  7:3
**deposition**  1:15 3:14
  6:1,18,19 7:10 54:16
  56:14 57:6,11
**depositions**  6:7,11
  7:15
**describes**  10:13
**description**  55:11
**details**  41:14
**development**  15:2
**differ**  44:12
**differed**  41:15
**difference**  43:14
**different**  23:11 24:16
  46:16 52:21
**difficult**  55:10
**dilemma**  38:2
**direct**  2:3 7:4
**direction**  57:9
**directly**  23:10 24:21
  47:2
**disclose**  24:6 26:19
**discussion**  9:19
**discussions**  12:2
**disputing**  55:10
**district**  1:1,1 3:1,1
  10:23 51:21 52:16
  53:15
**document**  6:20 39:15
  40:7 41:11 55:9
**documentation**  45:11
**documents**  6:17,22
  40:2 42:6,7
**doing**  27:12 48:20
  49:2

**donna**  30:1,2 41:3,5
  41:18,20,21,25
**draft**  17:18
**drafted**  17:10 29:3
**drafting**  17:14 29:4
**dropped**  32:18
**duly**  57:6
**dwight**  1:3 3:3

### e

**e**  36:9
**east**  5:5
**easy**  46:6
**either**  9:20
**email**  29:24 30:10
**emailed**  13:19,20
  29:25 30:5
**emails**  42:1,23
**employed**  57:10,13
**employee**  57:13
**engagement**  8:15
**entitled**  10:22 20:18
**eventually**  16:14
  37:25
**everbank**  1:8 3:8
  4:17 8:25 9:5,7,8,11
  9:13,20 10:1,22
  11:19,24 12:3,4
  13:11 16:15 19:15,17
  25:3 27:3,7 29:1 32:2
  32:7 35:2 38:23 39:5
  39:11,19 41:15 43:15
  44:2,11,15,16 45:8
  46:25 48:5 50:5,7,9
  51:7,16
**everhome**  33:21 34:5
  35:11,12
**evermortgage**  9:20
**everybody**  7:23,25
  48:15
**exactly**  22:2 25:21
  27:22 33:11 40:17
  52:24
**examination**  2:1,3
  7:4

**examined**  3:14 7:2
**example**  21:12 22:7
  48:10
**exhibit**  2:8,9,10,11
  2:12 6:2,2 8:15,18,21
  8:24,25 10:4,7,9,11
  10:12,18,20,21,21
  11:4,6,6 12:13 13:17
  14:7,8,8 16:16 17:10
  17:14 19:8,14,14
  25:16,17 29:3,5,12
  39:10,18 40:12,15,19
  42:5,18 44:24 45:2,3
  45:3 51:18,23 52:4
  54:5,6,6,9,15,20
**exhibits**  2:6,14 8:13
**exist**  51:12
**expect**  25:2
**experience**  51:3
**explain**  50:19
**explaining**  53:22
**expressing**  31:14
**extent**  23:12 24:19
  26:9 28:20

### f

**fair**  21:24
**fairness**  30:16
**familiar**  51:23
**far**  34:11
**fargo**  7:12 9:6 13:3
  13:10 22:11,16,17
  23:4,15 27:16 28:7,8
  28:17 31:22 33:18
  34:5 39:4,12 41:16
  43:15 44:2,12
**farrar**  3:16 5:14 57:3
**fburt**  5:6
**federal**  53:3
**fee**  24:7 40:23 42:20
**feel**  46:13
**fees**  40:24 44:8
**feet**  45:18,24
**field**  48:21

[fields - jorden]

| | | | |
|---|---|---|---|
| fields 5:4 | 53:24,25 54:2,3,5 | 12:3 | including 7:23 |
| figure 20:8 | 55:18 | guys 20:6 | incomplete 45:19 |
| file 13:9 | formal 42:4 | **h** | 49:12 55:21 |
| filed 8:19 29:9,17 | forms 50:2,9 | h 36:9 | incorrectly 56:4 |
| 42:12 45:2 | formula 25:6 | haar 3:15 5:9,11 18:8 | index 2:1,6 |
| filing 44:8,10,11,18 | four 38:15 | handle 35:23 37:14 | india 12:10,21 |
| 44:20 49:6 | frame 33:12 | happened 33:1 35:2 | individual 32:23 |
| fill 14:1,4 16:4 19:5,9 | franklin 5:3 | 35:18 37:3,10 | 34:19,20 37:11 46:12 |
| 19:13 20:7 44:21 | free 31:11 | happy 21:19 22:14 | industry 43:8 |
| 49:10 54:2,3,4,7,21 | friend 15:6,7 | 26:2,15 | information 41:19,21 |
| filled 11:9 14:2,19 | front 10:16,18 15:19 | hard 40:5,7 41:10 | 41:22 47:23 48:2,17 |
| 17:13,24 20:13 29:2 | further 39:1 56:7 | harke 4:3,3,8 | 54:8,8 |
| 39:7 41:14 44:23 | 57:12 | harkeclasby.com 4:5 | inside 40:15 |
| 50:3 54:14 56:4 | **g** | 4:10 | insurance 1:8,9 3:8,9 |
| filling 20:3,19 53:25 | g 5:3 | hbushman 4:10 | 5:2 9:17,21,22 11:20 |
| final 30:15 | gables 4:14 | head 23:25 30:6 44:3 | 11:25 15:17 32:1,6 |
| financially 57:14 | gates 4:19 | 46:8 | 32:13,16,25 34:18 |
| find 17:1 | general 41:24 | headache 46:1,3 51:5 | 35:5,6,14,19,22,25 |
| fine 8:12 30:18,24 | gentleman 14:25 | heading 54:19 | 36:12,13 37:25 38:2 |
| 31:13,19 | getting 27:2 28:5,6 | hear 7:25 30:24 | 38:3,6,8,8,10 43:11 |
| finish 53:14 | 36:17 | heard 18:20 | 43:24,25 44:1 47:12 |
| firm 8:16 30:4 | gist 41:24 43:20,22 | hearing 30:16 | intend 25:7 |
| first 11:18 20:25 | give 25:16 28:7 38:9 | help 12:16 35:15 | interested 57:15 |
| 32:24 44:20 49:8 | 44:24 | hey 26:15 46:9 50:16 | internet 13:25 |
| five 8:13 17:7 53:18 | gives 41:24 | hired 18:7 | involved 7:11 |
| 54:17,18 | go 7:18 12:14 13:9,25 | home 8:6,8 33:7 | irrelevant 22:20 |
| flat 38:12,17 | 17:17 27:16 28:24 | 34:14 | issue 34:24 |
| floor 4:14 | 29:12 31:23 32:1,24 | hopefully 25:10 | issues 6:12 |
| florida 1:1 3:1 4:4,9 | 46:8,9,23 47:10 49:1 | hoping 26:14 | **j** |
| 4:14 | 49:10 51:4 | hours 3:15 | jabrani 1:15 3:14 5:8 |
| followed 38:10 | going 6:13 7:17,18 | howard 4:8 | 6:18,19 7:1,6 8:4 |
| following 54:25 55:1 | 8:13,25 10:17 13:4,9 | huh 7:13 10:19 14:13 | 28:9,13 30:23 46:15 |
| 55:7 56:1 | 14:7 20:3 21:5,8,20 | 16:10,20 21:18 42:14 | 53:20 55:22 56:11 |
| force 31:25 35:22 | 22:18 24:1,14 25:7,8 | hypothetically 48:14 | jabrani's 6:7 26:3 |
| 38:7 43:24,25 44:1 | 25:18 26:1,2,4 27:4,5 | **i** | january 1:17 3:14 |
| foregoing 57:6 | 28:7,19 31:8,23 | idea 25:6,13 | 30:16 31:10 |
| form 10:11 11:1,7,11 | 32:23 38:21,24 45:24 | identification 6:3 | jargon 40:3 |
| 11:13,15,23 12:6,20 | 47:2 | illinois 51:21 52:16 | jeff 18:16 |
| 12:25 14:1,2,4,9,10 | good 7:6,7,8 20:2,5 | 53:3,15 | jefferson 5:4 |
| 14:20 15:13 16:5,12 | 20:12 | improve 27:14 28:1 | jessie 1:3 3:3 |
| 17:7,24 19:5,10,14 | gotten 18:8 28:14 | improved 27:17,21 | jesus 1:3 3:3 |
| 20:4,7,9,13,19 29:2 | great 7:19 | 28:3,4,9,13,18 44:19 | joe 14:25 15:4 |
| 39:7 41:13 44:21,23 | guaranty 1:8 3:8 5:2 | improvement 28:23 | jorden 5:4 |
| 45:2 47:8,13 49:13 | 9:16,21 11:20,24 | | |
| 49:22,24,24 50:7,20 | | | |

[jpmorgan - negotiated]                                                        Page 62

**jpmorgan**  9:2 51:20
 52:15
**judge**  30:16,22 31:4
**jurisdiction**  6:10

**k**

**k&l**  4:19
**kimberly**  15:12
**kind**  40:24 44:9
 45:10
**klgates.com**  4:20
**knew**  48:11
**know**  7:10,15,16 9:24
 10:2 11:2,2,14 15:19
 15:21 17:16 21:7
 22:2 23:15,16,18,19
 23:22 25:10,12,21
 26:20 27:5,5,10,11
 27:12,16,19,22 28:3
 29:5 30:3,19 31:24
 31:25 32:10,11,12,12
 32:19 33:2 34:3,12
 34:12,13 36:8,9,10
 36:24,25 37:1,2,5,6
 38:24 39:2,6,9 40:1
 40:20,22 41:23 43:14
 43:18,19,21,22 44:4
 44:8 45:7,10,11,17
 45:20,21 46:13,24
 47:4,7,11,15,17,24
 47:24 48:7,11,12,14
 48:17,20,21,24,25
 49:2,3 50:22 51:6,8,9
 51:12 52:3,11,23,24
 53:4,7,10 55:16
**knowledge**  28:17
 37:24 53:11,16
**knows**  24:19 46:25
**kozyak**  4:13
**kttlaw.com**  4:15

**l**

**lance**  4:3 7:21
**lapsed**  32:18
**law**  8:16 30:4

**lawful**  7:2
**lawsuit**  20:16
**lawsuits**  46:25
**lawyer**  18:15
**learn**  41:14
**legal**  19:20 20:9,14
 20:15 40:3,7 41:9,11
 42:4
**legible**  55:12
**lemus**  1:3 3:3
**lender**  7:11 9:9,25
 11:20,25 15:17 18:1
 18:4 32:7,14,19,21
 33:7,18,19,20,21,25
 34:4,14,25 35:11,21
 36:18 37:12 45:14
 47:12
**leon**  4:14
**letter**  10:1,4,23 35:11
 36:23 47:7
**letters**  36:17 37:13
**lharke**  4:5
**limited**  6:6
**limiting**  23:9
**lincoln**  4:19
**line**  17:17,17
**listen**  35:7 52:9 54:12
**litigations**  46:24
**little**  33:14 40:6,20
 43:21 44:14 45:25
 54:22 56:1
**live**  51:6
**lives**  14:25 15:1
**living**  15:8
**llp**  3:15 4:3,8,19 5:9
**local**  15:14
**located**  36:1,13
**long**  7:18 37:7 54:4,7
 54:10,14,16
**look**  25:19 39:14
 41:22 45:21 49:1
 54:20,22
**looked**  12:10,11
 30:11,12 55:18

**looking**  49:12 56:3
**lopez**  30:1,2
**lot**  22:7 33:24
**louis**  3:16 5:10 6:6
**lump**  32:25 35:20

**m**

**m**  4:8,13
**machine**  51:3
**mail**  10:10 11:12,16
 12:7 13:16,18 19:8
 28:1
**mailed**  10:5 11:5
**making**  48:3
**mark**  8:13
**marked**  10:20 13:17
 14:8 17:10 19:13
 39:10 40:12 42:5,18
 45:3 51:18 54:5,15
**market**  3:15 5:10
**massachusetts**  4:20
**master**  37:11 38:4,5
**material**  17:13 25:16
**mattie**  1:4 3:4
**mean**  25:13,16 26:14
 31:3 32:11,15 41:19
 42:4 43:19 46:14
 48:20 49:24 55:2
**means**  40:6
**measure**  32:23
**measured**  32:22
**member**  23:15,18
 45:7
**members**  10:5 11:5
 19:25 20:18 21:1,4,7
 40:22 47:25
**memory**  12:16 46:20
**memos**  42:23
**mentioned**  9:1
**met**  18:18
**miami**  4:4,9 18:15
 29:9 30:17 31:5,8,11
 31:13
**mickelson**  15:4

**mickson**  15:1,5,6
**mind**  26:15
**mine**  47:9
**minute**  38:6 53:18
**minutes**  54:17,18
**mischaracterized**
 42:11
**missouri**  3:16,17
 5:10 8:9 36:6,7,14
 57:4
**mistake**  18:4
**money**  23:14,17,20
 27:2,4,6,13,17 28:5,6
 28:9,14 45:20,23
 46:2 47:2
**moondance**  8:8
**morning**  7:6,7,18
**mortgage**  38:6 48:4,5
 49:1
**moskowitz**  2:3 4:13
 6:23 7:5 10:17 11:4
 13:7 14:18 16:24
 17:5,23 18:10,12
 22:21 23:1,14 24:1,4
 24:23 25:2 26:12
 31:18 35:10 37:1,7
 39:16,17 42:13,15,17
 52:3,11,19 53:1,7,17
 53:20 54:13 55:13,22
 56:7,10
**move**  8:14

**n**

**n**  3:16 5:14 57:3
**n.a.**  1:8 3:8 4:17
**name**  6:5 8:2,4,5
 14:25 18:15 36:8,10
**ne**  4:4,9
**need**  7:17 50:10,17
 55:6
**needed**  50:3 55:3
 56:5
**needs**  49:22
**negotiated**  22:6

[neither - put]

**neither** 57:9
**never** 9:10,12 35:3
35:12 38:5 50:19
**new** 45:7
**nodded** 23:25 30:6
44:3
**northern** 51:20 52:16
53:15
**notarize** 49:19 50:17
55:19
**notarized** 45:22 49:8
49:10,22,25 50:3,10
50:15
**notary** 14:23 15:21
49:17,18,22 55:2,5
56:2
**notice** 9:1 10:5,13,22
11:5,12 19:5,7,17
47:13
**november** 12:15,15
13:21 15:25 16:6,9
16:12 17:6
**number** 21:23 22:3,4
45:9
**nw** 5:4

**o**

**o'fallon** 8:9
**oath** 39:25
**object** 13:4 22:18
24:15 26:5 28:19
**objecting** 20:23
24:18 25:24 26:7
44:19 46:15
**objection** 7:21 8:1,18
13:10,14 17:9 18:15
29:3 30:24 31:22
34:10 42:6,13,17
43:1 47:18 48:13
50:8,13 51:22 53:22
55:14
**objections** 6:16 8:21
22:8,9 31:14 42:12
47:20

**objector** 23:3 26:4
53:2,5,9,12
**objector's** 42:7
**oh** 17:23 33:2 37:17
45:18
**okay** 8:10,20,23 9:3
9:15,24 10:3 13:7,16
14:7 16:3,14,18
17:16 21:22 24:9
27:25 29:20 32:24
35:8,9 44:17 45:1,6
49:11 56:3
**once** 30:25
**ones** 34:6
**operator** 51:6
**opinion** 48:18,19,23
**ordered** 23:10
**orders** 31:4
**original** 2:14
**outcome** 57:15
**overly** 23:12
**overview** 9:5
**owner** 20:14

**p**

**p.a.** 5:4
**page** 2:3,8,9,10,11,12
16:16 54:19,19,20
**pages** 54:7,15
**paid** 18:1 21:12 25:3
25:7,18 27:17 45:16
46:20 47:4 48:8,12
48:16 51:22
**paperless** 47:10
**paperwork** 49:10
**paragraph** 17:17,17
**paralegal** 30:3 41:5,6
**part** 10:21 47:17
49:5,6 52:14 53:21
**participant** 24:20
**participate** 19:18,19
19:21
**particular** 40:25 41:1
44:14 48:21

**particulars** 43:21
**parties** 57:11,14
**party** 52:17,20
**pay** 18:3 27:4 45:14
**paying** 32:13,20
**payments** 47:16,25
48:4
**pays** 25:8
**pending** 52:15 53:3
53:12
**penny** 49:3
**people** 14:22,24
45:24,25 46:12,13,14
**percent** 21:11,13,17
21:21,24 26:3
**perjury** 45:19
**person** 15:9 18:14
45:13 47:9
**personal** 6:12 28:4
**pete** 5:9 6:5
**peter** 18:11
**peters** 36:2,4,5,14
**petewoods** 5:11
**photocopy** 49:12
**place** 31:25 35:22
36:18 43:24,25 44:1
**placed** 7:11 9:9,25
11:20,25 15:17 18:1
18:4 32:7,14,19,21
33:7,18,20,21 34:4
34:14,25 35:11 37:12
38:7 45:14 47:12
55:9
**placement** 33:25
**plaintiff's** 2:8,9,10
2:11,12 6:2,20
**plaintiffs** 1:6,16 3:6
4:2,7,12 7:3
**pleading** 51:19
**please** 7:16 16:23
42:13
**plus** 21:6,15 33:10,11
33:13 34:2,3,17,20
38:1 40:2

**pocket** 28:10
**policies** 34:13,20
37:11
**policy** 32:25 33:24
34:18,21 35:12 37:12
37:21 38:4,5
**ponce** 4:14
**possession** 42:8
**premarked** 6:3 8:14
**previous** 24:17 51:14
**printed** 43:4
**prior** 6:21 7:11
**privilege** 13:6 23:2,6
24:24,25
**privileged** 28:21
**procedure** 53:23
**proceeding** 22:20
23:9
**process** 7:14 44:8,10
44:11,18,20 45:4,5
46:17 47:3 49:6
55:11
**processed** 49:13
**produced** 3:14 7:2
10:4
**production** 6:17 8:22
42:3
**properties** 32:24
33:1,6,9,10,11,15,17
33:19,21,23 34:1,2
34:17,22 38:1 45:9,9
**property** 33:6,8
34:15,19 35:16,20
**proud** 7:24
**provide** 54:8 55:25
**provided** 6:22 31:15
31:18
**purpose** 6:6 7:20
**purposes** 6:16
**pursue** 13:13,14
**put** 10:18 21:11
33:24

[question - suit]                                                        Page 64

| q |
|---|
| **question** 7:16 17:21 |
| 19:6 20:25 23:12 |
| 24:15 26:11 27:23 |
| 31:17 35:7,8 45:5,6 |
| 45:15,16 46:8,22 |
| 47:18 52:1,9,10,18 |
| 52:21 53:14 54:12,13 |
| 54:23 55:24 |
| **questions** 31:21 46:9 |
| 50:24 56:8 |
| **quicker** 8:14 |

| r |
|---|
| **read** 10:25 12:21 |
| 39:13 40:1,2 51:24 |
| 55:2,6,10,18 56:4 |
| **really** 7:20 46:9 |
| **reason** 51:2 |
| **receipt** 22:19 |
| **receive** 11:13 12:6,20 |
| 23:17 24:8 26:6,14 |
| **received** 11:11,15,22 |
| 12:25 19:4,7 22:25 |
| 23:3,8,10,13,14,20 |
| 24:4,10,11,16,20 |
| 29:2 |
| **record** 6:4,16 8:3 |
| 10:15 32:10 55:8 |
| **records** 47:6,9 48:6 |
| **recovery** 20:21 |
| **reduced** 57:8 |
| **references** 42:11 |
| **refresh** 12:16 |
| **regarding** 42:6 43:1 |
| **related** 57:10 |
| **relationship** 23:7 |
| **relative** 6:10 57:12 |
| **remains** 43:20,22 |
| **remember** 9:9 32:8 |
| 34:7 39:3 40:10,14 |
| 40:18 44:13,14 |
| **rental** 33:8,9,14,17 |
| 33:19,20 34:17 38:1 |

**repeat** 19:6
**reporter** 3:16 5:13
14:16 56:12 57:1,4
57:19
**represent** 7:23
**representation** 55:23
**representative** 9:13
**representatives** 9:20
**representing** 35:23
**request** 6:17 42:3
**requests** 6:21 8:22
**required** 55:5
**requires** 49:18 51:21
**research** 43:3
**resolution** 24:17
**responses** 6:17
**result** 24:16
**results** 22:14
**retainer** 16:8
**return** 45:24
**review** 16:23 29:8
**revised** 26:7
**right** 10:6,7,11 11:5
11:8 12:19 13:22
14:12 16:1,17,19
17:8,11 19:12 24:8
24:11 26:1 28:11,14
28:15 30:22 34:12
42:9 45:6 47:1 48:9
49:23 50:5,6 52:5
53:23 54:1 55:2,7
**role** 17:14 29:4
**ross** 15:12
**route** 22:25 28:23

| s |
|---|
| **s** 36:9 |
| **sac** 15:8 |
| **sanction** 45:18 |
| **saw** 29:20 50:14 |
| **saying** 10:1 23:3,5 |
| 24:24 38:7,19,25 |
| 40:18,20 47:7,17 |
| 48:14 50:15 |

**says** 7:3 24:7 25:17
30:22 31:19 49:19
54:23,25 55:6,19,24
**second** 4:4,9
**security** 1:9 3:9 9:22
**see** 7:8 16:19 17:3,5
23:1 29:5,15,17,20
42:13 50:25 54:5
**seen** 29:11,12,14,15
**send** 36:22,23 38:15
41:3,25 47:1,7 49:11
50:14
**sending** 35:21
**sent** 19:17 34:8 41:7
41:8 47:13,13
**served** 6:19
**service** 6:12
**seth** 36:9,9,12,16
37:13,20 38:8
**settlement** 7:24 8:24
10:13 19:22 20:2,5
20:10,12 21:1 22:22
23:11 24:24 25:25
26:7 27:13,14,18,22
28:2,4,8,12,24 39:11
39:13,18 40:11 41:15
41:23 43:4,8 46:16
47:19 49:18
**settlements** 28:18
41:16 43:16 44:5
**sheila** 9:1 51:19
52:15
**shores** 4:4,9
**short** 32:5 53:19
**show** 10:14 14:7 20:9
25:17 51:18
**showed** 29:23 52:5
**showing** 38:13 39:17
**sign** 13:17,21,24
15:19 16:4,14 17:8
49:16
**signature** 14:9,12,23
14:23 16:21 49:16
54:25 55:4 56:2,5,12

**signatures** 15:19
**signed** 12:15 16:8,9
18:14
**similar** 39:12
**similarly** 1:5 3:5
**single** 38:6
**site** 41:9
**sitting** 39:25 40:10
40:15 55:23
**situated** 1:5 3:5
**six** 17:7
**small** 46:2 49:9
**somebody** 9:8 46:19
48:1
**sorry** 10:12,21 11:6
18:10 36:3 39:21
**southern** 1:1 3:1
**specific** 25:10,21,22
25:23 44:16
**specifically** 9:7 35:3
**speculate** 26:6,10,13
26:14 37:4
**st** 3:16 5:10 6:6 35:25
36:2,4,5,13,14
**standard** 1:8 3:8 5:2
9:16,21 11:19,24
12:3
**start** 9:7
**started** 37:12
**starting** 6:21
**state** 3:16 8:2 57:4
**states** 1:1 3:1 10:22
**step** 44:22,22
**stipulation** 39:10,18
**stop** 31:7 49:15
**street** 3:15 4:19 5:4
5:10
**styled** 52:14
**subdivision** 15:1,3,8
**subject** 28:22 45:19
46:1 55:16
**submitting** 6:10
**substance** 13:8 17:16
**suit** 24:21

[suite - wrong]

**suite** 3:16 5:4,10
**sum** 32:25 35:20
**suntrust** 7:12 9:6
13:3,10 22:11 23:17
23:18 28:12,17 33:20
34:5 39:4,12 41:16
43:15 44:2,12
**support** 54:24
**sure** 10:17,25 19:7
22:11 25:20 31:6
32:17 33:2 39:23,24
40:4 55:20
**switched** 33:23 35:19
**sworn** 3:14 7:2 57:6

**t**

**t** 36:9
**take** 25:8 30:19
36:18 44:10,22 48:10
51:23 52:7 53:17
54:4,7,10,14 55:23
**taken** 1:16 7:10
53:19 57:7,12
**talk** 30:13
**talked** 9:5,6 22:9
43:7,10
**talking** 10:24 50:4,6
51:16
**talks** 54:21
**telephone** 4:7,17 5:2
**tell** 8:6 11:3 13:7
14:24 33:10 40:16
44:5 55:3
**telling** 24:10
**tells** 45:17
**term** 42:4
**terms** 9:7 17:9 20:3
22:7,24 29:1 33:2,3
**testify** 24:22 28:24
**testifying** 24:18
**testimony** 26:8,8
57:5,7
**thank** 6:23 8:10
56:10

**thereto** 42:16 57:14
**thing** 13:11 33:1 40:6
40:24 44:7 46:5
49:13 53:25 55:1
**things** 44:9,14 45:20
**think** 7:17 20:2,5,12
21:23 23:11 26:10
27:1 31:2 32:22
42:10,11 43:16
**third** 54:19
**thomas** 5:4
**thought** 15:22
**three** 38:15 43:20,23
43:25 44:5 54:6,14
**throckmorton** 4:13
**time** 11:18 12:11,18
17:2 19:9 32:22
33:12 38:14 51:23
54:10
**times** 38:16 51:4
**today** 6:8,21 7:20
18:21 29:13 37:15
39:25 40:10,15 44:6
54:16 55:23
**told** 7:14 33:22 35:20
36:22 38:8 41:17
48:1 49:7
**top** 54:19
**topic** 23:11
**total** 54:7
**track** 49:3
**transcript** 2:14
**travel** 31:5
**tropin** 4:13
**truth** 55:3
**try** 9:4 35:4 38:12
**trying** 17:1 20:8
27:14 32:5 50:1
**turn** 54:19
**twenty** 34:2,3
**two** 14:24 29:16,22
54:6,24
**typewriting** 57:9

**u**

**uh** 7:13 10:19 14:13
16:10,20 21:18 32:9
32:9 42:14 53:13,13
**ultimate** 22:19
**uncomfortable** 45:25
**underlined** 55:25
**understand** 7:15,16
7:21 9:4 40:8 41:10
50:1 51:25 55:15
**understanding** 48:7
49:18,21 50:2,10
**unfair** 26:11
**united** 1:1 3:1 10:22
**use** 15:24

**v**

**vague** 25:13
**valle** 1:7 3:7
**various** 31:21
**vary** 26:20,23
**verification** 55:5
**verified** 15:9 16:5,12
17:7
**voluntarily** 6:9
**voluntary** 32:1,6,13
32:15
**vs** 1:7 3:7 9:1 10:22
51:19 52:15

**w**

**waive** 56:13
**walk** 16:3
**want** 6:15 7:24 9:4
19:18 20:17,20 21:1
21:4,14,17,20 22:5
26:19 27:1 29:11
30:23 46:9
**wanted** 13:13 15:18
19:19,21 30:17
**washington** 5:5
**way** 24:16 27:18
28:16 48:25 55:16
**we've** 7:10,22 8:14
10:20 13:16 17:10

18:7 22:9 39:10 42:4
54:15
**website** 41:4,22
**week** 16:5,11 29:16
29:21,22
**weeks** 17:7,8 29:16
29:22
**wells** 7:11 9:6 13:3
13:10 22:11,16,17
23:4,15 27:16 28:6,8
28:17 31:22 33:18
34:5 39:4,12 41:16
43:15 44:2,12
**went** 14:19 19:8 38:5
41:3,17,22 47:12
**wide** 48:13
**wife** 8:19
**wife's** 14:12
**willing** 30:15
**wilson** 1:3 3:3 10:22
**witness** 5:8 14:23
17:4 23:25 30:6 35:9
36:25 44:3 49:16,20
52:2 53:6 54:25 55:3
55:19 56:2,5 57:5,7
**woods** 3:15 5:9,9 6:4
6:5,24 10:15,25 13:4
14:15 16:23 17:3,21
18:9,9,10,12 22:18
22:24 23:7 24:3,14
25:1 26:5 28:19
31:16 35:7 36:24
37:4 39:14 42:10,14
51:25 52:9,17,21
53:4 54:12 55:8,15
56:9,13
**woods.com** 5:11
**work** 25:7 35:4
**works** 43:10,11
**write** 27:5 29:6
**writing** 41:25
**written** 25:16
**wrong** 55:2

[x - zip]

| x |
|---|
| **x**  26:15 |
| **y** |
| **yeah**  8:12 10:16 |
| 13:15 15:15,23 16:8 |
| 16:24 17:4,20 21:9 |
| 22:15 26:17,25 31:3 |
| 31:4,12,15,20 33:16 |
| 37:16 38:15,19,22 |
| 41:12 46:18 47:21 |
| 49:7 52:2,6 |
| **year**  37:8,14 55:1 |
| **z** |
| **z**  48:22 |
| **zero**  24:5,12 26:22,24 |
| **zip**  8:9 |

FLORIDA RULES OF CIVIL PROCEDURE

Rule 1.310

(e) Witness Review. If the testimony is
transcribed, the transcript shall be furnished to
the witness for examination and shall be read to or
by the witness unless the examination and reading
are waived by the witness and by the parties. Any
changes in form or substance that the witness wants
to make shall be listed in writing by the officer
with a statement of the reasons given by the
witness for making the changes. The changes shall
be attached to the transcript. It shall then be
signed by the witness unless the parties waived the
signing or the witness is ill, cannot be found, or
refuses to sign. If the transcript is not signed by
the witness within a reasonable time after it is
furnished to the witness, the officer shall sign
the transcript and state on the transcript the
waiver, illness, absence of the witness, or refusal
to sign with any reasons given therefor. The
deposition may then be used as fully as though
signed unless the court holds that the reasons
given for the refusal to sign require rejection of

the deposition wholly or partly, on motion under rule 1.330(d)(4).

DISCLAIMER:   THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2014.   PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.