Page 1

1           UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
2
3   DWIGHT WILSON, JESUS A.         )
    AVELAR-LEMUS, JESSIE CROSS,     )
4   and MATTIE CROSS on behalf      )
    of themselves and all others    )
5   similarly situated,             )
                                    )
6            Plaintiffs,            )
                                    )
7   vs.                             ) Case No.
                                    ) 14-CIV-22264-BLOOM/VALLE
8   EVERBANK, N.A., STANDARD        )
    GUARANTY INSURANCE COMPANY,     )
9   and AMERICAN SECURITY           )
    INSURANCE COMPANY,              )
10                                  )
             Defendants.            )
11
12
13
14
15        DEPOSITION OF JANET JABRANI
16      TAKEN ON BEHALF OF THE PLAINTIFFS
17             JANUARY 5, 2016
18
19
20
21
22
23
24
25

Page 2

1            INDEX OF EXAMINATION
2
3  Direct Examination by Mr. Harke         Page  7
4  Cross-Examination by Mr. Woods          Page 35
5  Redirect Examination by Mr. Harke       Page 37
6
7
8            INDEX OF EXHIBITS
9
10 Plaintiff's Exhibit 6                   Page  6
11
12 (The exhibits were attached to the original
   transcript and all copies.)
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1        UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF FLORIDA
2
3  DWIGHT WILSON, JESUS A.    )
   AVELAR-LEMUS, JESSIE CROSS,)
4  and MATTIE CROSS on behalf )
   of themselves and all others)
5  similarly situated,        )
                              )
6         Plaintiffs,         )
                              )
7  vs.          ) Case No.
                ) 14-CIV-22264-BLOOM/VALLE
8  EVERBANK, N.A., STANDARD   )
   GUARANTY INSURANCE COMPANY,)
9  and AMERICAN SECURITY      )
   INSURANCE COMPANY,         )
10                            )
          Defendants.         )
11
12
13
14      DEPOSITION OF JANET JABRANI, produced,
   sworn, and examined on the 5th day of January, 2016,
15 between the hours of 10:17 a.m. and 10:59 a.m. of
   that day, at Haar & Woods, LLP, 1010 Market Street,
16 Suite 1620, St. Louis, Missouri 63101, before AMANDA
   N. FARRAR, a Certified Court Reporter of the State
17 of Missouri.
18
19
20
21
22
23
24
25

Page 4

1              APPEARANCES
2  For the Plaintiffs:
3  MR. LANCE A. HARKE
   Harke, Clasby & Bushman, LLP
4  9699 NE Second Avenue
   Miami Shores, Florida 33138
5  lharke@harkeclasby.com
   (305)536-8220
6
7  For the Plaintiffs Via Telephone:
8  MR. HOWARD M. BUSHMAN
   Harke, Clasby & Bushman, LLP
9  9699 NE Second Avenue
   Miami Shores, Florida 33138
10 hbushman@harkeclasby.com
   (305)536-8220
11
12 For the Plaintiffs:
13 MR. ADAM M. MOSKOWITZ
   Kozyak, Tropin & Throckmorton
14 2525 Ponce de Leon Boulevard, 9th Floor
   Coral Gables, Florida 33134
15 amm@kttlaw.com
   (305)372-1800
16
17 For the Defendant Everbank, N.A., Via
   Telephone:
18
   MR. DAVID D. CHRISTENSEN
19 K&L Gates, LLP
   One Lincoln Street
20 Boston, Massachusetts 02111
   david.christensen@klgates.com
21 (617)261-3100
22
23
24
25

Page 5

1         APPEARANCES CONTINUED
2  For the Defendant Standard Guaranty,
   Insurance Company, Via Telephone:
3
   MR. FRANKLIN G. BURT
4  Carlton, Fields, Jorden, Burt, P.A.
   1025 Thomas Jefferson Street, NW, Suite
5  400 East
   Washington, DC 20007
6  fburt@carltonfields.com
   (202)965-8100
7
8  For the Witness, Amirali Jabrani:
9  MR. PETE WOODS
   Haar & Woods, LLP
10 1010 Market Street, Suite 1620
   St. Louis, Missouri 63101
11 petewoods@haar-woods.com
   (314)241-2224
12
13 The Court Reporter:
14 MS. AMANDA N. FARRAR, CCR
15
16
17
18
19
20
21
22
23
24
25

Page 6

1    (The deposition commenced at 10:17 a.m.)
2    (Plaintiff's Exhibit 6 was premarked for
3 identification.)
4        MR. WOODS: Just as we begin, excuse me
5 for interrupting, but I did want to make a record in
6 this deposition, as I did with Mr. Jabrani, and that
7 is that my name is Pete Woods and I'm attending for
8 the limited purpose of defending these depositions;
9 that my clients here are voluntarily appearing;
10 they're not submitting to the jurisdiction of the
11 Court; that there has been no personal service of
12 them on them of the subpoena; and there are some
13 other technical objections; but that they are
14 appearing voluntarily and cooperating with this
15 process; and further, for the record, that there
16 have been objections and responses to plaintiff's
17 requests for the production of documents directed to
18 both Mr. Jabrani and Mrs. Jabrani, and objections
19 and responses have been served on plaintiff's
20 counsel, and we're relying on those relative to this
21 deposition.
22        Subject to that, I have nothing further
23 for the formal record purposes.
24        MR. HARKE: But we don't concede or
25 acquiesce in the statement of Mr. Woods, but we

Page 7

1 acknowledge that he's made it for the record. Ready
2 to proceed?
3        JANET JABRANI,
4 of lawful age, being produced, sworn, and examined
5 on behalf of the Plaintiffs, deposes and says:
6        DIRECT EXAMINATION
7 BY MR. HARKE
8    Q. Good morning. How are you?
9    A. I'm fine, thanks. And yourself?
10   Q. Very well. Thank you.
11       My name is Lance Harke. We met before,
12 if you recall, in the deposition I took of you in
13 the SunTrust matter. Do you remember that?
14   A. Yes, I do.
15   Q. Can you state your name for the record.
16   A. Janet Eileen Jabrani.
17   Q. Mrs. Jabrani, you and I have been in a
18 deposition before in another force-place insurance
19 objection, but just to refresh your recollection,
20 you're under oath. Do you realize that?
21   A. Yes, I do.
22   Q. And you're sworn to tell the truth; do
23 you understand that?
24   A. Yes, I do.
25   Q. And if you have any issues with any of

Page 8

1 the questions that I ask, I'll expect you to let me
2 know so that I can try to rephrase the question so
3 that you can understand it better. Is that okay?
4    A. That will be fine. Thank you.
5    Q. And if for any reason, I don't think
6 we're going to go very long this morning, but if for
7 any reason you need a break, provided that there's
8 not an open question that's pending, I'd be happy to
9 accommodate your request. Is that all right?
10   A. Yes. Thank you.
11   Q. Thank you. So, Mrs. Jabrani, you're
12 here because you're objecting to the Everbank class
13 action settlement. Do you understand that?
14   A. Yes.
15   Q. And can you tell me in your own words
16 what it is about the settlement that you have an
17 objection about?
18   A. Certainly. In my own words, the
19 Everbank settlement doesn't really do the class
20 members a lot of good, and what I mean by that is
21 there are about, and I'm not great with numbers, so
22 there are about 45,000 members who are in this class
23 action lawsuit, and the amount of money that they
24 stand to gain is very minimal. If my reading is
25 correct, I think that Everbank might have collected

Page 9

1 $101 million in premiums from this group of people,
2 but this group of people only stands to get
3 12.5 percent of the money back.
4    Q. Uh-huh.
5    A. So the way I understand it is of that
6 45,000 people, if they all filed the claim and they
7 were all successful in getting their money back, it
8 would only be 12.5 percent of what they actually
9 paid in. Not only that, but I didn't understand
10 this, and so I had to have somebody explain it to
11 me. If you had that force-place insurance on your
12 mortgage, and I'm just going to throw out a number,
13 let's say it's $1,000, Everbank knows that they put
14 that insurance on your premium and they're not going
15 to wipe that insurance amount off of -- premium off
16 of your mortgage. They're going -- and you didn't
17 pay it, they're only going to give you a credit for
18 it.
19   Q. Uh-huh.
20   A. Did I make myself clear on that? So to
21 me I find that that's not fair.
22   Q. You mentioned that you had to have
23 someone explain that issue to you. Who was it who
24 explained that?
25   A. My husband, Ali.

**Page 10**

1  Q. I see, okay. And what did -- how did
2  you learn these facts, as you understand them, about
3  the Everbank settlement?
4  A. Well, I read the settlement, and I'm not
5  a subject matter expert. I get very limited
6  information about the real estate company that my
7  husband has, only because I have my own job.
8  Q. Uh-huh.
9  A. So I don't pay a lot of attention to
10 that, and shame on me for that. So I look to him to
11 explain things to me, and then if I'm really totally
12 confused, then I'll have to seek other subject
13 matter experts.
14 Q. Do you remember -- did you ever receive
15 a copy of the settlement notice in this case?
16 A. Yes, I did. It was me who got it
17 actually. Ali's father died this fall.
18 Q. I'm sorry to hear that.
19 A. Yeah, we've had a terrible year. Yeah.
20 So I won't go into all that. I'll make myself cry.
21      But anyway, when Ali was in India, then,
22 of course, I got the mail out of the mailbox, and I
23 usually never do. So when I would get things, I
24 would open them up and I would read them. So when I
25 got the document from Everbank, I actually scanned

**Page 11**

1  it and emailed it to him because I knew that it was
2  sensitive-time information. So I'm the one who
3  actually got it.
4  Q. Very good. I'm going to go ahead and
5  mark -- well, we've already marked it from the prior
6  deposition of Exhibit 2, which is your objection,
7  and has a bunch of exhibits to it as well. Can I
8  just show this objection to you, and do you
9  recognize that as your objection?
10 A. I honestly couldn't say if I recognize
11 this as my objection without reading through the
12 whole thing. If I've signed it, then I would say
13 yes, it's my objection, but I can't honestly say.
14 Q. I understand. Have you ever seen your
15 objection before?
16 A. Yes, I did see my objection.
17 Q. And you just don't know whether this one
18 is it or not?
19 A. That is correct.
20 Q. Okay.
21      MR. WOODS: For the record, we don't
22 dispute that that's the objection as filed on behalf
23 of my clients.
24      MR. HARKE: Thank you.
25 Q. (By Mr. Harke) Let me show you the last

**Page 12**

1  page of the objection, which is identified as page
2  13 of 15 of Exhibit 2.
3  A. Uh-huh.
4  Q. And ask you if this is your signature?
5  A. Yes, that is my signature.
6  Q. So does that refresh your recollection
7  as to whether or not this document that precedes
8  your signature is your objection?
9  A. Well, I guess I'm a little concerned
10 without actually reading all of this. Just because
11 it says it's 2 of 15 or whatever, I can't guarantee
12 that it is, but I would say that yes, if this has my
13 signature and this is what was filed, then yes,
14 these are my objections. Did I answer that?
15 Q. Yes, you did. Thank you.
16      You had said you had seen your
17 objections before. When did you see them?
18 A. Well, I would have to have seen them
19 after December the 12th I would say.
20 Q. Uh-huh. Why do you say that?
21 A. Because my niece was killed in a car
22 accident and I spent time in Iowa, and I just got
23 back from Iowa and I remember I was at my office, my
24 home office, when Ali brought these things to me.
25 Q. I see. I'm sorry to hear that about

**Page 13**

1  your niece.
2  A. I know.
3  Q. Do you know whether or not you saw the
4  objection before it was filed with the court?
5  A. Did I see it before it was filed with
6  the court?
7  Q. Yes, ma'am.
8  A. I would have to say yes, because Ali was
9  working with the attorney, and so I'm sure that we
10 did.
11 Q. Uh-huh. When you say "we," you mean
12 your husband or you personally?
13 A. We, my husband and myself.
14 Q. Uh-huh. Are you saying under oath that
15 you saw your objection before you filed it, your
16 lawyer filed it?
17 A. I just don't have any recollection. I
18 mean, I would hate to say, oh, definitely
19 100 percent yes, and then me not be correct. I
20 would say I did, but I mean...
21 Q. Do you remember making any changes to
22 the objection, any edits or suggestions or anything
23 like that?
24 A. I did not make any edits to the
25 objections.

Veritext Legal Solutions
800-726-7007                                                                    305-376-8800

Page 14

1  Q. I see. Exhibit, I believe it's Exhibit
2  3 to Exhibit 2 is the notice that was provided to
3  class members in this case, and let me show that to
4  you and ask you whether you recognize receiving that
5  class notice?
6  A. This is the notice that I received in
7  the mail?
8  Q. Uh-huh, it is.
9  A. Yeah, then I received that.
10 Q. And is this the document, the notice
11 that you scanned and sent to your husband by email
12 in India?
13 A. Yes, I do believe it is. I mean, that
14 looks like it, yes.
15 Q. And you sent that to him after you
16 received it?
17 A. Yes.
18 Q. And then Exhibit 1 to Exhibit 2 of your
19 objection is a claim form. Is that something that
20 you also received in the mail along with your -- the
21 class notice?
22 A. Yes, it is.
23 Q. And what did you do with that document
24 when you received it?
25 A. I think I partially filled mine out and

Page 15

1  then sent it to Ali so he could see that I partially
2  filled it out.
3  Q. Uh-huh. Is any of the writing on the
4  claim form yours?
5  A. No. This is all of Ali's writing.
6  Q. On the first page?
7  A. Yeah, I believe that's his writing.
8  Q. And how about on the second page?
9  A. That's my signature.
10 Q. Other than that, it's --
11 A. Yeah, other than that.
12 Q. -- your husband's writing?
13 A. Yeah, it looks like all of his writing.
14 Although, this writing looks kind of nice. You
15 know, maybe I'll take that back. Maybe this is my
16 writing.
17     Yeah, maybe this is my writing because
18 that's kind of too nice; although, it looks like
19 his. I'm sorry. Oh, that six is definitely his
20 six. That's his six.
21 Q. You're talking about the first page of
22 the claim form?
23 A. Yeah, yeah. Yeah, that must be his
24 writing, but he did a really good job on it.
25 Q. So is it correct to say that when you

Page 16

1  received the claim form on the notice, you scanned
2  it and sent it to your husband?
3  A. Yes, I did.
4  Q. And do you remember what happened next
5  in terms of this process?
6  A. Well, I know that he was in India for a
7  long time, and then when he returned, he consulted
8  with an attorney.
9  Q. Right. Would that be Mr. Bandas?
10 A. Yes, it would be.
11 Q. And Mr. Bandas served as your attorney,
12 did he not, in two prior force-place insurance
13 objections, correct?
14 A. Yes, that is correct.
15 Q. That would be Wells Fargo and SunTrust,
16 right?
17 A. That is correct.
18 Q. All right. And did Mr. Bandas send you
19 or your husband a fee agreement for you to sign?
20 A. Yes, he did.
21 Q. And let me show you what we've marked as
22 Exhibit 6, and ask you if this is the fee agreement
23 that you signed with Mr. Bandas?
24 A. Yes, this looks like the one I received
25 and signed.

Page 17

1  Q. And is that your signature on the last
2  page of Exhibit 6 to this fee agreement where it
3  says Janet Jabrani?
4  A. Yes, it is. And I usually sign
5  everything Janet E. Jabrani, but as you see, they
6  didn't put the E in there. So I just signed it just
7  like that.
8  Q. I see. Thank you.
9      And is this agreement, the fee
10 agreement, similar to the two prior fee agreements
11 you had signed with Mr. Bandas regarding objections
12 in SunTrust and Wells Fargo?
13 A. Yes, to the best of my knowledge.
14 Q. The fee agreement provides that under no
15 circumstances would you receive more than $5,000 in
16 pursuit of your objection. Do you know that?
17 A. I don't know if it -- what it
18 specifically says --
19 Q. Uh-huh.
20 A. -- about that.
21 Q. Well, paragraph 3.2 --
22 A. Uh-huh.
23 Q. -- of this fee agreement that you
24 signed, which is Exhibit 6 to this deposition,
25 states that you understand any incentive award or

Page 18

1  payment sought will never exceed $5,000. Do you see
2  that?
3      A. Uh-huh.
4      Q. Were you aware that that limitation
5  exists in these fee agreements?
6      A. Yes.
7      Q. Was that something that you negotiated?
8      A. Not me -- no, not me. Sorry. I did a
9  little Porky Pig there.
10     Q. That's all right.
11        Is that something your husband
12 negotiated?
13     A. Yes, must have been. Yes.
14     Q. Must have been, but you don't know for
15 sure? Do you know whether he said I think 10,000
16 would be better or --
17     A. I don't know.
18     Q. -- $7,500 would be not as good, but
19 better?
20     A. I don't have any information on that.
21     Q. So you don't know one way or the other?
22     A. Uh-huh.
23     Q. In the prior objections that you filed
24 with Mr. Bandas in Wells Fargo and SunTrust, do you
25 recall the amount of money you received in

Page 19

1  resolution of your objections?
2        MR. WOODS: I'm going to object again to
3  the resolution of anything other than what was
4  received by the Jabrani's directly as part of the
5  payments from the court-ordered settlement. That
6  is, any communication and payment of funds related
7  to Mr. Bandas as being both confidential and
8  irrelevant to this proceeding.
9        Subject to that, if you have information
10 relative to payments received through the class
11 action settlement, you can go ahead and answer.
12     A. I --
13        MR. HARKE: Sorry. I just want to make
14 sure I understand your objection. You're
15 instructing her not to answer my question, which was
16 how much she received as a result of her objections
17 in those two prior force-place insurance objections?
18        MR. WOODS: As to anything received
19 other than payments directly through the class
20 action as a claimant.
21     A. I don't mean to be ignorant, but I
22 really don't pay any attention to the money that
23 comes into the household, that's Ali's, and I don't
24 even know how much my paycheck is.
25     Q. (By Mr. Harke) Uh-huh. Well, let me ask

Page 20

1  you this: Do you know what happened -- what the
2  outcome was of your objection in Wells Fargo?
3      A. No, I do not.
4      Q. Do you know whether or not the court
5  modified or changed the terms of the settlement at
6  all?
7      A. No, I do not.
8      Q. Do you know whether the court agreed
9  with your objections in Wells Fargo or overruled
10 them?
11     A. No, I do not.
12     Q. Do you know whether or not Mr. Bandas
13 took an appeal of the court's order with respect to
14 your objections in Wells Fargo?
15     A. No, I do not.
16     Q. The same with respect to SunTrust. Do
17 you know whether or not the court modified or
18 changed the terms of the settlement as a result of
19 your objection?
20     A. No, I don't.
21     Q. Do you know whether the court agreed
22 with your objection or overruled it?
23     A. Well, I'm having heartburn, because I
24 don't want to seem like I'm ignorant, but -- and I
25 just have so much on in my head, but I'm going to

Page 21

1  have to say no.
2      Q. Okay.
3      A. I mean, I'm just going to have to say
4  no.
5      Q. I understand. And do you know whether
6  or not the Court -- do you know whether or not
7  Mr. Bandas took an appeal of the Court's order in
8  SunTrust?
9      A. No, I do not.
10     Q. Do you know whether you received any
11 financial remuneration as a result of your
12 objections in Wells Fargo or SunTrust?
13     A. No, I do not.
14     Q. Do you know whether the class received
15 any more benefits pursuant to the settlement as a
16 result of your objections in either Wells Fargo or
17 SunTrust?
18     A. No, I do not.
19     Q. If the Court here in Everbank -- well,
20 let me put it this way. Would you be willing to
21 appear in front of the Court to explain your
22 objections in this matter in Everbank?
23     A. Sure, I could go in front of the Court
24 to explain my objections.
25     Q. Do you have any -- you look -- you look

Page 22

1 very well to me, but do you have any physical
2 limitations or other disabilities that would
3 preclude you from traveling to Miami, if necessary,
4 to explain your objection?
5    A. No, I do not have any limitations that
6 would prevent that.
7    Q. And do you have any financial
8 limitations that would make it very difficult for
9 you to travel down to Miami to explain your
10 objections, if necessary?
11    A. No, I don't have any financial
12 hardships, but I do have a job.
13    Q. I understand. And I appreciate you
14 taking time off from it today to appear. Would you
15 do the same, if necessary, to explain your
16 objections to the Court?
17    A. Certainly.
18    Q. Do you know what the -- you mentioned
19 the 12.5 percent --
20    A. Yes.
21    Q. -- and you were explaining that you
22 thought that it should be more. Do you have a
23 number that you think would be a more appropriate
24 number for the percentage to be returned back to
25 class members in Everbank?

Page 23

1    A. I don't actually have a percentage in my
2 head that I think would be more fair. I guess you'd
3 have to have an actuary or someone else do the
4 number crunch on that, but 12.5 is just a very low
5 percentage.
6    Q. Right. And that's just based on your
7 own personal feelings? I mean, have you spoken to
8 any experts in the field about that belief?
9    A. About that belief, no.
10    Q. Have you spoken to any mortgage, banking
11 experts or anything like that?
12    A. No, I have not.
13    Q. Have you ever spoken with Mr. Bandas
14 about your objection in Everbank?
15    A. No, I did not.
16    Q. Have you ever spoken with Mr. Bandas at
17 all with respect to any of your representations in
18 either Wells Fargo, SunTrust, or Everbank?
19        MR. WOODS: Without saying what you
20 discussed, have you ever had a direct conversation
21 with Mr. Bandas is the question.
22    A. No, I have not.
23    Q. (By Mr. Harke) Have you ever met
24 Mr. Bandas?
25    A. No, I've never personally met him.

Page 24

1    Q. The Everbank settlement provides for
2 certain changes to the way that the bank and the
3 insurance company does business together. Are you
4 familiar with any of those changes?
5    A. No, I am not.
6    Q. The lawyer who filed the objection on
7 your behalf in the Southern District of Florida is
8 an attorney named Jeff Brown?
9    A. Uh-huh.
10    Q. Are you -- have you ever met Mr. Brown?
11    A. No.
12    Q. Have you had any communications with him
13 at all?
14    A. No, I have not.
15    Q. Have you had any email exchanges or text
16 messaging or any other types of -- any social media,
17 anything that would indicate that you have spoken or
18 otherwise communicated with Mr. Brown?
19    A. No, I have not.
20    Q. The objection -- this objection that was
21 filed on your behalf objects to the attorney's fees
22 that are being sought by class counsel. Do you have
23 a position with respect to the attorney's fees that
24 are being sought in this case?
25        MR. WOODS: Object as vague in terms of

Page 25

1 position.
2        Subject to that, if you understand it,
3 go ahead.
4    A. Well, it might not be like a position.
5 That wasn't what I was going at. I'm not sure what
6 you mean by position.
7    Q. (By Mr. Harke) Do you know what -- do
8 you know what the attorney's fees are in this case
9 being sought?
10    A. I do believe I do know that I read that
11 they were, like, over 2 million.
12    Q. And what is -- what is your object -- do
13 you know what your objection says with respect to
14 the attorney's fees?
15    A. I feel that those attorney fees are
16 probable exorbitant for what they did for the actual
17 class. It seems like they're going to be paid quite
18 a high amount for what the class is going to get out
19 of this class action.
20    Q. And have you investigated what the
21 attorney's did in the case to prosecute the class
22 action?
23    A. No, I have not.
24    Q. Have you looked at the docket to see the
25 motions and the pleadings and all the other record

7 (Pages 22 - 25)

Page 26

1 activity that was taken in the case by the attorneys
2 of record?
3  A. No, I did not.
4  Q. Have you spoken with any attorneys about
5 what a reasonable fee is or should be for a case
6 like this?
7  A. No, I did not.
8  Q. Do you have a number in mind as to what
9 you think a more appropriate attorney's fee should
10 be for prosecuting this case?
11  A. No, I do not.
12     (A discussion was held off the record.)
13  Q. Do you know what the legal consequence
14 is of filing an objection in federal court to a
15 class action settlement?
16  A. Could you ask me that again?
17  Q. Yes. For example, do you know that an
18 objection could delay the delivery of class benefits
19 to class members?
20  A. Yes, I do.
21  Q. And are you -- do you understand that by
22 objecting to the settlement, you're delaying the
23 payments of benefits to tens of thousands of other
24 class members?
25  A. I do. And would you like me to expound

Page 27

1 on that?
2     MR. WOODS: That's all he asked you.
3  A. I do.
4  Q. (By Mr. Harke) Do you have something you
5 want to say with respect to that?
6  A. No, I -- well, yeah, I kind of -- I
7 really do.
8  Q. Uh-huh.
9  A. And this is the reason why: If my
10 objections hold up them getting this small payment,
11 but my objections are heard and they're understood
12 and they're approved, then the class members will
13 actually get more of a benefit.
14  Q. Uh-huh.
15  A. So they may have been delayed in getting
16 their $27 payment, if that's what it shakes out to
17 be, and if my delaying them a year or whatnot offers
18 them to get $127, then I think that it's a good idea
19 that they waited.
20  Q. Right. But in your case -- you've
21 objected in Wells Fargo, right?
22  A. Uh-huh.
23  Q. And you've objected in SunTrust,
24 correct?
25  A. Uh-huh.

Page 28

1  Q. And to your knowledge, there's been no
2 improvements, no changes made to any of those
3 settlements that benefited the class members in any
4 way, shape, or form; is that right?
5     MR. WOODS: Well, I'll object to the
6 extent there's no evidence that that is the case.
7     To the extent that you know there's been
8 no benefit, you can certainly testify to that.
9  A. Well, that's what I'm saying. I don't
10 know --
11  Q. (By Mr. Harke) Uh-huh.
12  A. -- because I hate to say. I'm not an
13 idiot, and it's not that I -- but I do other things.
14  Q. Of course, right.
15  A. So this always falls on Ali to be the
16 subject matter expert, he's the one who does the
17 communicating, he's the one who knows.
18  Q. Right.
19  A. So in the event that our class action,
20 which I hope it did, I hope it did do better for the
21 whole class, because that's why we're objecting. So
22 it's my hopes that we did better and that everyone
23 saw a better benefit than what the class action
24 would have given them.
25  Q. Right. But you have no personal

Page 29

1 knowledge about any benefit being conferred to the
2 class in any of the prior cases in which you've
3 objected as a result of your objection, right?
4  A. That's true, I have no knowledge.
5  Q. You also objected, did you not, to --
6 well, let me show you what's been marked as
7 Exhibit 5. Do you recall filing objection in Sheila
8 Allen vs. JPMorgan Chase Bank?
9  A. Yes.
10  Q. And what was your objection in that
11 matter?
12  A. Well, do I have to -- I mean, I can talk
13 to you about --
14     MR. WOODS: The best of your
15 recollection.
16  A. The best of my recollection, it was a
17 case where somebody had a loan and then what
18 happened is they got a bunch of robo calls, they got
19 just telephone calls, email, other information about
20 past-due mortgages or past-due loans.
21  Q. (By Mr. Harke) Uh-huh.
22  A. So when we got that, I read it, and I
23 don't know if Ali was out of town or not, but
24 nevertheless, we went ahead and filed the claim
25 because you just get such a short time, we looked

Page 30

1 for documentations, we consulted with our attorneys,
2 and after which time then we agreed that we probably
3 didn't qualify.
4    Q.  Didn't qualify?
5    A.  For that class action.
6    Q.  Oh, I see.  Did you file an objection in
7 that matter?
8    A.  Yes, we did.
9    Q.  Uh-huh.  And your objection was
10 overruled, was it not?
11    A.  It was withdrawn.
12    Q.  And do you know whether a bond was
13 issued against you in that case?
14    A.  I do not know.
15    Q.  Do you know that the bond was for
16 $121,886?
17    A.  No, I did not know.
18    Q.  Would you have been financially capable
19 of paying a bond in that amount in that matter?
20    A.  For how much was it?
21    Q.  $121,886.
22    A.  So your question was if --
23    Q.  Did you have -- do you have the
24 financial wherewithal to pay a bond in that amount?
25    A.  I'm going to have to say I don't know.

Page 31

1    Q.  Do you know whether the bond was ever
2 altered or modified by court order?
3    A.  No, I do not.
4    Q.  All you really recall about that is you
5 withdrew the objection ultimately; is that right?
6    A.  That is correct.
7    Q.  And other than -- so other than that
8 matter, the one we just talked about, Sheila Allen
9 vs. JPMorgan Chase, that's one; then Wells Fargo,
10 that's two; SunTrust would be three; and now here we
11 are in Everbank, that's four.  So that's four class
12 action matters in which you have objected to the
13 class action settlement; is that right?
14    A.  Correct.
15    Q.  Are there any other class actions that
16 you've filed an objection in?
17    A.  Yes.
18    Q.  And what are those?
19    A.  There was only one, CertainTeed.
20    Q.  Right.
21    A.  But if I may say, the reason why we
22 filed this one and then withdrew it is because we
23 looked at what was necessary, and so...
24    Q.  And in CertainTeed you filed an
25 objection as well, right?

Page 32

1    A.  Yes.
2    Q.  We talked about this at our last
3 deposition in SunTrust, right?
4    A.  Correct.
5    Q.  And what was the outcome of your
6 objection there, Ms. Jabrani?
7    A.  To the best of my knowledge, the class
8 did benefit from that.
9    Q.  It's your belief that the class was
10 modified and benefited?
11    A.  Yes, that's true.
12    Q.  Do you know how the class benefited from
13 your objection?
14    A.  Not totally, no.
15    Q.  What do you -- what makes you think they
16 did benefit?
17    A.  Because I was told so.
18    Q.  Who told you so?
19    A.  I think my attorney probably told my
20 husband and my husband told me.
21    Q.  Uh-huh.
22        MR. WOODS:  Stay away from
23 attorney-client privileged information.
24        THE WITNESS:  Oh, sorry.
25    Q.  (By Mr. Harke)  Have you seen any court

Page 33

1 documents that indicate that the settlement in
2 CertainTeed was modified or altered to benefit the
3 class?
4    A.  Can you say that again, please?
5    Q.  Have you seen any court documents that
6 would indicate that the class benefited in
7 CertainTeed as a result of your objection?
8    A.  No, I have not.
9    Q.  Did Mr. Bandas serve as your attorney in
10 that matter as well?
11    A.  Yes, he did.
12    Q.  Have you read the settlement agreement
13 in this matter, Everbank?
14    A.  I did.
15    Q.  You did.  Did you review it before you
16 filed your objection?
17    A.  I can't remember.
18    Q.  Have you ever filed a claim form in a
19 class action settlement where you were not also an
20 objector?
21    A.  I can't remember.
22    Q.  Have you ever filed a claim form in a
23 class action settlement?
24    A.  I don't -- I don't recall.
25    Q.  Is it you and your husband's practice

9 (Pages 30 - 33)

Page 34

1  that when you receive a claim form in a class action
2  settlement or notice that you contact Mr. Bandas?
3      A. Is that our practice?
4      Q. Is that your practice, ma'am?
5      A. I would say yes.
6      Q. Uh-huh. Is that what happened here in
7  Everbank, your husband contacted Mr. Bandas when he
8  returned from India; isn't that right?
9      A. That's correct.
10     Q. And is that the, more or less, the
11 practice that you've observed with respect to the
12 prior objections that you filed with Mr. Bandas?
13     A. That's correct.
14     Q. Do you have a recollection of ever
15 receiving a class action notice and not contacting
16 Mr. Bandas?
17     A. I don't think we've gotten a class
18 action notification and not contacted Mr. Bandas as
19 of late.
20     Q. Right.
21     A. But we've been married for 33 years and
22 so I'm sure in that amount of time we've probably
23 been exposed to others, but my recollection just
24 isn't there.
25     Q. Right. But as far as you can recall,

Page 35

1  your practice is to contact Mr. Bandas when you
2  receive a class action notice; isn't that right?
3      A. That's correct.
4          MR. HARKE: We can go ahead and take
5  a -- we're going to take a two-minute break, go off
6  the record, and see if I have anything further for
7  you.
8          (A short break was taken.)
9          MR. HARKE: Thank you so much,
10 Mrs. Jabrani. I have no further questions for you
11 at this time.
12         THE WITNESS: Thank you.
13         MR. WOODS: I have a couple questions,
14 just for the record.
15         CROSS-EXAMINATION
16 BY MR. WOODS
17     Q. Mr. Harke asked you about this Exhibit 5
18 relative to the Sheila Allen vs. JPMorgan Chase Bank
19 case. Do you recall that?
20     A. Yes, I do.
21     Q. And the circumstances of your
22 participation in that case. Do you recall that?
23     A. Correct.
24     Q. In fact, you dismissed your claim
25 probably two months before this minute entry, this

Page 36

1  docket entry was entered, correct?
2      A. That is correct.
3      Q. So your decision whether or not to
4  dismiss your claim in that case had nothing to do
5  with potential sanctions by the Court or the posting
6  of a bond, did it?
7          MR. HARKE: Object to the form, leading
8  your own witness.
9      A. No --
10         MR. WOODS: We're on cross-examination
11 here.
12     Q. (By Mr. Woods) So subject -- go ahead.
13     A. Well, I agree we withdrew our claim
14 before November 12th, probably, like you said, a
15 couple of months prior to that. It was --
16     Q. And what was the reason or reasons for
17 withdrawing your claim?
18     A. Because once we discussed it, then we
19 felt that we didn't actually have an objection, we
20 didn't have -- we weren't in that lawsuit, that
21 class action.
22     Q. You weren't properly before the Court is
23 what you're suggesting?
24     A. Yes.
25     Q. And you did that voluntarily?

Page 37

1      A. Yes, sir.
2      Q. And of your own volition?
3      A. That's correct.
4      Q. Not because anyone filed a motion or
5  directed you to do it?
6      A. That's correct.
7          MR. WOODS: I have nothing further.
8          REDIRECT EXAMINATION
9  BY MR. HARKE
10     Q. Who was it who you spoke with regarding
11 the decision to dismiss your objection in the Allen
12 vs. JPMorgan Chase Bank case?
13         MR. WOODS: Well, I'm going to object to
14 the attorney-client privileged information.
15         MR. HARKE: You just asked it. I'm
16 following up on your questions.
17         MR. WOODS: Well, I think what I asked
18 her was did she dismiss it of her own volition.
19         THE WITNESS: And I did.
20         MR. HARKE: And she said -- after she
21 said you consulted with. I want to know who you
22 consulted with.
23     Q. (By Mr. Harke) You said you had some
24 discussions. Who did you have discussions with?
25         MR. WOODS: You can go ahead. You can

10 (Pages 34 - 37)

Page 38

1 answer that.
2  A. I was with Mr. Woods.
3  Q. (By Mr. Harke) Mr. Woods served as your
4 attorney in the Allen vs. JPMorgan Chase Bank case?
5  A. No. Pete Bandas did -- I mean --
6  Q. Chris Bandas?
7  A. -- Chris Bandas.
8  Q. That's okay. But you spoke with
9 Mr. Woods and determined to -- is he also your
10 lawyer in this case?
11  A. Well, he -- and I don't know the correct
12 terminology of it. He is the person who facilitates
13 the deposition.
14  Q. Uh-huh. That's fair.
15  A. Yeah.
16  Q. Uh-huh. Did you ever speak with
17 Mr. Bandas about your objection in Allen vs.
18 JPMorgan Chase Bank?
19  A. I believe I was on a conference call.
20 Ali was actually speaking to him and he was on
21 speakerphone. So I got it that way.
22  Q. Uh-huh.
23  A. But I did not have a personal
24 conversation with him myself.
25  Q. Right. So as far as you know, the

Page 39

1 outcome of your objection there was you withdrew it?
2  A. Yes.
3  Q. And do you know what ultimately happened
4 to the class action settlement, whether it was
5 approved or funded or proceeded --
6  A. No, I do not.
7  Q. -- to settlement?
8  A. No, I do not.
9     MR. HARKE: I have nothing further.
10 Thank you.
11    MR. WOODS: I have nothing further.
12    MR. HARKE: Thank you, everyone.
13    MR. WOODS: We'll waive.
14    (The deposition concluded at 10:59 a.m.)

Page 40

CERTIFICATE OF REPORTER

    I, Amanda N. Farrar, a Certified Court
Reporter for the State of Missouri, do hereby
certify that the witness whose testimony appears in
the foregoing deposition was duly sworn by me; the
testimony of said witness was taken by me to the
best of my ability and thereafter reduced to
typewriting under my direction; that I am neither
counsel for, related to, nor employed by any of the
parties to the action in which this deposition was
taken, and further that I am not a relative or
employee of any attorney or counsel employed by the
parties thereto, nor financially or otherwise
interested in the outcome of the action.

                _____
                Certified Court Reporter

11 (Pages 38 - 40)

[& - break]                                                                      Page 41

| & | 37  2:5 | age  7:4 | 33:9 37:14 38:4 |
|---|---|---|---|
| &  3:15 4:3,8,13 5:9 | 372-1800  4:15 | agree  36:13 | 40:13 |
| **0** | **4** | agreed  20:8,21 30:2 | attorney's  24:21,23 |
| 02111  4:20 | 400  5:5 | agreement  16:19,22 | 25:8,14,21 26:9 |
|  | 45,000  8:22 9:6 | 17:2,9,10,14,23 | attorneys  26:1,4 30:1 |
| **1** | **5** | 33:12 | avelar  1:3 3:3 |
| 1  14:18 | 5  1:17 29:7 35:17 | agreements  17:10 | avenue  4:4,9 |
| 1,000  9:13 | 5,000  17:15 18:1 | 18:5 | award  17:25 |
| 10,000  18:15 | 536-8220  4:5,10 | ahead  11:4 19:11 | aware  18:4 |
| 100  13:19 | 5th  3:14 | 25:3 29:24 35:4 | **b** |
| 101  9:1 | **6** | 36:12 37:25 | back  9:3,7 12:23 |
| 1010  3:15 5:10 | 6  2:10,10 6:2 16:22 | ali  9:25 10:21 12:24 | 15:15 22:24 |
| 1025  5:4 | 17:2,24 | 13:8 15:1 28:15 | bandas  16:9,11,18,23 |
| 10:17  3:15 6:1 | 617  4:21 | 29:23 38:20 | 17:11 18:24 19:7 |
| 10:59  3:15 39:14 | 63101  3:16 5:10 | ali's  10:17 15:5 19:23 | 20:12 21:7 23:13,16 |
| 12.5  9:3,8 22:19 23:4 | **7** | allen  29:8 31:8 35:18 | 23:21,24 33:9 34:2,7 |
| 121,886  30:16,21 | 7  2:3 | 37:11 38:4,17 | 34:12,16,18 35:1 |
| 127  27:18 | 7,500  18:18 | altered  31:2 33:2 | 38:5,6,7,17 |
| 12th  12:19 36:14 | **9** | amanda  3:16 5:14 | bank  24:2 29:8 35:18 |
| 13  12:2 | 965-8100  5:6 | 40:3 | 37:12 38:4,18 |
| 14  1:7 3:7 | 9699  4:4,9 | american  1:9 3:9 | banking  23:10 |
| 15  12:2,11 | 9th  4:14 | amirali  5:8 | based  23:6 |
| 1620  3:16 5:10 | **a** | amm  4:15 | behalf  1:4,16 3:4 7:5 |
| **2** | a.m.  3:15,15 6:1 | amount  8:23 9:15 | 11:22 24:7,21 |
| 2  11:6 12:2,11 14:2 | 39:14 | 18:25 25:18 30:19,24 | belief  23:8,9 32:9 |
| 14:18 25:11 | ability  40:8 | 34:22 | believe  14:1,13 15:7 |
| 20007  5:5 | accident  12:22 | answer  12:14 19:11 | 25:10 38:19 |
| 2016  1:17 3:14 | accommodate  8:9 | 19:15 38:1 | benefit  27:13 28:8,23 |
| 202  5:6 | acknowledge  7:1 | anyway  10:21 | 29:1 32:8,16 33:2 |
| 22264  1:7 3:7 | acquiesce  6:25 | appeal  20:13 21:7 | benefited  28:3 32:10 |
| 241-2224  5:11 | action  8:13,23 19:11 | appear  21:21 22:14 | 32:12 33:6 |
| 2525  4:14 | 19:20 25:19,22 26:15 | appearances  4:1 5:1 | benefits  21:15 26:18 |
| 261-3100  4:21 | 28:19,23 30:5 31:12 | appearing  6:9,14 | 26:23 |
| 27  27:16 | 31:13 33:19,23 34:1 | appears  40:5 | best  17:13 29:14,16 |
| **3** | 34:15,18 35:2 36:21 | appreciate  22:13 | 32:7 40:8 |
| 3  14:2 | 39:4 40:11,15 | appropriate  22:23 | better  8:3 18:16,19 |
| 3.2  17:21 | actions  31:15 | 26:9 | 28:20,22,23 |
| 305  4:5,10,15 | activity  26:1 | approved  27:12 39:5 | bloom  1:7 3:7 |
| 314  5:11 | actual  25:16 | asked  27:2 35:17 | bond  30:12,15,19,24 |
| 33  34:21 | actuary  23:3 | 37:15,17 | 31:1 36:6 |
| 33134  4:14 | adam  4:13 | attached  2:12 | boston  4:20 |
| 33138  4:4,9 |  | attending  6:7 | boulevard  4:14 |
| 35  2:4 |  | attention  10:9 19:22 | break  8:7 35:5,8 |
|  |  | attorney  13:9 16:8,11 |  |
|  |  | 24:8 25:15 32:19,23 |  |

[brought - entry]                                                                                           Page 42

| | | | |
|---|---|---|---|
| brought 12:24 | clasby 4:3,8 | coral 4:14 | 17:24 32:3 38:13 |
| brown 24:8,10,18 | class 8:12,19,22 14:3 | correct 8:25 11:19 | 39:14 40:6,11 |
| bunch 11:7 29:18 | 14:5,21 19:10,19 | 13:19 15:25 16:13,14 | depositions 6:8 |
| burt 5:3,4 | 21:14 22:25 24:22 | 16:17 27:24 31:6,14 | determined 38:9 |
| bushman 4:3,8,8 | 25:17,18,19,21 26:15 | 32:4 34:9,13 35:3,23 | died 10:17 |
| business 24:3 | 26:18,19,24 27:12 | 36:1,2 37:3,6 38:11 | difficult 22:8 |
| **c** | 28:3,19,21,23 29:2 | counsel 6:20 24:22 | direct 2:3 7:6 23:20 |
| call 38:19 | 30:5 31:11,13,15 | 40:10,13 | directed 6:17 37:5 |
| calls 29:18,19 | 32:7,9,12 33:3,6,19 | couple 35:13 36:15 | direction 40:9 |
| capable 30:18 | 33:23 34:1,15,17 | course 10:22 28:14 | directly 19:4,19 |
| car 12:21 | 35:2 36:21 39:4 | court 1:1 3:1,16 5:13 | disabilities 22:2 |
| carlton 5:4 | clear 9:20 | 6:11 13:4,6 19:5 20:4 | discussed 23:20 |
| carltonfields.com 5:6 | client 32:23 37:14 | 20:8,17,21 21:6,19 | 36:18 |
| case 1:7 3:7 10:15 | clients 6:9 11:23 | 21:21,23 22:16 26:14 | discussion 26:12 |
| 14:3 24:24 25:8,21 | collected 8:25 | 31:2 32:25 33:5 36:5 | discussions 37:24,24 |
| 26:1,5,10 27:20 28:6 | comes 19:23 | 36:22 40:3,19 | dismiss 36:4 37:11 |
| 29:17 30:13 35:19,22 | commenced 6:1 | court's 20:13 21:7 | 37:18 |
| 36:4 37:12 38:4,10 | communicated 24:18 | credit 9:17 | dismissed 35:24 |
| cases 29:2 | communicating | cross 1:3,4 2:4 3:3,4 | dispute 11:22 |
| ccr 5:14 | 28:17 | 35:15 36:10 | district 1:1,1 3:1,1 |
| certain 24:2 | communication 19:6 | crunch 23:4 | 24:7 |
| certainly 8:18 22:17 | communications | cry 10:20 | docket 25:24 36:1 |
| 28:8 | 24:12 | **d** | document 10:25 12:7 |
| certainteed 31:19,24 | company 1:8,9 3:8,9 | d 4:18 | 14:10,23 |
| 33:2,7 | 5:2 10:6 24:3 | david 4:18 | documentations 30:1 |
| certificate 40:1 | concede 6:24 | david.christensen | documents 6:17 33:1 |
| certified 3:16 40:3,19 | concerned 12:9 | 4:20 | 33:5 |
| certify 40:5 | concluded 39:14 | day 3:14,15 | due 29:20,20 |
| changed 20:5,18 | conference 38:19 | dc 5:5 | duly 40:6 |
| changes 13:21 24:2,4 | conferred 29:1 | de 4:14 | dwight 1:3 3:3 |
| 28:2 | confidential 19:7 | december 12:19 | **e** |
| chase 29:8 31:9 | confused 10:12 | decision 36:3 37:11 | e 17:5,6 |
| 35:18 37:12 38:4,18 | consequence 26:13 | defendant 4:17 5:2 | east 5:5 |
| chris 38:6,7 | consulted 16:7 30:1 | defendants 1:10 3:10 | edits 13:22,24 |
| christensen 4:18 | 37:21,22 | defending 6:8 | eileen 7:16 |
| circumstances 17:15 | contact 34:2 35:1 | definitely 13:18 | either 21:16 23:18 |
| 35:21 | contacted 34:7,18 | 15:19 | email 14:11 24:15 |
| civ 1:7 3:7 | contacting 34:15 | delay 26:18 | 29:19 |
| claim 9:6 14:19 15:4 | continued 5:1 | delayed 27:15 | emailed 11:1 |
| 15:22 16:1 29:24 | conversation 23:20 | delaying 26:22 27:17 | employed 40:10,13 |
| 33:18,22 34:1 35:24 | 38:24 | delivery 26:18 | employee 40:13 |
| 36:4,13,17 | cooperating 6:14 | deposes 7:5 | entered 36:1 |
| claimant 19:20 | copies 2:12 | deposition 1:15 3:14 | entry 35:25 36:1 |
| | copy 10:15 | 6:1,6,21 7:12,18 11:6 | |

| | | | |
|---|---|---|---|
| estate 10:6 | fargo 16:15 17:12 | four 31:11,11 | harkeclasby.com 4:5 |
| event 28:19 | 18:24 20:2,9,14 | franklin 5:3 | 4:10 |
| everbank 1:8 3:8 | 21:12,16 23:18 27:21 | front 21:21,23 | hate 13:18 28:12 |
| 4:17 8:12,19,25 9:13 | 31:9 | funded 39:5 | hbushman 4:10 |
| 10:3,25 21:19,22 | farrar 3:16 5:14 40:3 | funds 19:6 | head 20:25 23:2 |
| 22:25 23:14,18 24:1 | father 10:17 | further 6:15,22 35:6 | hear 10:18 12:25 |
| 31:11 33:13 34:7 | fburt 5:6 | 35:10 37:7 39:9,11 | heard 27:11 |
| evidence 28:6 | federal 26:14 | 40:12 | heartburn 20:23 |
| examination 2:1,3,4 | fee 16:19,22 17:2,9 | g | held 26:12 |
| 2:5 7:6 35:15 36:10 | 17:10,14,23 18:5 | g 5:3 | high 25:18 |
| 37:8 | 26:5,9 | gables 4:14 | hold 27:10 |
| examined 3:14 7:4 | feel 25:15 | gain 8:24 | home 12:24 |
| example 26:17 | feelings 23:7 | gates 4:19 | honestly 11:10,13 |
| exceed 18:1 | fees 24:21,23 25:8,14 | getting 9:7 27:10,15 | hope 28:20,20 |
| exchanges 24:15 | 25:15 | give 9:17 | hopes 28:22 |
| excuse 6:4 | felt 36:19 | given 28:24 | hours 3:15 |
| exhibit 2:10 6:2 11:6 | field 23:8 | go 8:6 10:20 11:4 | household 19:23 |
| 12:2 14:1,1,2,18,18 | fields 5:4 | 19:11 21:23 25:3 | howard 4:8 |
| 16:22 17:2,24 29:7 | file 30:6 | 35:4,5 36:12 37:25 | huh 9:4,19 10:8 12:3 |
| 35:17 | filed 9:6 11:22 12:13 | going 8:6 9:12,14,16 | 12:20 13:11,14 14:8 |
| exhibits 2:8,12 11:7 | 13:4,5,15,16 18:23 | 9:17 11:4 19:2 20:25 | 15:3 17:19,22 18:3 |
| exists 18:5 | 24:6,21 29:24 31:16 | 21:3 25:5,17,18 | 18:22 19:25 24:9 |
| exorbitant 25:16 | 31:22,24 33:16,18,22 | 30:25 35:5 37:13 | 27:8,14,22,25 28:11 |
| expect 8:1 | 34:12 37:4 | good 7:8 8:20 11:4 | 29:21 30:9 32:21 |
| expert 10:5 28:16 | filing 26:14 29:7 | 15:24 18:18 27:18 | 34:6 38:14,16,22 |
| experts 10:13 23:8,11 | filled 14:25 15:2 | gotten 34:17 | husband 9:25 10:7 |
| explain 9:10,23 | financial 21:11 22:7 | great 8:21 | 13:12,13 14:11 16:2 |
| 10:11 21:21,24 22:4 | 22:11 30:24 | group 9:1,2 | 16:19 18:11 32:20,20 |
| 22:9,15 | financially 30:18 | guarantee 12:11 | 34:7 |
| explained 9:24 | 40:14 | guaranty 1:8 3:8 5:2 | husband's 15:12 |
| explaining 22:21 | find 9:21 | guess 12:9 23:2 | 33:25 |
| exposed 34:23 | fine 7:9 8:4 | h | i |
| expound 26:25 | first 15:6,21 | haar 3:15 5:9,11 | idea 27:18 |
| extent 28:6,7 | floor 4:14 | happened 16:4 20:1 | identification 6:3 |
| f | florida 1:1 3:1 4:4,9 | 29:18 34:6 39:3 | identified 12:1 |
| facilitates 38:12 | 4:14 24:7 | happy 8:8 | idiot 28:13 |
| fact 35:24 | following 37:16 | hardships 22:12 | ignorant 19:21 20:24 |
| facts 10:2 | force 7:18 9:11 16:12 | harke 2:3,5 4:3,3,8 | improvements 28:2 |
| fair 9:21 23:2 38:14 | 19:17 | 6:24 7:7,11 11:24,25 | incentive 17:25 |
| fall 10:17 | foregoing 40:6 | 19:13,25 23:23 25:7 | index 2:1,8 |
| falls 28:15 | form 14:19 15:4,22 | 27:4 28:11 29:21 | india 10:21 14:12 |
| familiar 24:4 | 16:1 28:4 33:18,22 | 32:25 35:4,9,17 36:7 | 16:6 34:8 |
| far 34:25 38:25 | 34:1 36:7 | 37:9,15,20,23 38:3 | indicate 24:17 33:1,6 |
| | formal 6:23 | 39:9,12 | |

[information - objection]                                                Page 44

**information** 10:6 11:2 18:20 19:9 29:19 32:23 37:14
**instructing** 19:15
**insurance** 1:8,9 3:8,9 5:2 7:18 9:11,14,15 16:12 19:17 24:3
**interested** 40:15
**interrupting** 6:5
**investigated** 25:20
**iowa** 12:22,23
**irrelevant** 19:8
**issue** 9:23
**issued** 30:13
**issues** 7:25

**j**
**jabrani** 1:15 3:14 5:8 6:6,18,18 7:3,16,17 8:11 17:3,5 32:6 35:10
**jabrani's** 19:4
**janet** 1:15 3:14 7:3 7:16 17:3,5
**january** 1:17 3:14
**jeff** 24:8
**jefferson** 5:4
**jessie** 1:3 3:3
**jesus** 1:3 3:3
**job** 10:7 15:24 22:12
**jorden** 5:4
**jpmorgan** 29:8 31:9 35:18 37:12 38:4,18
**jurisdiction** 6:10

**k**
**k&l** 4:19
**killed** 12:21
**kind** 15:14,18 27:6
**klgates.com** 4:20
**knew** 11:1
**know** 8:2 11:17 13:2 13:3 15:15 16:6 17:16,17 18:14,15,17 18:21 19:24 20:1,4,8 20:12,17,21 21:5,6

21:10,14 22:18 25:7 25:8,10,13 26:13,17 28:7,10 29:23 30:12 30:14,15,17,25 31:1 32:12 37:21 38:11,25 39:3
**knowledge** 17:13 28:1 29:1,4 32:7
**knows** 9:13 28:17
**kozyak** 4:13
**kttlaw.com** 4:15

**l**
**lance** 4:3 7:11
**late** 34:19
**lawful** 7:4
**lawsuit** 8:23 36:20
**lawyer** 13:16 24:6 38:10
**leading** 36:7
**learn** 10:2
**legal** 26:13
**lemus** 1:3 3:3
**leon** 4:14
**lharke** 4:5
**limitation** 18:4
**limitations** 22:2,5,8
**limited** 6:8 10:5
**lincoln** 4:19
**little** 12:9 18:9
**llp** 3:15 4:3,8,19 5:9
**loan** 29:17
**loans** 29:20
**long** 8:6 16:7
**look** 10:10 21:25,25
**looked** 25:24 29:25 31:23
**looks** 14:14 15:13,14 15:18 16:24
**lot** 8:20 10:9
**louis** 3:16 5:10
**low** 23:4

**m**
**m** 4:8,13
**ma'am** 13:7 34:4
**mail** 10:22 14:7,20
**mailbox** 10:22
**making** 13:21
**mark** 11:5
**marked** 11:5 16:21 29:6
**market** 3:15 5:10
**married** 34:21
**massachusetts** 4:20
**matter** 7:13 10:5,13 21:22 28:16 29:11 30:7,19 31:8 33:10 33:13
**matters** 31:12
**mattie** 1:4 3:4
**mean** 8:20 13:11,18 13:20 14:13 19:21 21:3 23:7 25:6 29:12 38:5
**media** 24:16
**members** 8:20,22 14:3 22:25 26:19,24 27:12 28:3
**mentioned** 9:22 22:18
**messaging** 24:16
**met** 7:11 23:23,25 24:10
**miami** 4:4,9 22:3,9
**million** 9:1 25:11
**mind** 26:8
**mine** 14:25
**minimal** 8:24
**minute** 35:5,25
**missouri** 3:16,17 5:10 40:4
**modified** 20:5,17 31:2 32:10 33:2
**money** 8:23 9:3,7 18:25 19:22

**months** 35:25 36:15
**morning** 7:8 8:6
**mortgage** 9:12,16 23:10
**mortgages** 29:20
**moskowitz** 4:13
**motion** 37:4
**motions** 25:25

**n**
**n** 3:16 5:14 40:3
**n.a.** 1:8 3:8 4:17
**name** 6:7 7:11,15
**named** 24:8
**ne** 4:4,9
**necessary** 22:3,10,15 31:23
**need** 8:7
**negotiated** 18:7,12
**neither** 40:9
**never** 10:23 18:1 23:25
**nevertheless** 29:24
**nice** 15:14,18
**niece** 12:21 13:1
**notice** 10:15 14:2,5,6 14:10,21 16:1 34:2 34:15 35:2
**notification** 34:18
**november** 36:14
**number** 9:12 22:23 22:24 23:4 26:8
**numbers** 8:21
**nw** 5:4

**o**
**oath** 7:20 13:14
**object** 19:2 24:25 25:12 28:5 36:7 37:13
**objected** 27:21,23 29:3,5 31:12
**objecting** 8:12 26:22 28:21
**objection** 7:19 8:17 11:6,8,9,11,13,15,16

Veritext Legal Solutions
800-726-7007                                                          305-376-8800

11:22 12:1,8 13:4,15
13:22 14:19 17:16
19:14 20:2,19,22
22:4 23:14 24:6,20
24:20 25:13 26:14,18
29:3,7,10 30:6,9 31:5
31:16,25 32:6,13
33:7,16 36:19 37:11
38:17 39:1
objections  6:13,16,18
  12:14,17 13:25 16:13
  17:11 18:23 19:1,16
  19:17 20:9,14 21:12
  21:16,22,24 22:10,16
  27:10,11 34:12
objector  33:20
objects  24:21
observed  34:11
offers  27:17
office  12:23,24
oh  13:18 15:19 30:6
  32:24
okay  8:3 10:1 11:20
  21:2 38:8
once  36:18
open  8:8 10:24
order  20:13 21:7
  31:2
ordered  19:5
original  2:12
outcome  20:2 32:5
  39:1 40:15
overruled  20:9,22
  30:10

p

p.a.  5:4
page  2:3,4,5,10 12:1
  12:1 15:6,8,21 17:2
paid  9:9 25:17
paragraph  17:21
part  19:4
partially  14:25 15:1
participation  35:22

parties  40:11,14
pay  9:17 10:9 19:22
  30:24
paycheck  19:24
paying  30:19
payment  18:1 19:6
  27:10,16
payments  19:5,10,19
  26:23
pending  8:8
people  9:1,2,6
percent  9:3,8 13:19
  22:19
percentage  22:24
  23:1,5
person  38:12
personal  6:11 23:7
  28:25 38:23
personally  13:12
  23:25
pete  5:9 6:7 38:5
petewoods  5:11
physical  22:1
pig  18:9
place  7:18 9:11 16:12
  19:17
plaintiff's  2:10 6:2
  6:16,19
plaintiffs  1:6,16 3:6
  4:2,7,12 7:5
pleadings  25:25
please  33:4
ponce  4:14
porky  18:9
position  24:23 25:1,4
  25:6
posting  36:5
potential  36:5
practice  33:25 34:3,4
  34:11 35:1
precedes  12:7
preclude  22:3
premarked  6:2
premium  9:14,15

premiums  9:1
prevent  22:6
prior  11:5 16:12
  17:10 18:23 19:17
  29:2 34:12 36:15
privileged  32:23
  37:14
probable  25:16
probably  30:2 32:19
  34:22 35:25 36:14
proceed  7:2
proceeded  39:5
proceeding  19:8
process  6:15 16:5
produced  3:14 7:4
production  6:17
properly  36:22
prosecute  25:21
prosecuting  26:10
provided  8:7 14:2
provides  17:14 24:1
purpose  6:8
purposes  6:23
pursuant  21:15
pursuit  17:16
put  9:13 17:6 21:20

q

qualify  30:3,4
question  8:2,8 19:15
  23:21 30:22
questions  8:1 35:10
  35:13 37:16
quite  25:17

r

read  10:4,24 25:10
  29:22 33:12
reading  8:24 11:11
  12:10
ready  7:1
real  10:6
realize  7:20
really  8:19 10:11
  15:24 19:22 27:7
  31:4

reason  8:5,7 27:9
  31:21 36:16
reasonable  26:5
reasons  36:16
recall  7:12 18:25
  29:7 31:4 33:24
  34:25 35:19,22
receive  10:14 17:15
  34:1 35:2
received  14:6,9,16,20
  14:24 16:1,24 18:25
  19:4,10,16,18 21:10
  21:14
receiving  14:4 34:15
recognize  11:9,10
  14:4
recollection  7:19
  12:6 13:17 29:15,16
  34:14,23
record  6:5,15,23 7:1
  7:15 11:21 25:25
  26:2,12 35:6,14
redirect  2:5 37:8
reduced  40:8
refresh  7:19 12:6
regarding  17:11
  37:10
related  19:6 40:10
relative  6:20 19:10
  35:18 40:12
relying  6:20
remember  7:13
  10:14 12:23 13:21
  16:4 33:17,21
remuneration  21:11
rephrase  8:2
reporter  3:16 5:13
  40:1,4,19
representations
  23:17
request  8:9
requests  6:17
resolution  19:1,3
respect  20:13,16
  23:17 24:23 25:13

| | | | |
|---|---|---|---|
| 27:5 34:11 | 33:12,19,23 34:2 | statement 6:25 | 35:9,12 39:10,12 |
| responses 6:16,19 | 39:4,7 | states 1:1 3:1 17:25 | thanks 7:9 |
| result 19:16 20:18 | settlements 28:3 | stay 32:22 | thereto 40:14 |
| 21:11,16 29:3 33:7 | shakes 27:16 | street 3:15 4:19 5:4 | thing 11:12 |
| returned 16:7 22:24 | shame 10:10 | 5:10 | things 10:11,23 |
| 34:8 | shape 28:4 | subject 6:22 10:5,12 | 12:24 28:13 |
| review 33:15 | sheila 29:7 31:8 | 19:9 25:2 28:16 | think 8:5,25 14:25 |
| right 8:9 16:9,16,18 | 35:18 | 36:12 | 18:15 22:23 23:2 |
| 18:10 23:6 27:20,21 | shores 4:4,9 | submitting 6:10 | 26:9 27:18 32:15,19 |
| 28:4,14,18,25 29:3 | short 29:25 35:8 | subpoena 6:12 | 34:17 37:17 |
| 31:5,13,20,25 32:3 | show 11:8,25 14:3 | successful 9:7 | thomas 5:4 |
| 34:8,20,25 35:2 | 16:21 29:6 | suggesting 36:23 | thought 22:22 |
| 38:25 | sign 16:19 17:4 | suggestions 13:22 | thousands 26:23 |
| robo 29:18 | signature 12:4,5,8,13 | suite 3:16 5:4,10 | three 31:10 |
| **s** | 15:9 17:1 | suntrust 7:13 16:15 | throckmorton 4:13 |
| sanctions 36:5 | signed 11:12 16:23 | 17:12 18:24 20:16 | throw 9:12 |
| saw 13:3,15 28:23 | 16:25 17:6,11,24 | 21:8,12,17 23:18 | time 11:2 12:22 16:7 |
| saying 13:14 23:19 | similar 17:10 | 27:23 31:10 32:3 | 22:14 29:25 30:2 |
| 28:9 | similarly 1:5 3:5 | sure 13:9 18:15 | 34:22 35:11 |
| says 7:5 12:11 17:3 | sir 37:1 | 19:14 21:23 25:5 | today 22:14 |
| 17:18 25:13 | situated 1:5 3:5 | 34:22 | told 32:17,18,19,20 |
| scanned 10:25 14:11 | six 15:19,20,20 | sworn 3:14 7:4,22 | totally 10:11 32:14 |
| 16:1 | small 27:10 | 40:6 | town 29:23 |
| second 4:4,9 15:8 | social 24:16 | **t** | transcript 2:12 |
| security 1:9 3:9 | somebody 9:10 29:17 | take 15:15 35:4,5 | travel 22:9 |
| see 10:1 11:16 12:17 | sorry 10:18 12:25 | taken 1:16 26:1 35:8 | traveling 22:3 |
| 12:25 13:5 14:1 15:1 | 15:19 18:8 19:13 | 40:7,12 | tropin 4:13 |
| 17:5,8 18:1 25:24 | 32:24 | talk 29:12 | true 29:4 32:11 |
| 30:6 35:6 | sought 18:1 24:22,24 | talked 31:8 32:2 | truth 7:22 |
| seek 10:12 | 25:9 | talking 15:21 | try 8:2 |
| seen 11:14 12:16,18 | southern 1:1 3:1 24:7 | technical 6:13 | two 16:12 17:10 |
| 32:25 33:5 | speak 38:16 | telephone 4:7,17 5:2 | 19:17 31:10 35:5,25 |
| send 16:18 | speakerphone 38:21 | 29:19 | types 24:16 |
| sensitive 11:2 | speaking 38:20 | tell 7:22 8:15 | typewriting 40:9 |
| sent 14:11,15 15:1 | specifically 17:18 | tens 26:23 | **u** |
| 16:2 | spent 12:22 | terminology 38:12 | uh 9:4,19 10:8 12:3 |
| serve 33:9 | spoke 37:10 38:8 | terms 16:5 20:5,18 | 12:20 13:11,14 14:8 |
| served 6:19 16:11 | spoken 23:7,10,13,16 | 24:25 | 15:3 17:19,22 18:3 |
| 38:3 | 24:17 26:4 | terrible 10:19 | 18:22 19:25 24:9 |
| service 6:11 | st 3:16 5:10 | testify 28:8 | 27:8,14,22,25 28:11 |
| settlement 8:13,16,19 | stand 8:24 | testimony 40:5,7 | 29:21 30:9 32:21 |
| 10:3,4,15 19:5,11 | standard 1:8 3:8 5:2 | text 24:15 | 34:6 38:14,16,22 |
| 20:5,18 21:15 24:1 | stands 9:2 | thank 7:10 8:4,10,11 | ultimately 31:5 39:3 |
| 26:15,22 31:13 33:1 | state 3:16 7:15 40:4 | 11:24 12:15 17:8 | |

**understand**  7:23 8:3
  8:13 9:5,9 10:2 11:14
  17:25 19:14 21:5
  22:13 25:2 26:21
**understood**  27:11
**united**  1:1 3:1
**usually**  10:23 17:4

**v**

**vague**  24:25
**valle**  1:7 3:7
**volition**  37:2,18
**voluntarily**  6:9,14
  36:25
**vs**  1:7 3:7 29:8 31:9
  35:18 37:12 38:4,17

**w**

**waited**  27:19
**waive**  39:13
**want**  6:5 19:13 20:24
  27:5 37:21
**washington**  5:5
**way**  9:5 18:21 21:20
  24:2 28:4 38:21
**we've**  10:19 11:5
  16:21 34:17,21,22
**wells**  16:15 17:12
  18:24 20:2,9,14
  21:12,16 23:18 27:21
  31:9
**went**  29:24
**whatnot**  27:17
**wherewithal**  30:24
**willing**  21:20
**wilson**  1:3 3:3
**wipe**  9:15
**withdrawing**  36:17
**withdrawn**  30:11
**withdrew**  31:5,22
  36:13 39:1
**witness**  5:8 32:24
  35:12 36:8 37:19
  40:5,7
**woods**  2:4 3:15 5:9,9
  6:4,7,25 11:21 19:2
  19:18 23:19 24:25
  27:2 28:5 29:14
  32:22 35:13,16 36:10
  36:12 37:7,13,17,25
  38:2,3,9 39:11,13
**woods.com**  5:11
**words**  8:15,18
**working**  13:9
**writing**  15:3,5,7,12
  15:13,14,16,17,24

**y**

**yeah**  10:19,19 14:9
  15:7,11,13,17,23,23
  15:23 27:6 38:15
**year**  10:19 27:17
**years**  34:21

FLORIDA RULES OF CIVIL PROCEDURE

Rule 1.310

(e) Witness Review. If the testimony is transcribed, the transcript shall be furnished to the witness for examination and shall be read to or by the witness unless the examination and reading are waived by the witness and by the parties. Any changes in form or substance that the witness wants to make shall be listed in writing by the officer with a statement of the reasons given by the witness for making the changes. The changes shall be attached to the transcript. It shall then be signed by the witness unless the parties waived the signing or the witness is ill, cannot be found, or refuses to sign. If the transcript is not signed by the witness within a reasonable time after it is furnished to the witness, the officer shall sign the transcript and state on the transcript the waiver, illness, absence of the witness, or refusal to sign with any reasons given therefor. The deposition may then be used as fully as though signed unless the court holds that the reasons given for the refusal to sign require rejection of

the deposition wholly or partly, on motion under rule 1.330(d)(4).

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2014.  PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.